Clifford S. Robert (CR8483)
Kurt Schaub (KS7045)
Robert & Robert PLLC
150 Broad Hollow Rd.
Melville, New York 11747
(631) 271-3300

Attorneys for Defendants SLEDJESKI & TIERNEY PLLC,
THOMAS SLEDJESKI, MARY TIERNEY and BRIAN
ANDREWS

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
--------------------------------------------------------------------X
ST. PAUL FIRE & MARINE INSURANCE COMPANY,

|  |  |
|---|---|
| Plaintiff, | Civil Action No.: 08-cv-05184-JFB-ETB |
| v. | **NOTICE OF MOTION** |
| SLEDJESKI & TIERNEY PLLC, THOMAS SLEDJESKI, MARY TIERNEY and BRIAN ANDREWS, | |
| Defendants. | May 6, 2009 |

--------------------------------------------------------------------X

TO:    A. Michael Furman
       Andrew S. Kowlowitz
       Furman Kornfeld & Brennan LLP
       545 Fifth Ave., Suite 401
       New York, New York 10017
       (212) 867-4100
       File No.: 302.026

       Christopher J. Bannon
       Aronberg Goldgehn Davis & Garmisa
       330 North Wabash Ave., Suite 1700
       Chicago, Illinois 60611
       (312) 828-9600

**PLEASE TAKE NOTICE** that on July 16, 2009, or as soon thereafter as this matter may be heard, the Defendants, SLEDJESKI & TIERNEY PLLC, THOMAS SLEDJESKI, MARY TIERNEY and BRIAN ANDREWS, by their attorneys, Robert & Robert PLLC, will move before the Honorable Joseph F. Bianco, District Judge, at the United States District Court, Eastern District of New York, for an Order to dismiss the Plaintiff's action for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6).

In support of this Motion, the Defendants shall rely upon the Memorandum of Law being served simultaneously herewith and the exhibits and Affidavit of THOMAS SLEDJESKI which are attached.

Defendants SLEDJESKI & TIERNEY PLLC,
THOMAS SLEDJESKI, MARY TIERNEY
and BRIAN ANDREWS

By: _____
    Clifford S. Robert (CR8483)
    Kurt Schaub (KS7045)
    Robert & Robert PLLC
    150 Broad Hollow Rd.
    Melville, New York 11747
    Ph. (631) 271-3300
    Fax: (631) 271-1784
    crobert@robertlaw.com

Clifford S. Robert (CR8483)
Kurt Schaub (KS7045)
Robert & Robert PLLC
150 Broad Hollow Rd.
Melville, New York 11747
ph: (631) 271-3300
fax: (631) 271-1784

Attorneys for Defendants SLEDJESKI & TIERNEY PLLC,
THOMAS SLEDJESKI, MARY TIERNEY and BRIAN
ANDREWS

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------------X
ST. PAUL FIRE & MARINE INSURANCE COMPANY,

                    Plaintiff,                  Civil Action No.:
                                              08-cv-05184-JFP-ETB

          v.

SLEDJESKI & TIERNEY PLLC, THOMAS SLEDJESKI,
MARY TIERNEY and BRIAN ANDREWS,

                    Defendants.
-------------------------------------------------------------------X

## DEFENDANTS' MEMORANDUM OF LAW
## IN SUPPORT OF MOTION TO DISMISS

## TABLE OF CONTENTS

Table of Authorities ............................................................................................ i

INTRODUCTION .............................................................................................. 1

I.        BACKGROUND ...................................................................................... 4

II.      LEGAL STANDARD FOR A MOTION TO DISMISS ................................... 8

III.    LEGAL ARGUMENTS ........................................................................ 12

A.  ST. PAUL Can Only Disclaim for an Insured's "Prior Knowledge" of a Potential
Claim Where the Insured Fails to Give Notice of Such Potential Claim to the Carrier
Before the Inception Date of the Policy and Defendants in This Litigation Did
Give the Required Notice to ST. PAUL ............................................................ 12

B. New York Law Requires That Any Ambiguity in ST. PAUL's Policy
Concerning the Circumstances under Which There Will Be an Exclusion to the
Policy Be Resolved As a Matter of Law by the Court in Favor of the Defendants ...... 17

C.  ST. PAUL Is Precluded As a Matter of Law from Rescinding Defendants' Policy
Because ST. PAUL Accepted Premiums from the Defendants after the Defendants
Renewed Their Policy ................................................................................. 18

D. ST. PAUL's Disclaimer Was Untimely As a Matter of Law ................................... 20

E. ST. PAUL Has Waived All Defenses to Coverage Other Than Their
"Prior Knowledge" Defense ........................................................................... 21

IV.    CONCLUSION ...................................................................................... 25

## TABLE OF AUTHORITIES

**Federal Case Law**                                                                          **Page**

Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007) ........................................................ 7

Chambers v. Time Warner, Inc., 282 F.3d 147, 153 (2nd Circ. 2002) ......................................... 9

Cortec Industries Inc. v. Sum Holding L.P., 949 F.2d 42 (2nd Circ. 1991) ................................. 9

Luria Bros. & Co. v. Alliance Assurance Co., 780 F.2d 1082 (2nd Circ. 1986) ........................ 21

Munno v. Town of Orangetown, 391 F.Supp.2d 263 (SDNY 2005) ........................................... 10

Papasan v. Allain, 478 U.S. 265 (1986) ................................................................................... 7,8

State of New York v. Amro Realty Corporation, 936 F.2d 1420 (2nd Circ. 1991) ............... 21,22

Thomas v. Westchester County Health Care Corp., 232 F.Supp.2d 273 (SDNY 2002) ........... 10


**Federal Statutes**

Federal Rule of Civil Procedure § 12(b)(6) .................................................................. 1,8,9,10,11

Federal Rules of Civil Procedure § 56 ........................................................................... 8,9,10,11
.

**Federal Treatises**

5C Wright & Miller, Fed.Prac. & Proc. Civ. 1216, pp. 235-236 [3d ed. 2004] ......................... 8

5C Wright and Miller, Fed. Prac. & Proc. Civ.3d § 1366 ......................................................... 9


**New York State Case Law**

Aguirre v. City of New York, 214 A.D.2d 692 (2nd Dept. 1995) ............................................... 23

Allou Health & Beauty Care Inc. v. Aetna Casualty and Surety Co., 269 A.D.2d 478
(2nd Dept. 2000) ....................................................................................................................... 17

Belt Painting Corp. v. TIG Insur. Co., 100 N.Y.2d 377 (Ct. App. 2003) .................................. 17

Bible v. John Hancock Mut. Life Ins. Co., 256 N.Y. 458 (Ct. App. 1931) ................................. 19

Breed v. Insurance Company of North America, 46 N.Y.2d 351 (Ct. App. 1978) ................... 18

Cass v. American Guaran. & Liability Insur. Co., 13 Misc.3d 1238(A) (Sup.Ct. N.Y. 2006) ... 14

Continental Insur. Co. v. Helmsley Enterprises Inc., 211 A.D.2d 589 (2nd Dept. 1995) ....... 19,20

Estee Lauder v. OneBeacon Insur. Group, 873 N.Y.S.2d 592 (1st Dept. 2009) .......................... 21

Executive Risk Indem. Inc. v. Pepper Hamilton LLP., 56 A.D.3d 196 (1st Dept. 2008) ....14,15,16

Firemens Fund Ins. Co. v. Hopkins, 88 N.Y.2d 836 (Ct. App. 1996) ........................................ 23

First Financial Ins. Co. v. Jetco Contr. Corp., 1 N.Y.3d 64 ( 2003) ........................................... 20

General Accident Insurance Corp. v. Cirucci, 46 N.Y.2d 862 (Ct. App. 1979) .................... 21,22

Hartford Ins. Co. v. County of Nassau, 46 N.Y.2d 1028 (Ct. App. 1979) ................................. 20

Hotel des Artistes v. General Accident Insurance Co., 9 A.D.3d 181 (1st Dept. 2004) .............. 22

In re Ancillary Receivership of Reliance Insur. Co., 55 A.D.3d 43, 47 (1st Dept. 2008) ........... 18

Ingalsbe v. Chicago Insur. Co., 270 A.D.2d 684 (3rd Dept. 2000) .............................................. 14

Kiss Constr. NY Inc. v. Rutgers Casualty Insur. Co., 2009 WL 857601 (1st Dept. 2009) ......... 19

Mann v. Gulf Insur. Co., 3 A.D.3d 554 (2nd Dept. 2004) ......................................................... 20

Murray Oil Products v. Royal Exchange Assur. Co., 21 N.Y.2d 440 (Ct. App. 1968) ............. 17

Oot v. Home Ins. Co. of Ind., 244 A.D.2d 62, 69 (4th Dept. 1998) ............................................ 18

Scalia v. Equitable Life Assur. Soc. of the U.S., 251 A.D.2d 315 (2nd Dept. 1998) ................... 19

Shell v. Fireman's Fund Insur. Co., 17 A.D.3d 444 (2nd Dept. 2005) ......................................... 22

Thomas J. Lipton Inc. v. Liberty Mutual Insur. Co., 34 N.Y.2d 356 (Ct. App. 1974) ............... 17

Tyras v. Mt. Vernon Fire Insur. Co., 36 A.D.3d 609 (2nd Dept. 2007) ....................................... 19

Venigalla v. Penn Mut. Ins. Co., 130 A.D.2d 974, *lv. dis.* 70 N.Y.2d (4th Dept. 1987) .............. 18

Ward v. Corbally Gartland & Rappleyea, 207 A.D.2d 342 (2nd Dept. 1994) .............................
22

## **New York State Statutes**

CPLR § 306-b ................................................................................................................... 4

Estates Powers and Trusts Law § 5-4.1 ........................................................................ 4

Insurance Law § 3105 ...................................................................................................... 19

Insurance Law § 3420(d) ................................................................................................ 20

**INTRODUCTION**

Defendants, SLEDJESKI & TIERNEY PLLC, THOMAS SLEDJESKI, MARY TIERNEY and BRIAN ANDREWS (hereafter collectively "the Defendants"), submit this Memorandum of Law, the attached Affidavit of Defendant THOMAS SLEDJESKI ("Exhibit "A") and all other exhibits, in support of Defendants' Motion to Dismiss the Plaintiff ST. PAUL FIRE & MARINE INSURANCE COMPANY (hereafter "ST. PAUL") action for its failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6).

The Defendant SLEDJESKI & TIERNEY PLLC (hereafter "S&T") was a law firm where the individual Defendants THOMAS SLEDJESKI (hereafter "SLEDJESKI"), MARY TIERNEY (hereafter "TIERNEY") and BRIAN ANDREWS (hereafter "ANDREWS"), who are all attorneys, practiced law together.  During the time period that is the subject of the present lawsuit, SLEDJESKI and TIERNEY were partners and ANDREWS was an associate.[1] *See* Affidavit of SLEDJESKI, Exhibit "A," ¶ 5.

While S&T was in existence it was insured for legal malpractice by several consecutive ST. PAUL policies that each had terms of one year.  These policies ran from: December 20, 2005 to December 20, 2006; December 20, 2006 to December 20, 2007 (Exhibit "B"); and December 20, 2007 to December 20, 2008 (Exhibit "C").  When the firm dissolved on January 15, 2008, it purchased a "tail" policy which was effective from January 15, 2008 to January 15, 2011.  *See* "Tail" Policy, Exhibit "D" and Affidavit of SLEDJESKI, Exhibit "A," ¶ 6.

---

[1] SLEJESKI & TIERNEY PLLC dissolved as a law firm on January 15, 2008 when MARY TIERNEY left the partnership to practice law at a different firm.  Thereafter THOMAS SLEDJESKI formed THOMAS C. SLEDJESKI & ASSOCIATES PLLC where he and BRIAN ANDREWS continue to practice law.

1

In October of 2007, Defendant TIERNEY discovered an alleged omission by the S&T firm that could potentially lead to a legal malpractice lawsuit. The alleged omission concerned S&T's failure to successfully obtain service over defendants in a wrongful death action. As soon as TIERNEY discovered the omission in October of 2007, she mailed a letter to S&T's broker, Protection Advantage, which immediately notified ST. PAUL. *See* Affidavit of SLEDJESKI, Exhibit "A," ¶ 10 and TIERNEY Letter, Exhibit "E." Protection Advantage stamped the notice "Received" on October 31, 2007 and forwarded it to ST. PAUL the same day. ST. PAUL has acknowledged that they received the TIERNEY Letter on November 8, 2007. *See* Affidavit of SLEDJESKI, Exhibit "A," ¶ 11, TIERNEY Letter, Exhibit "E" and Reservation of Rights letter, Exhibit "H," ¶ 1. Since S&T's policy for the year 2007 was due to expire in December, the information about the potential claim was also included, as per Protection Advantage's request, in a Supplemental Claim Form (see Exhibit "F") attached to S&T's renewal application form. This Supplemental Claim Form included the necessary details concerning the Statute of Limitations which had expired. *See* Affidavit of SLEDJESKI, Exhibit "A," ¶ 12 and Supplemental Claims Form, Exhibit "F."

After ST. PAUL was notified twice about the potential malpractice claim, first by the TIERNEY Letter forwarded to them by Protection Advantage and then by the Supplemental Claims Form, the carrier agreed to renew S&T's policy. ST. PAUL then accepted premiums from S&T for several months and gave no indication whatsoever to S&T that they would disclaim coverage if the potential claim that TIERNEY discovered turned into an actual claim. When S&T dissolved in January 15, 2008, ST. PAUL also accepted premiums for the "tail" policy that S&T purchased which was effective from January 15, 2008 to January 15, 2011. *See*

2

Affidavit of SLEDJESKI, Exhibit "A," ¶ 13.  Despite this, ST. PAUL is now disclaiming

coverage for the lawsuit filed against S&T by their former client.  ST. PAUL is basing its

disclaimer on S&T's "Prior Knowledge" of the potential claim which accrued before the

"inception date" of the renewed policy (i.e., December 20, 2007).  *See* ST. PAUL's Complaint,

Exhibit "G," ¶ 27.

ST. PAUL's declaratory judgment action fails to plead that S&T "failed to notify" ST.

PAUL of the potential claim before the inception date of the renewed policy.  A pleading of such

a fact is necessary to assert a "Prior Knowledge" defense coverage but ST. PAUL can not plead

such a failure because it was, in fact, notified twice.  ST. PAUL's pleading, therefore, is defective

and inadequate and can not be remedied.  See further discussion *infra*.

ST. PAUL's declaratory judgment action also omits any pleading regarding the fact that

ST. PAUL accepted S&T's premiums to renew the policy.  Under New York State law, which is

the substantive law that must be applied in this case due to the New York location of the

Defendants and the insurance contracts, carriers are estopped from accepting premiums for a

policy, then trying to rescind that policy later on.  Although, ST. PAUL's counsel denies that they

are trying to rescind Defendants' policy and are only trying to disclaim coverage for the one

incident,[2] their argument for disclaiming coverage is based on an alleged "material

misrepresentation of the facts" made by S&T before the inception date of the policy, namely, an

alleged omission of notification about the potential claim by S&T's former client.  A "material

misrepresentation of the facts" prior to the inception of a contract is an argument to rescind such

---

[2]  See, for example, ST. PAUL's counsel's letter to Hon. J. Joseph Bianco, dated April 3,
2009, ¶ 4.

3

a contract under New York State contract law, no matter how ST. PAUL's counsel tries to characterize it.  For that reason, ST. PAUL should be estopped from seeking a rescission of the policy.  See further discussion *infra*.

## I.    BACKGROUND

The legal malpractice claim that is the subject of this declaratory judgment action arises from the death of Jeffrey Nelson in a motor vehicle accident on July 26, 2003.  Under New York State law, any wrongful death action filed on his behalf had to be commenced by his personal representative within two years.  See Estates Powers and Trusts Law § 5-4.1.  Once an action is commenced, the decedent's estate has 120 days to serve the Summons and Complaint on the tortfeasors.  See CPLR § 306-b.  If service can not be obtained within 120 days, the CPLR allows for a possible 120 day extension of time if the plaintiff makes an application to the court.

The Estate of Jeffrey Nelson was administered by Mr. Nelson's widow, Candice Nelson, who retained S&T.  S&T filed a wrongful death action on the last day possible of the Statute of Limitations (July 27, 2005).   Thereafter, S&T had 120 days to serve the tortfeasors with the Summons and Complaint but failed to do so.  S&T could have made an application at that point for a 120-day extension to complete its service but for reasons that are unknown, they never made such an application and service of the Summons and Complaint was never effectuated before the deadline.  See Affidavit of SLEDJESKI, Exhibit "A," ¶¶ 2, 7 and 8.  A potential legal malpractice claim,[3] therefore, accrued against the Defendants in March of 2006 (i.e., 240 days after the

---

[3] The word "Claim" will be used in this Memorandum in the same manner as it is defined in the Defendants' policies from ST. PAUL.  This policy definition of a "Claim" is quoted in ST. PAUL's declaratory judgment action, Paragraph 14, which states that a "Claim"

purchase of the index number).  *See* Affidavit of SLEDJESKI, Exhibit "A," ¶¶ 8, 9.

In October of 2007, TIERNEY discovered S&T's mistake.  Prior to TIERNEY's discovery in October of 2007, no partner or associate at S&T was aware of the problem.  *See* Affidavit of SLEDJESKI, Exhibit "A," ¶ 10.  TIERNEY immediately notified S&T's broker, Protection Advantage, by letter dated October 15, 2007 which was stamped "Received" by the broker on October 31, 2007.  Protection Advantage notified ST. PAUL on the same day and ST. PAUL has acknowledged receiving the notice on November 8, 2007.  *See* Affidavit of SLEDJESKI, Exhibit "A," ¶¶ 10, 11, TIERNEY Letter, Exhibit "E" and Reservation of Rights letter, Exhibit "H," ¶ 1.  Since S&T's policy term was due to end in December of 2007, and S&T wanted to renew with ST. PAUL, Protection Advantage asked S&T to notify ST. PAUL of the potential claim by filling out a Supplemental Claims Form to be attached to the regular renewal application.  *See* Affidavit of SLEDJESKI, Exhibit "A," ¶ 12 and Supplemental Claims Form, Exhibit "F."  TIERNEY filled out such a Supplemental Claims form in October of 2007 which included the details of the potential claim and this was given to ST. PAUL.  *See* Affidavit of SLEDJESKI, Exhibit "A," ¶ 12.

After being notified twice about the potential claim, ST. PAUL agreed to renew S&T's policy with the new policy running from December 2007 to December 2008 and also issued a "tail" policy which began the date that S&T dissolved on January 15, 2008 and was effective until January 15, 2011.  *See* Affidavit of SLEDJESKI, Exhibit "A," ¶¶ 12, 13 and ST. PAUL's

---

"means a demand received by an insured for money alleging an error, omission or negligent act in the rendering of or failure to render 'professional legal services' for others . . ." Under this definition of a "Claim," the Defendants' allowing the Statute of Limitations to expire without obtaining good service over the tortfeasors in the motor vehicle case did not create a "Claim" — only a potential claim.  See further discussion *infra*.

Policies (Exhibits "B," "C" and "D").   ST. PAUL collected S&T's premium checks for the

renewed policy for several months without mentioning that it planned to disclaim coverage if the

incident involving the Nelson estate turned into an actual claim.   After S&T dissolved, ST.

PAUL also accepted premiums from S&T for their "tail" policy.   When ST. PAUL accepted the

"tail" premiums, it again remained silent about its intention to disclaim.   *See* Affidavit of

SLEDJESKI, Exhibit "A," ¶ 13.

      After Defendants' policy was renewed, S&T was contacted by Daniel Zahn, Esq., who

had been retained by the Estate of Nelson to bring a lawsuit against S&T for legal malpractice.

Daniel Zahn, Esq. made a demand for one million dollars to settle the claim.[4]   ST. PAUL

assigned the defense of the action to Rivkin Radler and also sent S&T three Reservation of

Rights Letters to S&T.   These Letters mentioned that ST. PAUL was investigating the

circumstances of the claim and reserved ST. PAUL's right to disclaim coverage based on S&T's

knowledge of the potential claim prior to the inception date of the policy.[5]   *See* Affidavit of

SLEDJESKI, Exhibit "A," ¶ 14 and Three Reservation of Rights Letters, Exhibit "H," "I, " and

"J."   Four months after ST. PAUL sent S&T its last Reservation of Rights Letter, ST. PAUL

commenced its declaratory judgment action against S&T and its partners and associates,

---

     [4] A lawsuit was later filed with the caption of <u>The Estate of of Jeffrey Scott Nelson a/k/a Jeffrey S. Nelson and its distributees by its Administrator, Candice Nelson and Candice Nelson, Individually and as guardian and natural mother of the two infant minors, Scott J. Nelson and Michael R. L. Nelson v. Brian Andrews a/k/a Brian Anthony Andrews, Thomas C. Sledjeski a/k/a Thomas Sledjeski II, Mary Tierney a/k/a Mary Duffy-Tierney, Sledjeski & Tierney PLLC and Thomas C. Sledjeski & Associates PLLC, successors in interest to and a/k/a Sledjeski & Tierney PLLC,</u> and is venued in Supreme Court of the State of New York, Suffolk County, Index No.: 08-12187.

     [5] Plaintiff refers to this as the "Prior Knowledge" defense and Defendants' counsel will use the same terminology in this Memorandum of Law.

TIERNEY, SLEDJESKI and ANDREWS which makes the disclaimer untimely as a matter of law. *See* ST. PAUL Complaint, Exhibit "G" and further discussion *infra*.

ST. PAUL's basis for disclaiming coverage relied on the "Prior Knowledge" exclusion paragraph in the renewed ST. PAUL policy. *See* ST. PAUL Policy, Exhibit "C," Sec. VIII.G. However the same policy also included a "Reporting Requirement" (Sec. IX.B.) which required insured parties to report "potential claims." When the "Prior Knowledge" paragraph and the "Reporting Requirement" are read together in context with each other they can only logically mean that a potential claim which was properly reported by the insured prior to the inception date of the policy (as the Defendants did) would be covered. See further discussion *infra*.

If the "Prior Knowledge" and "Reporting Requirement" paragraphs of the policy create any confusion when read together, New York law requires that the ambiguity be resolved as a matter of law in favor of the Defendants. The interpretation of the policy language put forth by ST. PAUL, by contrast, would allow ST. PAUL to disclaim for <u>any</u> actual "claim" if the potential for that claim occurred during a previous policy term — <u>even if the insured notified the carrier of the potential claim when the policy was renewed as the policy required</u>. See further discussion *infra*.

ST. PAUL has put forth no argument to support its disclaimer other than its "Prior Knowledge" defense. No other defense is mentioned in its declaratory judgment action or in its Reservation of Rights letters. Under New York State law, the carrier is restricted in its lawsuit to the disclaimer reasons that are included in their Reservation of Rights letters, so all other defenses have been waived. *See* Reservation of Rights Letters, Exhibits "H," "I," and "J."

## II.   LEGAL STANDARD FOR A MOTION TO DISMISS

Defendants S&T, TIERNEY, SLEDJESKI and ANDREWS have brought this motion to dismiss pursuant to Federal Rules of Civil Procedure 12(b)(6).  Such a motion should be granted where the plaintiff's pleadings are merely a formulaic recitation of the elements of a cause of action.  *See* <u>Bell Atlantic Corp. v. Twombly</u>, 550 U.S. 544, 555 (2007) and <u>Papasan v. Allain,</u> 478 U.S. 265 (1986).  To survive dismissal, plaintiff's factual allegations must be enough to raise a right of relief above the speculative level and  "the pleading must contain something more . . . than . . . a statement of facts that merely creates a suspicion [of] a legally cognizable right of action."  *See* 5 C. Wright & Miller, Federal Practice and Procedure 1216, pp. 235-236 [3d ed. 2004].  On a motion to dismiss, the courts are not obligated to assume as true any allegations in the complaint if those allegations are legal conclusions which are couched as factual allegations (<u>Papasan</u> *supra* at 286).

ST. PAUL's Complaint mistakenly tries to plead legal conclusions as facts and omits the actual facts surrounding TIERNEY's notification of ST. PAUL regarding the potential claim. ST. PAUL's Complaint merely quotes the policy paragraph that requires S&T to notify ST. PAUL of potential claims (see ST. PAUL Complaint, Exhibit "G," ¶ 13) but then fails to plead a "failure to notify" by the insured.

ST. PAUL also pleads in ¶ 27 of the Complaint that Defendants violated the "Prior Knowledge" exclusion paragraph of the ST. PAUL policy, but the pleading is entirely conclusory and omits any of the details of when the Defendants first became covered by ST. PAUL, when they renewed, when they notified ST. PAUL of the potential claim, when the claim became an actual claim and why all of these facts supposedly warrant a disclaimer.

Plaintiffs' counsel are allowed to shape their pleadings in the way most favorable to their client, but they are not allowed to mislead the Court by omitting highly material facts that warrant dismissal of their claim.  They omit any pleading of a "failure to notify" the carrier, but since there <u>were</u> two notifications of the carrier, such an omission in ST. PAUL's pleading can not be remedied.

### *Conversion of This 12(b)(6) Motion to a Rule 56 Summary Judgment Motion Is Not Necessary in This Case Since Defendants' Exhibits Are All Items That ST. PAUL Already Has in Its Possession When the Action Was Commenced*

When affidavits and exhibits are included with a defendant's Rule 12(b)(6) motion, Federal Courts have discretion to convert such a motion *sua sponte* to a motion for summary judgment pursuant to Rule 56 after putting the plaintiff on notice that they are making such a conversion.  See generally, 5C Fed. Prac. & Proc. Civ.3d § 1366, Wright and Miller, which notes that "[t]he element that triggers the conversion is a challenge to the sufficiency of the pleader's claim supported by extra-pleading material."

Federal courts, however, have elected to <u>not</u> convert Rule 12(b)(6) motions to summary judgment motions where the documents attached to defendant's motion are documents which the plaintiff was <u>already on notice of</u> and/or <u>relied upon in drafting their complaint</u>. *See, e.g.,* <u>Chambers v. Time Warner, Inc.</u>, 282 F.3d 147, 153 (2nd Circ. 2002) where the Second Circuit held that

> "[w]here plaintiff has actual notice of all the information in the movant's papers and has relied upon these documents in framing the complaint, the necessity of translating a Rule 12(b)(6) motion into one under Rule 56 is largely dissipated." <u>Id.</u>

9

The Chambers case quoted from the Second Circuit's decision in Cortec Industries Inc. v. Sum Holding L.P., 949 F.2d 42 (2ⁿᵈ Circ. 1991). The ruling in Cortec also held that documents could be considered by the court without converting the motion even if the plaintiff failed to attach them to the complaint if the documents were integral to the plaintiff's claims. Id at 46 – 48.

The case of Munno v. Town of Orangetown, 391 F.Supp.2d 263 (SDNY 2005), gives a good illustration of these principles. In Munno, the plaintiff was a police officer who was suing his police chief and the town that he worked for when they suspended him without pay. Defendants moved to dismiss under Rule 12(b)(6). The Southern District considered numerous documents which were attached to defendants' motion but not attached to plaintiff's complaint and did so without converting the motion to a Rule 56 summary judgment. The documents included: disciplinary charges filed against the officer, selected provisions of his collective bargaining agreement, affidavits and/or pleadings filed by officer in state court action which allegedly contradicted statements made by him in his complaint and two letter written by plaintiff's counsel in the state court action which contradicted . Id at 269. The court in Munno reasoned that each of these documents could be considered for a 12(b)(6) motion because they were documents that were "integral" to plaintiff's complaint as plaintiff had "actual notice" of them.

Similarly, in the case of Thomas v. Westchester County Health Care Corp., 232 F.Supp.2d 273 (SDNY 2002), documents attached to defendant's motion were considered by the court "because the documents were integral, because [plaintiff] knew of and possessed them and

10

because there [was] no dispute as to their authenticity." For these reasons the court could consider them without converting the motion to a summary judgment. Id. at 276.

*The Defendants' 12(b)(6) Motion Attaches Documents That Plaintiff Already Had in Their Actual Possession and Concern Matters Which Were Integral to Plaintiff's Complaint So That They Should Be Considered by This Court without Converting This Motion to a Rule 56 Summary Judgment Motion*

Plaintiff ST. PAUL did not attach any of the documents to its complaint that are attached to Defendants' motion to dismiss. Defendants' motion to dismiss, however, should not be converted to a Rule 56 summary judgment motion because Plaintiff had actual possession and notice of all of the attached documents and they are all integral to Plaintiff's complaint and New York law holds that under such circumstances no conversion of the motion is necessary.

The TIERNEY letter sent to Protection Advantage (Exhibit "E"), for example, was stamped "Received October 31, 2007" and ST. PAUL acknowledged receiving this notice by November 8, 2007 (see Exhibit "H") so ST. PAUL clearly had "actual notice" of same when it drafted its complaint. ST. PAUL also had actual notice of the Supplemental Claims Form (Exhibit "F") which was sent with Defendants' application to renew and ST. PAUL had "actual notice" of the three Reservation of Rights letters that it sent to Defendants [Exhibits "H," "I," and "J"] and the policies it wrote to Defendants. *See* Affidavit of SLEDJESKI, Exhibit "A," ¶¶ 11 – 14. These policies were quoted in ST. PAUL's Complaint, Exhibit "G," ¶¶ 11 – 15.

For the above reason, this Court should consider Defendants' motion to dismiss without converting the motion to a motion for summary judgment.

11

## III.   LEGAL ARGUMENTS

**A. ST. PAUL Can Only Disclaim for an Insured's "Prior Knowledge" of a Potential Claim Where the Insured Fails to Give Notice of Such Potential Claim to the Carrier Before the Inception Date of the Policy and Defendants in This Litigation Did Give the Required Notice to ST. PAUL**

Plaintiff ST. PAUL has tried to disclaim coverage against Defendants based on the "Prior Knowledge" exclusion paragraph in its policy. *See* ST. PAUL Policy, Exhibit "C," Sec. VIII.G. Such exclusion language is typical for "Claims Made" policies and Defendants' policies during the time in question were all "Claims Made" policies. The "Claims Made" nature of a policy means that coverage was triggered when a "claim" was made which was defined in the policy as an "actual demand for money" or closely related act <u>by a client</u> of the insured or other third-party. (Such a policy can be contrasted with a policy where coverage is based on an "occurrence" which is an act or omission <u>by the insured</u> that might lead to a claim.)

In addition to the "Prior Knowledge" exclusion paragraph each of ST. PAUL's policies written for the Defendants had a "Reporting Requirement" (Exhibit "C," Sec. IX. B.) which required the insured to report any "circumstance" that might give rise to a "claim." Taken together, the only logical understanding is that ST. PAUL would pay for a "claim" that was made in the <u>current</u> policy period which was the result of an "occurrence" (i.e., potential claim, negligence, omission, etc.) which took place in the <u>previous</u> policy period as long as the carrier was notified of the "occurrence" before the inception date of the renewed policy.

ST. PAUL, however, is taking the position that since the "occurrence" that led to the Nelson legal malpractice lawsuit occurred in a prior ST. PAUL policy term, ST. PAUL is justified in disclaiming for the "claim." **<u>ST. PAUL's interpretation of the policy would allow</u>**

12

**them to avoid covering any "claim" against an insured who renewed with ST. PAUL where**

**that "claim" was result of an occurrence that happened prior to the inception date of the**

**current policy even if the insured notified ST. PAUL of the occurrence before the inception**

**date of the renewed policy.**

Defendants notified the carrier when they applied to renew their policy.  In fact, they did

so twice.  The information was in the TIERNEY Letter and in the Supplemental Claims Form.

*See* Exhibits "E" and "F."  In the Reservation of Rights letter sent by ST. PAUL on March 12,

2008 to SLEDJESKI the carrier admitted that they were notified of the potential claim against

Defendants:

> We first received notice of a potential claim by way of letter from
> your partner, Mary Tierney, to Protection Advantage on October 31, 2007.
> [ST. PAUL] Travelers received the notice on November 8, 2007.  On or about
> December 17, 2007, Ms. Nelson retained counsel and counsel made announced his
> intention to file suit and stated that he would be making a demand soon.  Then in
> late January, claimant's counsel demanded $1 million to settle the matter.  In light
> of this demand for monetary damages, the potential claim became an actual claim,
> even though no lawsuit has yet been filed or served.
>
> *See* Reservation of Rights Letter, March 12, 2008, Exhibit "H."

By its own admission, ST. PAUL had notice of the potential claim nearly six weeks

before the inception date of the December 20, 2007 to December 20, 2008 policy and

approximately ten weeks before the actual  "claim" materialized in late January of 2008.

*New York Case Law Demonstrates How Disclaimers Based on "Prior Knowledge" May Properly Be Carried Out in Contrast to the Manner in Which ST. PAUL Is Trying to Disclaim in This Litigation*

The rationale for requiring the insured to tell the insurance company about "potential claims" is so the carrier can "make a timely investigation of the relevant facts, and to exercise control over the matter early on, perhaps leading to early settlement or to help insurers to take steps to eliminate the risk of future similar occurrences." Cass v. American Guarantee & Liability Insur. Co., 13 Misc.3d 1238(A), (Sup. Ct. New York 2006).

An example of a "Prior Knowledge" disclaimer is illustrated in Ingalsbe v. Chicago Insur. Co., 270 A.D.2d 684 (3rd Dept. 2000) where both the facts and the outcome were reversed from the present situation.  In Ingalsbe, the insured attorney was sued for legal malpractice for failing to file a lawsuit before the Statute of Limitations expired.  The legal malpractice accrued while the lawyer was insured with Home Insurance Company but the claim was not started by the lawyer's ex-client until after the lawyer had switched to Chicago Insurance.  Chicago Insurance did not want to pay for the claim because the incident that eventually triggered the claim occurred before Chicago's policy inception date and because the attorney had knowledge of the occurrence prior to obtaining his new coverage with Chicago and did not notify them.  The Third Dept. held that the second insurance company (i.e., Chicago Insurance) had no obligation to insure the attorney because he did not notify them of the Statute of Limitations problem before the inception date of the Chicago policy.  Id.

Another "Claims Made" policy in which there was a disclaimer for "Prior Knowledge" is the case of Executive Risk Indemnity Inc. v. Pepper Hamilton LLP., 56 A.D.3d 196 (1st Dept.

14

2008).  In Executive Risk Indemnity, the insured failed to tell its carrier about a fraud carried out about one its employees before the inception date of the policy.  (Again, this is unlike the present situation where S&T did notify the carrier of the Statute of Limitations problem as soon as they became aware of it and where the carrier acknowledged receipt of this notification.)

The policy in the Executive Risk case said that Executive Risk Indemnity Insurance would not provide coverage for

> The Executive Risk policy
> **"[a]ny claim arising out any act, error or omission committed prior to the inception date of the policy which the insured knew or should have known could result in a claim, *but failed to disclose to the Company at the inception.*" [emphasis added]**

The legal issue in Executive Risk then became "Where an attorney does not notify the carrier about a potential claim or occurrence that took place before the inception date as he was required, was the failure to not notify justifiable?"  The First Department in Executive Risk said that when judging the "reasonableness" of an attorney who fails to notify the carrier there is a mixed subjective/objective test but this test is not even reached in the present litigation because the insured (S&T) did notify the carrier of the potential claim and the carrier acknowledged that it was notified prior to a claim being made.

*There Is Ambiguous Language in the Exclusion for "Prior Knowledge" Section*
*of the ST. PAUL Policy When It Is Viewed in Context with the Rest of the Policy*

The Executive Risk case shows what the legal issues are in a "normal" case involving a

"Prior Knowledge" disclaimer where an insured fails to notify its carrier. The policy language in

Executive Risk is not contradictory or ambiguous: if there is no notification, there is no coverage.

By contrast, the language of the policy in S&T's ST. PAUL policy is confusing and ambiguous

about notification of the carrier because (according to ST. PAUL's counsel) it requires

notification and then disclaims whether or not there was notification. Defendants' policy from

ST. PAUL states:

> Section VIII - Exclusions
>
> This insurance does not apply to "claims"
> G. Arising out of any error, omission, negligent act or "personal injury"
> occurring prior to the inception date of this policy if any insured prior to the
> inception date knew or could have reasonably foreseen that such error,
> omission, negligent act or "personal injury" might be expected to be the
> basis of a "claim" or "suit"
>
> *See* Exhibit "C."

This policy language does not discuss notification of the carrier even though it is required

elsewhere in the policy. This policy language is missing the italicized phrase that is at the end of

the "Prior Knowledge" exclusion paragraph in the Executive Risk case. See *supra*. It is

unreasonable and illogical for ST. PAUL to include a "Reporting Requirement" in their policy

and then take the position that such notice was meaningless and without any consequence. It is

also unreasonable and inequitable for ST. PAUL to have received the notification that they

16

required, renewed the policy, accepted the Defendants premiums, all the time remaining silent about their intention to disclaim if the potential claim they were told about turned into an actual claim.

## B. New York Law Requires That Any Ambiguity in ST. PAUL's Policy Concerning the Circumstances under Which There Will Be an Exclusion to the Policy Be Resolved As a Matter of Law by The Court in Favor of the Defendants

There is no question that ST. PAUL's policy, when taken as a whole, was ambiguous about which circumstances would result in an exclusion of coverage.  New York case law is clear that such ambiguous policy language must be resolved as a matter of law by the courts <u>in favor of the insured</u>.

In <u>Murray Oil Products v. Royal Exchange Assurance Co.</u>, 21 N.Y.2d 440 (Ct. App. 1968), for example, the Court of Appeals held that

> "[a]n insurer may not accept premiums under the provisions of an ambiguous policy which the insured may be justified in believing provides a particular form of coverage and then avoid liability by arguing that the policy is inapplicable to the contingency.  To do so would permit the insurer (to take) an unjust and unfair advantage of the insured . . "

<u>Id</u>. at 445 – 446.

Where there is ambiguity as to the existence of coverage, doubt is to be resolved in favor of the insured and against the carrier.  See <u>Allou Health & Beauty Care Inc. v. Aetna Casualty and Surety Co.</u>, 269 A.D.2d 478 (2nd Dept. 2000).  This doctrine is especially true for ambiguities found in an exclusionary clause.  <i>See</i> <u>Thomas J. Lipton Inc. v. Liberty Mutual Insur. Co.</u>, 34 N.Y.2d 356 (Ct. App. 1974) and <u>Belt Painting Corp. v. TIG Insur. Co.</u>, 100 N.Y.2d 377 (Ct. App.

2003). Any exclusion from coverage must be stated unambiguously.  *See* In re Ancillary

Receivership of Reliance Insur. Co., 55 A.D.3d 43, 47 (1ˢᵗ Dept. 2008) and Oot v. Home Ins. Co.

of Ind., 244 A.D.2d 62, 69 (1998).

      In Oot v. Home Insurance Company of Indiana, 244 A.D.2d 62 (4ᵗʰ Dept. 1998), the court

held that

> "... [w]here the meaning of a policy of insurance is in doubt or is subject
> to more than one reasonable interpretation, all ambiguity must be resolved in
> favor of the policyholder and against the company which issued the policy
> [citations omitted] This rule is enforced even more strictly when the
> language at issue purports to limit the company's liability" (quoting
> Venigalla v. Penn Mut. Ins. Co., 130 A.D.2d 974, *lv. dismissed* 70
> N.Y.2d (4ᵗʰ Dept. 1987)"

      See also Breed v. Insurance Company of North America, 46 N.Y.2d 351 (Ct. App. 1978)

("ambiguities in an insurance policy must be construed in favor of the insured .. This rule is

especially applicable where, as here, the ambiguity appears in a clause excluding coverage . . .")


## C.  ST. PAUL Is Precluded As a Matter of Law from Rescinding Defendants' Policy Because ST. PAUL Accepted Premiums from the Defendants after the Defendants Renewed Their Policy

      ST. PAUL's counsel denied that the carrier is trying to rescind the Defendants' policy in

their letter to Hon. J. Bianco dated April 3, 2009, yet ST. PAUL's disclaimer is clearly based on

an allegation that the Defendants made a "material misrepresentation of fact" to ST. PAUL

before the inception date of their renewed policy (December 2007 to December 2008).  The

"material misrepresentation" was Defendants supposed failure to notify carrier about the

potential claim relating to the Nelson Estate.[6]  Where there is a deliberate misrepresentation of a

material fact made by a party to an insurance contract before the contract is entered and the

misrepresentation is done with the intent to commit fraud, the other party may have the contract

rescinded.  *See* Insurance Law § 3105; Tyras v. Mt. Vernon Fire Insur. Co., 36 A.D.3d 609 (2nd

Dept. 2007); and Kiss Construction NY Inc. v. Rutgers Casualty Insur. Co., — N.Y.S.2d —,

2009 WL 857601 (1st Dept. 2009).  ST. PAUL's argument to this court parallels this contract

principle so their declaratory judgment action should be considered as an attempt to rescind the

Defendants' policy even if ST. PAUL does not characterize their disclaimer as a rescission.

It is well established New York insurance contract law, however, that where an insurance

company has accepted payment of premiums with knowledge of conditions that could have lead

to a rescission or disclaimer, the carrier is thereafter estopped from rescinding the policy.

Examples of this rule can be seen in the case of Scalia v. Equitable Life Assurance Society of the

United States, 251 A.D.2d 315 (2nd Dept. 1998) where the Second Department held that

> "It is well settled that the continued acceptance of premiums by
> the carrier after learning of facts which allow for rescission of the
> policy, constitutes a waiver of, or more properly an estoppel against,
> the right to rescind." Id at 315.

The Scalia decision cited Bible v. John Hancock Mut. Life Ins. Co., 256 N.Y. 458 (Ct. App.

1931), which decision was written by Chief Judge Cardozo.  A similar rule is put forth in Continental

Insur. Co. v. Helmsley Enterprises Inc., 211 A.D.2d 589 (2nd Dept. 1995), where the Second

---

[6]  For the reasons, discussed above, there was no actual misrepresentation because
Defendants notified the carrier of the potential claim twice and ST. PAUL acknowledged receipt
of this notification in its Reservation of Rights letter.

Department held that the plaintiff insurance company

> "waived its right to seek rescission of the contract of insurance when it
> knowingly accepted premium payments for several months following
> discovery of the alleged misrepresentations upon which it claimed to have
> relied when it issued the policies.  Plaintiff's claimed attempt to both accept
> premiums and reserve its right to rescind is unenforceable for lack of
> mutuality and timeliness." Id. at 589.

Of course, S&T's case is even stronger than the case of the insured in Continental because

S&T et al. never made any misrepresentations to ST. PAUL when they renewed their policy, but

were truthful and forthcoming about a possible future lawsuit by the Nelson estate.


**D. ST. PAUL's Disclaimer Was Untimely As a Matter of Law**

ST. PAUL's declaratory judgment must also be dismissed as a matter of law since ST. PAUL

waited six months after it began its defense and indemnification of the defendants to bring the instant

declaratory judgment action.  New York law holds that an insurer will be estopped or waive its right

to bring a declaratory action for disclaimer against an insured where the carrier has unreasonably

delayed in doing so. This requirement is not just imposed by contract but is a requirement as a matter

of law.  See Insurance Law § 3420(d) [written disclaimer of coverage must be provided "as soon as

is reasonably possible"]; Hartford Ins. Co. v. County of Nassau, 46 N.Y.2d 1028 (Ct. App. 1979)

(finding two-month delay before carrier disclaimed was unreasonable as a matter of law); First

Financial Ins. Co. v. Jetco Contr. Corp., 1 N.Y.3d 64 ( 2003) (finding 48-day delay was unreasonable

as a matter of law); and Mann v. Gulf Insur. Co., 3 A.D.3d 554 (2nd Dept. 2004) (finding four-month

delay was unreasonable as a matter of law).  ST. PAUL had the same knowledge about the facts of

the underlying legal malpractice action throughout this six-month period. As such, ST. PAUL's

delay in disclaiming coverage was untimely as a matter of law.


**E. ST. PAUL Has Waived All Defenses to Coverage Other Than Their**
**"Prior Knowledge" Defense**

ST. PAUL has not put forth any defense in their pleadings other than the "Prior

Knowledge" defense discussed above. They have also failed to mention any other defense in

their Reservation of Rights letters. As a result, ST. PAUL has waived all of its defenses besides

the "Prior Knowledge" defense, which for the reasons cited above, must fail.

New York law holds that the language of a carrier's disclaimer letter must specifically

mention the grounds for disclaiming coverage and the carrier waives any basis for disclaiming

that is not mentioned in the disclaimer letter to the insured. *See* State of New York v. Amro

Realty Corporation, 936 F.2d 1420 (2nd Circ. 1991). In that case, the Second Circuit held that

> New York Law establishes that an insurer is deemed, as a matter of law,
> to have intended to waive a defense to coverage where other defenses are
> asserted, and where the insurer possesses sufficient knowledge (actual or
> constructive) of the circumstances regarding the unasserted defense. . . .
> Support for this conclusion comes from several decisions of the New York
> State Court of Appeals. In General Accident Insurance Corp. v. Cirucci,
> 46 N.Y.2d 862 (Ct. App. 1979) (per curiam) the court stated that 'although,
> under the facts of this case a disclaimer might have been premised on
> [a certain ground], since this ground was not raised in the letter of disclaimer,
> it may not be asserted now.

The Second Circuit in the Amro decision cited its own previous decision in the case of

Luria Bros. & Co. v. Alliance Assurance Co., 780 F.2d 1082, 1090-91 (2nd Circ. 1986). The

General Acc. Ins. Corp. case and the Amro were both cited this year in the case of Estee Lauder

v. OneBeacon Insur. Group, 873 N.Y.S.2d 592 (1st Dept. 2009).

In the case of Shell v. Fireman's Fund Insur. Co., 17 A.D.3d 444 (2nd Dept. 2005), the Second Department held that "an insurer's justification for denying coverage is strictly limited to the ground stated in the notice of disclaimer." Id at 446. The Shell decision cited General Accident Insur Co. (supra) which was also cited in the federal Amro case (supra). The same holding was outlined in Ward v. Corbally Gartland & Rappleyea, 207 A.D.2d 342 (2nd Dept. 1994) ("a notice of disclaimer must 'promptly apprise the claimant with a high degree of specificity of the grounds or ground on which the disclaimer is predicated'" Id. at 343) (quoting from General Accident Insur. Co.)

Even if the insured gave late notice of claim to the carrier and the policy mentioned that "late notice" created an exclusion to coverage, if the carrier did not cite "late notice" in its disclaimer letter to the insured, then the carrier waived that late notice defense. See Ward (supra) at 343: "This rule is applicable even if the insured, in the first instance, had failed to provide the carrier with timely notice of its claim."

### An Inadequate Disclaimer Letter Will Waive the Carriers' Defenses to Coverage Even for Cases That Do Not Arise from Personal Injury or Death

The requirement of insurance carrier to give reason for disclaimer in its disclaimer letter or else thereafter waive such defense is not limited to cases of disclaimer of actions for personal injury or death. In Hotel des Artistes v. General Accident Insurance Co., 9 A.D.3d 181 (1st Dept. 2004), for example, the claim in dispute was for property damage resulting from a fire. The insurer did not disclaim on the basis of late notice and only raised it for the first time after a

lawsuit for a declaratory judgment was begun. The First Department held that "[a]n insurer must first give written notice of disclaimer on the ground of late notice 'as soon as is reasonably possible after it first leans of the accident or of grounds for disclaimer of liability' and failure to do so 'precludes effective disclaimer.'" Id at 193, quoting from Firemen's Fund Ins. Co. v. Hopkins, 88 N.Y.2d 836 (Ct. App. 1996).

The case of Aguirre v. City of New York, 214 A.D.2d 692 (2nd Dept. 1995) involved a claim for property damage to some cars that were damaged by a paint-spraying machine. Id. at 692. The carrier tried to assert a defense of insured's "late notice" of claim when the matter was in litigation. The Second Department noted that "this defense was waived by the [carrier] when it failed to assert it in its original letter of disclaimer which advised the respondent that coverage was being denied solely on [other grounds]." Id at. 694.

### *Analysis of the Three Disclaimer Letters Sent by ST. PAUL Shows That ST. PAUL Waived Every Defense to Coverage Except "Prior Knowledge"*

The March 12, 2008 letter (Exhibit "H") gives a coverage analysis which says it is "based upon the allegations made and information known to date and is subject to change as the claim develops and or further information is obtained." The letter refers to the Policy which was effective December 20, 2006 to December 20, 2007. This is the same policy effective dates referred to by ST. PAUL in its Declaratory Judgment action. The letter also quotes from the policy "Exclusions Section (Section VII)" for intentional acts and fraud but also says "[o]ther policy provisions may also apply to this matter. Travelers reserves the right to raise and rely upon

23

such provisions as the matter warrants." There is no specific mention in this March 12, 2008 Letter of ST. PAUL seeking to disclaim coverage based an exclusion condition such as Defendants' "prior knowledge."   Only a mention of "other policy provisions" that might apply to this matter.

The second Letter was sent on July 1, 2008 (Exhibit "I").  That letter for the first time specifically mentions that the ST. PAUL policy will not cover "claims" that arise out of

> any error, omission, negligent act or "personal injury" occurring prior to the inception date of this policy if any insured prior to the inception date knew or could have reasonably foreseen that such error, omission, negligent act or "personal injury" might be expected to be the basis of a "claim" or "suit."

This is the first time that ST. PAUL mentions the possibility of a "Prior Knowledge" exclusion.  This is eight months after they admitted getting the notice TIERNEY about the possible claim which she mentioned in her Supplemental Claims Form.  Since this letter was sent 14 days after Daniel Zahn purchased the Index number for his Summons with Notice it is obvious ST. PAUL did not decide that Defendants' "Prior Knowledge" was a problem until they were sure that Daniel Zahn was going to sue on behalf of the Nelson Estate.

The third and final letter was sent on August 28, 2008 Letter (Exhibit "J").  This letter was sent to TIERNEY after ST. PAUL received Daniel Zahn's Complaint in the legal malpractice action.  In the letter they claim that the Complaint ". . . [i]s the first notice of the specific allegations made in the Lawsuit."  This is clearly not true based on their prior Reservation of Rights letter, the Letter of TIERNEY to Protection Advantage which was

24

forwarded to ST. PAUL (Exhibit "E") and the information in the Supplemental Claims Form (Exhibit "F").

## IV.    CONCLUSION

For the foregoing reasons, the Plaintiff's declaratory judgment action should be dismissed for failing to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6).

Respectfully submitted,

THE DEFENDANTS,
SLEDJESKI & TIERNEY PLLC, THOMAS
SLEDJESKI, MARY TIERNEY, and BRIAN
ANDREWS,

By: _____
        Clifford S. Robert (CR8483)
        Kurt Schaub (KS7045)
        Robert & Robert PLLC
        150 Broad Hollow Rd.
        Melville, New York 11747
        Ph. (631) 271-3300
        Fax: (631) 271-1784
        crobert@robertlaw.com

25

EXHIBIT "A"

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------------X

ST. PAUL FIRE & MARINE INSURANCE
COMPANY,

                  Plaintiff,

v.

SLEDJESKI & TIERNEY PLLC, THOMAS SLEDJESKI,
MARY TIERNEY and BRIAN ANDREWS,

                  Defendants.

-----------------------------------------------------------------X

Civil Action No.:
08-cv-05184-JFB-ETB

**AFFIDAVIT
OF THOMAS SLEDJESKI
IN SUPPORT OF MOTION**

STATE OF NEW YORK       )
                        ) ss.
COUNTY OF SUFFOLK     )

THOMAS SLEDJESKI, being duly sworn deposes and says under penalty of perjury:

1.    I was a principal of the law office of SLEDJESKI & TIERNEY PLLC (hereafter "S&T"), who formerly represented the Estate of Jeffrey Nelson in an action for wrongful death and personal injury.

2.    Jeffrey Nelson was killed in a motor vehicle accident on July 26, 2003 and his Estate was thereafter administered by his widow, Candice Nelson. It was Candice Nelson who retained S&T.

3.    That I am submitting this Affidavit in Support of the Defendants' Motion to Dismiss the Plaintiffs' declaratory judgment action for failure to state a claim as per the Federal Rules of Civil Procedure 12(b)(6). My knowledge of this case is based on my own personal knowledge and my review of a copy of the case file.

4.      That I have read the entire contents of the attached Memorandum of Law drafted by Robert & Robert PLLC, attorneys for the Defendants, and the attached exhibits.  In the interest of judicial economy, this deponent incorporates by reference all of the legal arguments and statements of fact contained in the attached Memorandum of Law.

5.      Defendant S&T was a law firm where Defendants MARY TIERNEY (hereafter "TIERNEY"), BRIAN ANDREWS and myself, who are all attorneys, practiced law together. During the time period that is the subject of the present lawsuit, TIERNEY and myself were partners and BRIAN ANDREWS was an associate.  S&T formed on or about November 22, 2004 and dissolved on January 15, 2008.

6.      While S&T was in existence it was insured for legal malpractice by several consecutive ST. PAUL policies that each had terms of one year.  These policies ran from: December 20, 2005 to December 20, 2006; December 20, 2006 to December 20, 2007 (Exhibit "B"); and December 20, 2007 to December 20, 2008 (Exhibit "C").  When S&T dissolved on January 15, 2008, it was covered by a "tail" policy which was effective from January 15, 2008 to January 15, 2011 (Exhibit "D").

7.      S&T filed a lawsuit for wrongful death and personal injuries on behalf of the Estate of Nelson on July 27, 2005, which was the last possible date under the two-year Statute of Limitations.  Thereafter, S&T had 120 days to serve the tortfeasors in the wrongful death action.

8.      S&T did not complete service over the defendant tortfeasors within 120 days and did not apply to the court for a 120-day extension to complete service.

9.      A potential legal malpractice claim accrued against the Defendants in March of 2006 (i.e., roughly 240 days after the purchase of the index number in the wrongful death action).

10.     In October of 2007, TIERNEY discovered this omission by the S&T firm that had

the potential to lead to a legal malpractice lawsuit.  Prior to the time that TIERNEY made this discovery in October of 2007, neither I nor any of the other partners or associates at S&T were aware of this problem.  As soon as TIERNEY discovered the omission, she mailed a letter to S&T's broker, Protection Advantage, to inform them of the occurrence.

11.     Protection Advantage received the Letter from TIERNEY, stamped it "Received" on October 31, 2007 and notified ST. PAUL the same day.  *See* TIERNEY Letter, Exhibit "E." ST. PAUL acknowledged receiving this letter on November 8, 2007.  *See* Reservation of Rights Letter, Exhibit "H."

12.     Since S&T's policy for the year 2007 was due to expire in December, the information about the potential claim was also included, as per Protection Advantage's request, in a Supplemental Claims Form that TIERNEY filled out and attached to S&T renewal application.  *See* Supplemental Claims Form, Exhibit "F."  This form included all of the necessary details concerning the Statute of Limitations which had expired.

13.     After ST. PAUL was notified twice about the potential malpractice claim, first by TIERNEY's Letter (Exhibit "E") and again by the Supplemental Claims Form (Exhibit "F"), ST. PAUL agreed to renew S&T's policy.  ST. PAUL thereafter accepted premiums from S&T for several months and gave no indication whatsoever to S&T that they would disclaim coverage if the potential claim that TIERNEY discovered turned into an actual claim.  ST. PAUL also accepted premiums for the "tail" policy which became effective on January 15, 2008 when S&T dissolved. ST. PAUL also gave no indication that they would disclaim under that "tail" policy if the occurrence that TIERNEY notified them about turned into an actual claim.

14.     The Estate of Nelson made a formal demand for money and created an actual "claim" in January of 2008.  Several months later, ST. PAUL provided the S&T law firm with three Reservation of Rights letters (Exhibits "H," "I," and "J") which acknowledged the notification that

TIERNEY and S&T had given ST. PAUL before the Nelson Estate's demand.  These Reservation of Rights letters also mentioned that ST. PAUL would investigate the claim but none of the letters reserved any right to disclaim coverage for any reason other than S&T's "Prior Knowledge" of the potential claim.

15.   Since ST. PAUL was notified of the potential claim before the inception date of the renewed policy, and accepted premiums for this policy, the "Prior Knowledge" exclusion in the policy can not be used by ST. PAUL as a basis for disclaiming coverage.

16.   Wherefore this deponent respectfully requests that an Order be entered granting all of the relief requested in the attached Defendants' Memorandum of Law.

THOMAS SLEDJESKI

Sworn to before me on the  6th
day of May, 2009

Notary Public

JEANNE M. COAKLEY
NOTARY PUBLIC, STATE OF NEW YORK
NO. 01CO6179391
QUALIFIED IN SUFFOLK COUNTY
COMMISSION EXPIRES 12/24/2011

EXHIBIT "B"



**ST PAUL TRAVELERS**

St Paul Travelers 1st Choice℠ for Lawyers

# LAWYERS PROFESSIONAL LIABILITY POLICY

A Custom Insurance Policy Prepared for:

**Law Offices Of
Sledjeski & Tierney, PLLC**

LA000 Ed. 6-04   Printed in U.S.A.
© 2004 The St. Paul Travelers Companies, Inc.   All Right Reserved

# Protection Advantage

*Lawyers Professional Liability*

13 Cornell Road, Latham, NY 12110    Tel: 1-800-998-5545    Fax: 518-782-3139

December 6, 2006                    http//www.protectionadvantage.com

Sledjeski & Tierney PLLC
Mary D Tierney
18 First Street
Riverhead, NY  11901

Dear **Mary Tierney:**

RE:      LAWYERS PROFESSIONAL LIABILITY INSURANCE
         Policy # 507JB0207 / St Paul Fire and Marine Ins Co
         Effective: 12/20/06 - 12/20/07

Enclosed is the above captioned policy.  The limit of liability is $2,000,000 each claim and $2,000,000 aggregate.  (Adequate limits are the responsibility of the policyholder.)   The annual premium is $6,204.00. Please refer to your policy for specific coverage details.

Please review the policy carefully and if the conditions at the time the policy was written have changed, please notify us immediately.

Your policy is issued on a "CLAIMS-MADE" policy form. A "CLAIMS-MADE" policy form obligates the Insurer for the defense and/or payment for only those claims made against the insured during the policy term or extended reporting period, if applicable.  To be covered, claims must result from the Insured's alleged breaches of duty, negligence, errors or omissions  after the retroactive date as indicated in the policy and arising out of the rendering or failure to render professional services as described in the application and within the scope of the terms and conditions of this policy.

All claims should be reported immediately to Protection Advantage, Inc. Thank you for your participation in this program. If you have any questions, please call the Professional Liability Division at 1-800-998-5545.

Sincerely,

*Svetlana Finkin*

Svetlana Finkin
Professional Liability Division
Enclosure

**POLICY FORM LIST**



Here's a list of all forms included in your
policy, on the date shown below.  These forms
are listed in the same order as they appear in
your policy.

| Title | Form Number | Edition Date |
|---|---|---|
| Policy Form List | 40705 | 05-84 |
| Lawyers Professional Liability Policy Cover Page | LA000 | 06-04 |
| Lawyers Professional Liability Declarations Page | LA002 | 12-04 |
| New York - Lawyers Professional Liability Coverage Form | LA005 | 04-05 |
| Nuclear Liability Exclusion | LA008 | 06-04 |
| New York Application and Declaration Page | LA048 | 03-05 |
| Addendum Claims-Made Disclosure Form | | |
| New York – Amendatory Endorsement | LA116 | 03-06 |

---

Name of Insured          Policy Number  507JB0207          Effective Date  12/20/06
Law Offices Of                              Processing Date:  12/05/2006

---

NAME AND ADDRESS OF PRODUCER:

Protection Advantage, Inc.
13 Cornell Rd
Latham NY 12110

*Patricia A. Wilson*
—————————————————
Authorized Representative

In Witness Whereof, the Insurer has caused this policy to be signed by its President and Secretary and countersigned on the Declarations Page by a duly authorized agent of the Insurer.

*Jay S. Fishman*
President

*[signature]*
Secretary

St. Paul Travelers 1st Choice℠ for Lawyers
LAWYERS PROFESSIONAL LIABILITY COVERAGE FORM

# NEW YORK - LAWYERS PROFESSIONAL LIABILITY COVERAGE FORM

### NOTICE - THIS IS A CLAIMS-MADE POLICY WITH "CLAIMS EXPENSES" IN ADDITION TO THE LIMITS OF LIABILITY.   PLEASE READ IT CAREFULLY.

THIS IS A CLAIMS-MADE POLICY.  IF THE POLICY CONTAINS A RETROACTIVE DATE, THEN THE POLICY PROVIDES NO COVERAGE FOR "CLAIMS" FOR ANY ERROR, OMISSION, NEGLIGENT ACT OR "PERSONAL INJURY" IN THE RENDERING OR FAILURE TO RENDER "PROFESSIONAL LEGAL SERVICES" COMMITTED PRIOR TO THE POLICY INCEPTION DATE OR THE RETROACTIVE DATE.  THIS POLICY APPLIES ONLY TO "CLAIMS", OR CIRCUMSTANCES REPORTED IN ACCORDANCE WITH SECTION IX-CONDITIONS B, FIRST MADE AGAINST THE INSUREDS DURING THE "POLICY PERIOD", ANY SUBSEQUENT RENEWAL OF THE POLICY OR APPLICABLE EXTENDED REPORTING PERIOD AND REPORTED IN WRITING TO US PURSUANT TO THE TERMS HEREIN.  THE LIMIT OF LIABILITY AVAILABLE TO PAY "DAMAGES" OR SETTLEMENTS SHALL NOT BE REDUCED BY AMOUNTS INCURRED AS "CLAIMS EXPENSES".  ANY "CLAIMS EXPENSES" THAT ARE INCURRED SHALL NOT BE APPLIED AGAINST THE APPLICABLE RETENTION.  WE SHALL HAVE THE RIGHT AND DUTY TO DEFEND ANY "CLAIM" AGAINST THE INSUREDS UNDER THIS POLICY.

COVERAGE FOR THE POLICY CEASES UPON TERMINATION OF COVERAGE EXCEPT FOR THE BASIC EXTENDED REPORTING PERIOD, UNLESS A SUPPLEMENTAL EXTENDED REPORTING PERIOD IS PURCHASED.  POTENTIAL COVERAGE GAPS MAY ARISE UPON EXPIRATION OF THE SUPPLEMENTAL EXTENDED REPORTING PERIOD.  IN GENERAL, THE NATURE OF CLAIMS-MADE COVERAGE IS SUCH THAT, DURING THE FIRST SEVERAL YEARS OF THE "CLAIMS-MADE RELATIONSHIP", CLAIMS-MADE RATES ARE GENERALLY LOWER THAN OCCURRENCE RATES (ASSUMING THAT COVERAGE ON AN OCCURRENCE BASIS IS AVAILABLE FOR THE INSURANCE IN QUESTION), AND YOU MAY EXPECT SUBSTANTIAL ANNUAL PREMIUM INCREASE, INDEPENDENT OF OVERALL RATE LEVEL INCREASES, UNTIL THE "CLAIMS-MADE RELATIONSHIP" REACHES MATURITY.

Throughout the policy the words "you" and "your" refer to the "Named Insured" shown in the Declarations.  The words "we", "us", and "our" refer to the Company providing this insurance.

The word "insured" means any person or organization qualifying as such under **SECTION II – INSURED.**

Other words and phrases that appear in quotation marks have special meaning.  Refer to **SECTION VIII –DEFINITIONS.**

## SECTION I – INSURING AGREEMENTS

We will pay on behalf of an insured "damages" and "claims expenses" for which "claim" is first made against an insured and reported to us within the "policy period", any subsequent renewal of the policy by us or applicable Extended Reporting Period.  Such "damages" must arise out of an error, omission, negligent act or "personal injury", in the rendering of or failure to render "legal services" for others by you or on your behalf.  The error, omission, negligent act or "personal injury" must occur on or after the retroactive date stated in the Declarations, if any.

We will have the right and duty to defend any "claim" or "suit" against an insured seeking "damages" to which this insurance applies, even if any of the allegations of the "claim" or "suit" are groundless, false or fraudulent.  We may also make such investigation and, with your written consent, such settlement of any "claim" or "suit" we deem appropriate.

If an insured does not agree with a settlement recommended by us, our Limit of Liability is reduced to the total of the amount for which the "claim" or "suit" could have been settled plus all "claims expenses" incurred up to the time we made

LA005 Ed. 4-05
© 2005 The St. Paul Travelers Companies, Inc.   All Right Reserved

LAWYERS PROFESSIONAL LIABILITY COVERAGE FORM

our recommendation.  We shall have the right to withdraw from further defense of the "claim" or proceeding by tendering control of said defense over to you.

We will not be obligated to pay "damages" or "claims expenses" or to defend any "claim" or "suit" after the applicable Limit of Liability has been exhausted by payment made by us towards judgments and/or settlements.

## SECTION II — INSURED

Each of the following is an insured:

A. The "Named Insured" shown in the Declarations; and

B. Any person who was, is now or hereafter becomes a partner, officer, director, employee, principal, shareholder or member of the "Named Insured", whether named or not, but only while acting in the scope of their duties as such; and

C. Any lawyer retained as Of Counsel by you, but only with respect to "professional legal services" performed for you or on your behalf or on behalf of a "predecessor firm"; and

D. The estate, heirs, executors, administrators, and legal representatives of any insured in the event of such insured's death, incapacity, insolvency or bankruptcy, but only to the extent that such insured would otherwise be provided coverage under this policy; and

E. Any "predecessor in business" or person who was a partner, officer, director, employee, principal, shareholder or member of any "predecessor in business" who provided "professional legal services" on behalf of any "predecessor in business", provided a request for such coverage is made to us and accepted in writing prior to the inception of such coverage; and

F. Any organization you newly acquire or form is an insured under this policy only when we provide you our written acceptance.  This provision applies to any partner, officer, director, employee, principal, shareholder or member of such newly acquired or formed organization.

## SECTION III — LIMITS OF LIABILITY

Regardless of the number of insureds under this policy, the number of persons or organizations seeking "damages" or the number of "claims" made, our liability is limited as follows:

A. The amount stated in the Declarations as applicable to each "claim" is the most we will pay for all "damages" arising out of the same or related errors, omissions, negligent acts or "personal injury".  For the purposes of determining our Limit of Liability, all "claims" arising out of the same or related errors, omissions, negligent acts or "personal injury" will be deemed to have been made when the first of such "claims" is made whether such demands are made against one or more insureds or whether such demands are made by one or more persons and will be treated as a single "claim".

B. The amount shown in the Declarations as Policy Aggregate is the most we will pay for all "damages" for all "claims" to which this insurance applies.

## SECTION IV — DEDUCTIBLE

A. Our obligation to pay "damages" under this policy applies only to the amount of "damages" which are in excess of the Deductible amount stated in the Declarations.

B. The deductible amount applies to all "damages" incurred as the result of each "claim".  The deductible amount does not apply to "claims expenses" incurred as the result of each "claim".

C. The terms of the policy, including those with respect to our right and duty to defend "suits" and your duties in the event of a "claim", "suit" or circumstances which may give rise to a "claim", apply irrespective of the application of the deductible.

D. We may pay any part or all of the deductible amount.  Upon notification of the action we have taken, you shall reimburse us for such part of the deductible amount as we have paid.

E. The Limits of Liability will not be reduced by the amount of any "damages" within the deductible amount.

LAWYERS PROFESSIONAL LIABILITY COVERAGE FORM

## SECTION V — SUPPLEMENTARY PAYMENTS

We will pay, in addition to the applicable Limit of Liability:

A. All "claims expenses" in connection with any "claim" or "suit" we defend.

B. All costs charged against any insured in such "claims" or "suits".

C. All interest on the entire amount of any judgment which accrues after entry of the judgment and before we have paid, offered to pay or deposited, whether in court or otherwise, that part of the judgment which does not exceed our Limit of Liability.

D. Prejudgment interest against any insured on that part of the judgment we pay. If we make an offer to pay the applicable Limit of Liability, we will not pay any pre-judgment interest based on that period time after the offer.

E. Premiums on appeal bonds and premiums on bonds to release attachments but not for bond amounts in excess of the applicable Limit of Liability.

F. All reasonable expenses incurred by the insured at our request to assist us in the investigation of the "claim" or "suit", including actual loss of earnings up to $250 a day for each insured because of time off from work, subject to a limit of $5,000 for each individual insured subject to a maximum limit of $10,000 per "policy period".

G. All reasonable legal expenses incurred by the insured resulting from the defense of a proceeding by a regulatory or disciplinary official or agency to investigate charges of professional misconduct in the rendering of or failure to render "professional legal services" subject to a limit of $5,000 per "policy period".

## SECTION VI — POLICY TERRITORY

This policy applies worldwide, provided that "claim" is made and "suit" is brought within the United States of America (including its territories or possessions), Puerto Rico or Canada.

## SECTION VII — EXCLUSIONS

This insurance does not apply to "claims":

A. Arising out of any dishonest, fraudulent, criminal or malicious act, error, omission or "personal injury" committed by, at the direction of, or with the knowledge of an insured.  This exclusion does not apply to an insured who did not personally commit or personally participate in committing any of the knowingly wrongful acts, errors, omissions or "personal injury", provided that:

1. Such insured had neither notice nor knowledge of such knowingly wrongful act, error, omission or "personal injury"; and

2. Such insured, upon receipt of notice or knowledge of such knowingly wrongful act, error, omission or "personal injury", notifies us as soon as possible.

B. Arising out of "bodily injury" or "property damage".

C. Made by one insured under this policy against another insured under this policy.

D. Alleging discrimination.

E. Arising out of any insured's activities and/or capacity as a fiduciary under The Employee Retirement Income Security Act of 1974 as amended, or similar responsibility under state statutory or common law, except if the insured is deemed to be a fiduciary solely by reason of "professional legal services" rendered with respect to any employee benefit plan.

F. Based upon or arising out of any insured's capacity as:

1. A public official or employee of a governmental body, subdivision or agency thereof unless the insured is deemed to be such solely by virtue of rendering "professional legal services" to such governmental body, the remuneration for which services inures to the benefit of the "Named Insured"; or

2. An officer, director, partner, employee, principal, shareholder or member of any organization other than the "Named Insured" or any "predecessor in business".

LA005 Ed. 4-05
© 2005 The St. Paul Travelers Companies, Inc.  All Right Reserved                Page 3 of 13

LAWYERS PROFESSIONAL LIABILITY COVERAGE FORM

G. Arising out of any error, omission, negligent act or "personal injury" occurring prior to the inception date of this policy if any insured prior to the inception date knew or could have reasonably foreseen that such error, omission, negligent act or "personal injury" might be expected to be the basis of a "claim" or "suit".

H. Arising out of:

1. The promotion, sale or solicitation for sale of securities, real estate, or other investments by any insured; or

2. Recommendations, representations or opinions concerning specific investment advice by any insured or any person or organization referred to by any insured in connection with portfolio or trust account management, or the performance or nonperformance of securities, real estate, or other investments.

I. Arising out of "professional legal services" performed for or on behalf of any organization other than the "Named Insured" or any "predecessor in business" at any time when those services were performed the organization was:

1. Directly or indirectly controlled, operated or managed by any insured; or

2. Owned by any insured, or by a spouse of any insured, in a percentage which exceeds:

a. 5% of the issued and outstanding voting stock of the shares of a publicly traded organization; or

b. 10% of the shares of a closely or privately held organization.

J. Against any insured as a beneficiary or distributee of any trust or estate.

K. Arising out of liability assumed by any insured under any indemnity, hold harmless or similar provisions or agreements, but this exclusion does not apply to liability an insured would have in the absence of such agreements.

L. Arising out of the inability or failure to pay, collect, administer or safeguard funds held or to be held for others.

M. Arising out of the alleged notarized certification or acknowledgment by any insured, in their capacity as a notary public, of a signature on a document which the insured did not witness being placed on the document.

N. Arising solely out of an error, omission, negligent act or "personal injury" of a lawyer with whom you share or shared common office space or common office facilities and who is or was not an insured under this policy.

SECTION VIII – DEFINITIONS

A. "Bodily Injury" means bodily injury, sickness or disease sustained by a person, including the death of any person, resulting at any time. "Bodily injury" includes mental anguish and emotional distress.

B. "Claim" means a demand received by an insured for money alleging an error, omission or negligent act in the rendering of or failure to render "professional legal services" for others by you or on your behalf.

C. "Claims Expense" means reasonable and necessary fees charged by (an) attorney(s) designated or approved in writing by us and all other fees, costs, and expenses resulting from the investigation, adjustment, defense and appeal of a "claim", "suit" or proceeding arising in connection therewith, if incurred by us or by an insured with our written consent.

D. "Claims-Made Relationship" means that period of time between the Inception Date of the first claims-made policy between you and us, without any gap of coverage, but does not include any period covered by an Extended Reporting Period.

E. "Damages" means compensatory damages which an insured becomes legally obligated to pay as a result of any judgment, award or settlement, provided any settlement is negotiated with the assistance and approval of us. "Damages" does not include punitive or exemplary damages, fines, sanctions or penalties, equitable relief or the return or reimbursement of fees for "professional legal services" whether or not rendered.

F. "Named Insured" means the person or entity as stated in the Declarations.

LA005 Ed. 4-05
© 2005 The St. Paul Travelers Companies, Inc.  All Right Reserved                    Page 4 of 13

LAWYERS PROFESSIONAL LIABILITY COVERAGE FORM

G. "Personal Injury" means injury, other than "bodily injury", arising out of one or more of the following offenses:

1. False arrest, detention or imprisonment; or

2. Malicious prosecution; or

3. The wrongful eviction from, wrongful entry into, or the invasion of the right of private occupancy of a room, dwelling or premises that a person occupies by or on behalf of its owner, landlord or lessor; or

4. Oral or written publication of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services; or

5. Oral or written publication of material that violates a person's right of privacy.

H. "Policy Period" means the period from the inception date of this policy to the policy expiration date, as set forth in the Declarations, or the date of cancellation, whichever is earlier.

I. "Predecessor in Business" means a law firm or practice which has undergone dissolution and at least 50% of the owners, officers, partners, principals or shareholders of the prior firm have joined you.

J. "Professional Legal Services" means services performed or advice given by you or on your behalf for others in the conduct of your practice as a lawyer, real estate title insurance agent, notary public, arbitrator or mediator. It includes services performed for others ordinarily rendered by a lawyer as an administrator, conservator, executor, guardian, trustee, receiver, or in any other similar fiduciary capacity and then only for such services. It does not include services performed or advice given while acting in the capacity of an employee, officer, director, partner, shareholder, principal, investor, member, agent or in any other capacity that gives rise to a conflict of interest of any organization other than the "Named Insured" or any "predecessor in business".

K. "Property Damage" means:

1. Physical injury to tangible property, including all resulting loss of use of that property; or

2. Loss of use of tangible property that is not physically injured.

L. "Suit" means a civil proceeding in which "damages" to which this insurance applies are alleged. "Suit" includes:

1. An arbitration proceeding in which such "damages" are claimed and to which an insured must submit or does submit with our consent; or

2. Any other alternative dispute resolution proceeding in which "damages" are claimed and to which an insured submits with our consent.

## SECTION IX - CONDITIONS

A. Extended Reporting Periods

CONDITION A, Extended Reporting Periods, will not apply to this policy, except for the automatic 60 Day Basic Extended Reporting Period described in Paragraph 1 below, if the "claims-made relationship" between you and the Company has been less than one year and the policy has been terminated for nonpayment of premium or fraud.

1. In the event of any termination of coverage which is defined as:

a. Cancellation; or

b. Nonrenewal; or

c. Decrease in the Limits of Liability; or

d. Reduction of coverage; or

e. Increased deductible; or

f. New exclusion; or

g. Any other change in coverage which is less favorable to the insured;

An automatic 60 Day Basic Extended Reporting Period will be furnished to the insured for reporting any "claim" first made against the insured arising out of an error, omission, or negligent act to which this coverage applies and which occurred after any retroactive date, if any, and prior to the end to the "policy period". Any "claims" reported under this 60 Day Basic Extended Reporting Period will

LAWYERS PROFESSIONAL LIABILITY COVERAGE FORM

be considered as having been made before the end of the "policy period".  The 60 Day Basic Extended Reporting Period coverage is excess over any other valid and collectible insurance available to any insured.

The 60 Day Basic Extended Reporting Period does not increase our Limits of Liability.  The Limit of Liability for the 60 Day Basic Reporting Period will be the amount of coverage remaining in the Aggregate Limit of Liability of the terminated policy.

2.  You will also have the right to purchase a Supplemental Extended Reporting Period.  Upon payment of the additional premium, we will issue an endorsement providing a three (3) year Supplemental Extended Reporting Period, inclusive of the 60 Day Basic Extended Reporting Period specified in Paragraph 1 above.  This endorsement will cover "claims" first made during the Supplemental Extended Reporting Period for errors, omissions or negligent acts which occurred prior to the end of the "policy period" and are otherwise covered by the policy. The additional premium for this Supplemental Extended Reporting Period will be 190% of the policy's last annual premium.  This Supplemental Extended Reporting Period coverage is excess over any other valid and collectible insurance available to any insured.

3.  Not later than thirty (30) days after the termination of coverage, we will mail or deliver to the first "Named Insured" in Item 1 of the Declarations, written notice of the Basic Extended Reporting Period, and the availability of, the premium for, and the importance of purchasing the Supplemental Extended Reporting Period.  Proof of mailing or delivery, shall be sufficient proof of notice.

The first "Named Insured" will have the greater of sixty (60) days from the effective date of termination of coverage, or thirty (30) days from the date of mailing or delivery of the notice of the availability to purchase the Supplemental Extended Reporting Period, to submit written

acceptance of, and premium for, the Supplemental Extended Reporting Period to us.

4.  If this policy or continuous claims-made policy's, issued on behalf of the Company, have been in effect for less than three (3) years, the amount of coverage afforded under the Supplemental Extended Reporting Period shall be the greater of the amount of coverage remaining in the policy's Annual Aggregate Limit of Liability or fifty percent (50%) of the policy's Annual Aggregate Limit of Liability.

If this policy or continuous claims-made policies, issued on behalf of the Company, have been in effect for three (3) years or more, the amount of coverage will be equal to 100% of the policy's Annual Aggregate Limit of Liability.

5.  If you become totally and permanently disabled or die during the "policy period", the period for reporting "claims" is extended until your disability ends or the executor or administrator is discharged.

No additional premium will be charged for this extension nor will any premium be refunded.

We also require one of the following, within 60 days after the end of this policy, for this coverage to apply:

a.  Written proof of your permanent and total disability, including the date it happened, certified by your attending physician.  You agree to submit to medical examination(s) by any physician(s) we designate if requested; or

b.  Written proof of the date of your death.

6.  During a "claims-made relationship" and any Extended Reporting Period, a person employed or otherwise affiliated with you and covered by your claims-made policy during such affiliation will continue to be covered under such policy and any Extended Reporting Period after the affiliation has ceased, for such

person's errors, omissions or negligent acts performed on your behalf during the affiliation with you.

If this policy was issued to a corporation or partnership, we will provide an Individual Extended Reporting Period coverage upon termination of coverage to any person covered under the policy if:

a. Such entity has been placed in liquidation or bankruptcy or permanently ceases operations; and

b. The entity or its designated entity does not purchase Extended Reporting coverage; and

c. Such person requests the Individual Extended Reporting Period within 120 days of termination of coverage.

We will not be obligated to provide any notice to any person of the availability of the Extended Reporting Periods coverage other than to the first "Named Insured".

B. Reporting of Circumstances Which May Give Rise to a "Claim"

If, during the "policy period", any insured first becomes aware of a circumstance which may give rise to a "claim" (i.e., any act, error, omission or "personal injury" which might reasonably be expected to be the basis of a "claim" against any insured under this policy), the insured must give written notice in accordance with SECTION IX –CONDITIONS C, Insured's Duties in the Event of a "Claim", "Suit" or Circumstances Which May Give Rise to a "Claim". Any "claims" subsequently made against any insured arising out of that circumstance shall be considered to have been made and reported during the "policy period".

C. Insured's Duties in the Event of a "Claim", "Suit" or Circumstances Which May Give Rise to a "Claim"

1. You and another involved insured must see to it that we are notified in writing as soon as practicable and within the "policy period", any subsequent renewal of the policy by us or any applicable Extended

Reporting Period of any circumstance which may give rise to a "claim". To the extent possible, written notice should include:

a. The specific act, error, omission or "personal injury" including the date(s) thereof; and

b. The "damages" that may reasonably result; and

c. The date and circumstances by which any insured became aware of the act, error, omission or "personal injury".

2. If a "claim" is received by any insured you must:

a. Immediately record the specifics of the "claim" and the date received ; and

b. Notify us as soon as practicable.

You and any other involved insured must see to it that we receive written notice of the "claim" as soon as practicable and within the "policy period", any subsequent renewal of the policy or applicable Extended Reporting Period.

3. You and any other involved insured must:

a. Immediately send us copies of any demands, notices, summons' or legal papers received in connection with the "claim" or "suit"; and

b. Authorize us to obtain records and other information; and

c. Cooperate with us in the investigation, settlement or defense of the "claim" or "suit"; and

d. Assist us, upon our request, in the enforcement of any right against any person or organization which may be liable to any insured because of "damages" to which this insurance may also apply.

4. No insured will, except at their own cost, voluntarily make a payment,

assume any obligation, or incur any expense without our written consent.

5. Notice given by or on behalf of an insured, or written notice by or on behalf of the injured person or any other claimant, to any agent of ours in New York State, with particulars sufficient to identify the insured, shall be considered to be notice to us.

### D. Transfer of Right of Recovery Against Others

If an insured has rights to recover all or part of any payment we have made under this policy, those rights are transferred to us. Such insured must do nothing after a "claim" is made or "suit" is brought to impair them. At our request, the insured will bring "suit" or transfer those rights to us and help us enforce them.

Failure to comply with this CONDITION D will not in itself impair coverage, provided that the insured against whom "claim" is made or "suit" is brought did not personally impair rights of recovery or have knowledge of such impairment. Furthermore, upon receipt of such knowledge, such insured must immediately notify us that those rights have been impaired.

### E. Changes

This policy contains all the agreements between you and us concerning the insurance afforded. The first "Named Insured" shown in the Declarations is authorized to make changes in the terms of this policy with our consent. This policies' terms can be amended or waived only by an endorsement issued by us as part of this policy.

### F. Legal Action Against Us

No person or organization has a right under this policy:

1. To join us as a party or otherwise bring us into a "claim" or "suit" asking for "damages" from an insured; or

2. To sue us on this policy unless all of its terms have been fully complied with.

A person or organization may sue us to recover on an agreed settlement or on a final judgment against an insured; but we will not be liable for "damages" that are not payable under the terms of this policy or that are in excess of the applicable Limit of Liability. An agreed settlement means a settlement and release of liability signed by us, the insured and the claimant or the claimant's legal representative.

### G. Bankruptcy

Bankruptcy or insolvency of any insured or of an insured's estate will not relieve us of our obligations under this policy.

### H. Cancellation

1. The first "Named Insured" may cancel this policy by:

   a. Surrendering the policy to us or any of our authorized agents; or

   b. Mailing to us written notice stating when thereafter the cancellation shall be effective.

2. Cancellation of Policies in Effect 60 Days or Less

   This policy may be cancelled by us by mailing or delivering to the first "Named Insured" written notice stating the reason for cancellation at the mailing address shown in the policy, and the authorized agent or broker at least:

   a. 30 days before the effective date of cancellation if the policy is cancelled for any reason not included in Paragraph b below.

   b. 15 days before the effective date of cancellation if the policy is cancelled for any of the following reasons:

      (1) Nonpayment of premium (if we cancel for this reason, the notice will include the amount due); or

      (2) Conviction of a crime arising out of acts increasing the hazard insured against; or

(3) Discovery of fraud or material misrepresentation in the obtaining of this policy or in the presentation of a "claim" thereunder; or

(4) After issuance of the policy or after the last renewal date, discovery of an act or omission, or a violation of any policy condition, that substantially and materially increases the hazard insured against, and which occurred subsequent to inception of the current "policy period"; or

(5) Material change in the nature or extent of the risk, occurring after issuance or last annual renewal anniversary date of the policy, which causes the risk of loss to be substantially and materially increased beyond that contemplated at the time the policy was issued or last renewed; or

(6) Required pursuant to a determination by the Superintendent that the continuation of our present premium volume would jeopardize our solvency or be hazardous to the interest of our policyholders, our creditors or the public; or

(7) A determination by the Superintendent that the continuation of the policy would violate, or would place us in violation of, any provision of the Insurance Code; or

(8) Revocation or suspension of the insured's license to practice his/her profession.

3. Cancellation of Policies in Effect for More Than 60 Days

If this policy has been in effect for more than 60 days, or if this policy is a renewal or continuation of a policy issued by us, this policy may be cancelled by us only for any of the reasons listed in 2. b, above provided we mail written notice of cancellation stating the reason for

cancellation to the first "Named Insured" at the address shown in the policy and to the authorized agent or broker at least 15 days before the effective date of cancellation.

4. Notice of cancellation will state the effective date of cancellation. If the policy is cancelled, that date will become the end of the "policy period".

5. If the first "Named Insured" cancels, earned premium will be computed in accordance with the customary short rate table and procedure. If we cancel, earned premium shall be computed pro rata.

However, when the premium is advanced under a premium finance agreement, the cancellation refund will be pro rata. Under such financed policies, the company will be entitled to retain a minimum earned premium of 10% of the total policy premium or $60, whichever is greater. Premium adjustment may be made either at the time cancellation is effected or as soon as practicable after cancellation becomes effective. Payment or tender of unearned premium is not a condition of cancellation.

6. If notice is mailed, proof of mailing will be sufficient proof of notice.

I. Nonrenewal or Conditional Renewal

1. Nonrenewal

If we decide not to renew this policy we will mail or deliver written notice of nonrenewal to the first "Named Insured" as provided in Paragraph I, 3, below, along with the specific reason(s) for nonrenewal.

2. Conditional Renewal

If we condition renewal of this policy upon:

a. Change of limits; or

b. Change in type of coverage; or

c. Reduction of coverage; or

d. Increased Deductible; or

LAWYERS PROFESSIONAL LIABILITY COVERAGE FORM

e. Addition of an exclusion; or

f. Increased premiums in excess of 10%, exclusive of any premium increase due to and commensurate with insured value added or increased exposure units; or as a result of experience rating or audit;

We will send, mail or deliver written notice of conditional renewal as provided in Paragraph 3 below stating renewal premium and specific reason(s) for the conditional renewal.

3. Notices of Nonrenewal and Conditional Renewal

a. If we decide not to renew this policy or to conditionally renew this policy as provided in Paragraphs I, 1, and I, 2, above, we shall mail or deliver written notice to the first "Named Insured" at least 60 but not more than 120 days before:

   (1) The Expiration Date; or

   (2) The anniversary date if this is a continuous policy.

b. Notice will be mailed or delivered to the first "Named Insured" at the address shown in the policy and to the authorized agent or broker. If notice is mailed or delivered, proof of mailing or delivery, will be sufficient proof of notice.

c. We will not send the first "Named Insured" notice of nonrenewal or conditional renewal if the "Named Insured", the authorized agent or broker or another insurer of the "Named Insured" mails or delivers notice that the policy has been replaced or is no longer desired.

4. Late Notice of Conditional Renewal or Nonrenewal

a. If prior to the expiration of this policy, we send an incomplete or late conditional renewal notice or a late or incomplete nonrenewal notice as provided for in Paragraph I, 3, above, coverage

will remain in effect at the same terms and conditions of this policy and at the lower of the current rates or the prior period's rates until sixty (60) days after such notice is mailed or delivered, unless you elect to cancel sooner.

b. If we do send the first "Named Insured" notice of nonrenewal or conditional renewal until on, or after the expiration of the current coverage, coverage will remain in effect on the same terms and conditions of the expiring policy for another "policy period" and at the lower of the current rates or the prior period's rates, unless the insured notifies us during the additional "policy period" coverage has been replaced or elects to cancel, in which event cancellation shall be on a pro rata basis.

c. The Aggregate Limit of this policy as shown in the Declarations will be increased in proportion to any policy extension provided in accordance with Paragraphs 4, a, and 4, b, above.

J. Conformity to Statute

The terms of this policy which are in conflict with the statutes of the state wherein this policy is delivered are hereby amended to conform to such statute.

K. Transfer of Your Rights and Duties Under This Policy

Your rights and duties under this policy may not be transferred without our written consent except in the case of death of an individual "Named Insured".

If you die, your rights and duties will be transferred to your legal representative, but only while acting within the scope of duties as your legal representative. Until your legal representative is appointed, anyone having proper temporary custody of your property will have rights and duties, but only with respect to that property.

L. Other Insurance

LAWYERS PROFESSIONAL LIABILITY COVERAGE FORM

This insurance, including any applicable Extended Reporting Period coverage, is excess over any other valid and collectible insurance available to any insured.

M. Examination of Your Books and Records

You must keep accurate records of the information we will need to compute your premium. You agree to allow us to examine and audit your financial books and records that relate to this insurance. We may do this within one hundred and eighty (180) days after expiration of this policy.

We may as soon as practicable following such audit, refund or credit your account for any return premium due you, or bill and make a good faith effort to collect any additional premium due us, as a result of such audit.

If you fail to cooperate with us in our attempt to conduct an audit, including your failure to return any questionnaires or self-audit worksheets, we shall have the right to not renew your policy upon expiration of the current policy due to our inability to establish your proper premium.

N. Transfer of Duties When a Limit of Insurance is Used Up

1. If we conclude that based on the "claims", or "suits" which have been reported to us and to which this insurance may apply, that the Annual Aggregate Limit of Liability is likely to be used up in the payment of judgments or settlements, we will notify the first "Named Insured" in Item 1 of the Declarations, in writing, to that effect.

2. When the Annual Aggregate Limit of Liability has actually been used up in the payment of judgments or settlements:

   a. We will notify the first "Named Insured", in writing, as soon as practicable, that:

      (1) Such limit has actually been used up; and

      (2) Our duty to defend "suits" seeking "damages" subject to

the Annual Aggregate Limit has also ended.

   b. We will initiate, and cooperate in, the transfer of control, to any appropriate insured, of all "claims" and "suits" seeking "damages" which are subject to the Annual Aggregate Limit and which are reported to us before the limit is used up. That insured must cooperate in the transfer of control of said "claims" and "suits".

   We agree to take such steps, as we deem appropriate, to avoid a default in, or continue the defense of, such "suits" until such transfer is completed, provided the appropriate insured is cooperating in completing such transfer.

   c. The first "Named Insured" in Item 1 of the Declarations, and any other insured involved in a "suit" seeking "damages" subject to the Annual Aggregate Limit, must arrange for the defense of such "suit" within such time period as agreed to between the appropriate insured and us. Absent any such agreement, arrangement for the defense of such "suit" must be made as soon as practicable.

3. The first "Named Insured" in Item 1 of the Declarations will reimburse us for expenses we incur in taking those steps we deem appropriate in accordance with Paragraph 2, b, above.

4. The exhaustion of the Annual Aggregate Limit of Liability by the payments of judgments or settlements, and the resulting end of our duty to defend will not be affected by our failure to comply with any of the provisions of this CONDITION N.

O. Premiums and Premium Audit

1. All premiums for this policy are computed in accordance with our rules and rates.

2. If the Premium in Item 6 of the Declarations, is shown as adjustable

LAWYERS PROFESSIONAL LIABILITY COVERAGE FORM

or subject to audit, it is a deposit premium only. At the close of each audit period we will compute the earned premium for that period. An audit to determine the final premium due or to be refunded will be completed within 180 days after the Expiration Date of the policy and may not be waived. Audit premiums are due and payable on notice to the first "Named Insured" in Item 1 of the Declarations. If the sum of the advance and audit premiums paid for the policy term is greater than the earned premium, we will return the excess to the first "Named Insured".

3. The first "Named Insured" in Item 1 of the Declarations must keep records of the information we need for premium purposes, and send us copies at such times as we may request.

The first "Named Insured" shown in the Declarations:

a. Is responsible for the payment of all premiums and deductibles; and

b. Will be the payee for any return premiums we pay.

P. Representations

By accepting this policy, you agree:

1. The statements in the application and any supplements which are attached to and forms a part of the policy are accurate and complete; and

2. We have issued this policy in reliance upon your representations.

Q. Headings

The descriptions in the headings and subheadings of this policy are solely for convenience and form no part of the terms, conditions exclusions and limitation of this policy.

R. Loss Information

We will provide the first Named Insured with the following loss information for the period of time that we have continuously provided coverage under this policy:

1. The date and description of the error, omission, negligent act, or "personal injury" on closed claims, including the amount of payment, if any;

2. The date and description of the error, omission, negligent act, or "personal injury" on open claims, including the amount of payment, if any;

3. The date and description of each error, omission, negligent act, or "personal injury" you reported to us.

We will provide this information only if we receive a request for it from the first Named Insured or the first Named Insured's agent or broker. Once we receive this request, we will mail or deliver the information to the first Named Insured or the first Named Insured's agent or broker within 20 days.

We collect this information for our own business purposes. We do so as carefully and accurately as we can. In giving this information to the first Named Insured or the first Named Insured's agent or broker, we don't make any promises or warranties to anyone that this information has no errors. Any cancellation or nonrenewal will take effect even if we accidentally provide incorrect information.

S. Optional Extension for a Reduction in Coverage

If there is a reduction in coverage, we will make available to you an extension that applies the coverage previous to that reduction to covered claims resulting from errors, omissions, negligent acts, or "personal injury" committed before the effective date that coverage was reduced.

We will notify you in writing within 30 days after the effective date of the reduction in coverage of the Basic Extended Reporting Period, the need for purchasing this extension, and the current cost of this extension.

The requirements for you to obtain such an extension are the same as those for the Supplemental Extended Reporting Period.

LAWYERS PROFESSIONAL LIABILITY COVERAGE FORM

We will continue to offer such an extension, while coverage is continuously provided by us, until you choose not to purchase the extension when it is offered or this Coverage Form is canceled or not renewed.

If this optional extension is continuously provided by us from the effective date of the reduction in coverage to the date that this Coverage Form ends because one of us chooses to cancel or not renew it, the optional extension will be part of the Basic Extended Reporting Period or Supplemental Extended Reporting Period available to you at that time.

T. Retroactive Date

The retroactive date may not be changed during the time that this claims-made Coverage Form has been continuously in effect with us or any reporting period.

This policy consists of the Lawyers Professional Liability Declarations, Coverage Form, Endorsements listed in that Declarations (or subsequently attached), and the Application including any applicable supplements.

In return for payment of the premium, we agree with the "Named Insured" to provide the insurance afforded by this policy.  That insurance will be provided by the Company indicated as the INSURING COMPANY in the Declarations.

LAWYERS PROFESSIONAL LIABILITY

THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

# NUCLEAR LIABILITY EXCLUSION

A. This insurance does not apply to "damages" or "claims expenses" for "claims" or "suits" arising out of the failure to discover or disclose the presence or existence of a "nuclear facility", "nuclear material", "spent fuel" or "waste".

B. As used in this endorsement:

"Nuclear material" means "source material", "special nuclear material" or "by-product material".

"Source material", "special nuclear material", and "by-product material" have the meanings given them in the Atomic Energy Act of 1954 or in any law amendatory thereof.

"Spent fuel" means any fuel element or fuel component, solid or liquid, which has been used or exposed to radiation in a "nuclear reactor".

"Waste" means any waste material (1) containing "by-product material" other than the tailings or wastes produced by the extraction or concentration of uranium or thorium from any ore processed primarily for its "source material" content, and (2) resulting from the operation by any person or organization of any "nuclear facility" included under the first two paragraphs of the definition of "nuclear facility".

"Nuclear facility" means:

1. Any "nuclear reactor"; or

2. Any equipment or device designed or used for the (a) separating the isotopes of uranium or plutonium, (b) processing or utilizing "spent fuel," or (c) handling, processing or packaging "waste"; or

3. Any equipment or device used for the processing, fabricating or alloying of "special nuclear material" if at any time the total amount of such material in the custody of the insured at the premises where such equipment or device is located consists of  or contains more than 25 grams of plutonium or uranium 233 or any combination thereof, or more than 250 grams of 235; or

4. Any structure, basin, excavation, premises or place prepared or used for the storage or disposal of "waste", and includes the site on which any of  the foregoing is located, all operations conducted on such site and all premises used for such operations.

"Nuclear reactor" means any apparatus designed or used to sustain nuclear fission in a self-supporting chain reaction or to contain a critical mass of fissionable material.

ALL OTHER TERMS AND CONDITIONS REMAIN UNCHANGED.

LAWYERS PROFESSIONAL LIABILITY

# NEW YORK APPLICATION AND DECLARATION PAGE ADDENDUM
## CLAIMS-MADE
## DISCLOSURE FORM

### IMPORTANT NOTICE TO APPLICANT OR POLICYHOLDER

THIS DISCLOSURE FORM IS NOT THE POLICY. THIS FORM DESCRIBES SOME OF THE MAJOR FEATURES OF OUR CLAIMS-MADE LAWYERS PROFESSIONAL LIABILITY COVERAGE FORM. READ THE COVERAGE FORM CAREFULLY TO DETERMINE DUTIES, RIGHTS, AND WHAT IS AND IS NOT COVERED. THE PROVISIONS OF THE COVERAGE FORM DETERMINE THE SCOPE OF INSURANCE PROTECTION.

WORDS AND PHRASES IN QUOTATION MARKS HAVE SPECIAL MEANINGS AND ARE DEFINED IN THE COVERAGE FORM.

A. The policy provides a specific type of liability insurance protecting the policyholder under certain circumstances. Please review the coverage form carefully with your agent or broker to see that it meets your needs and to thoroughly understand its exclusions, exceptions and limitations.

B. The Lawyers Professional Liability Coverage Form is a Claims-Made form. No coverage is provided for any "claim" which was made prior to the inception date of the policy or for any circumstances occurring before the inception date of the policy which any insured knew about or could reasonably foresee would result in a "claim". If the policy includes a Retroactive Date in the Declarations or a Prior Acts Limitation endorsement, no coverage is provided for any errors, omissions, or negligent acts which occurred prior to the Retroactive Date. The policy applies only to any "claim" which is the result of an error, omission or negligent act in the rendering of or failure to render "professional legal services" for others by you or on your behalf during the "policy period". The "claim" must be first made against an insured during the "policy period" or any applicable Extended Reporting Period. All "claims" must be reported to us as soon as practicable and within the "policy period", any subsequent renewal or applicable Extended Reporting Period. All coverage provided by the policy will cease upon termination of the policy unless and to the extent an Extended Reporting Period applies.

C. If the policy is nonrenewed or terminated or if the Basic or Supplemental Extended Reporting Period has expired, you may have a gap in coverage. Your new insurance carrier may or may not provide coverage on the same basis as this policy or may change the Retroactive Date. It is important for you to review SECTION IX – CONDITIONS A, Extended Reporting Periods, in the Coverage Form for the availability of and requirements for the following options:

1. Our Coverage Form automatically provides a 60 days Basic Extended Reporting Period at no additional cost for reporting "claims" resulting from errors, omissions or negligent acts in the rendering or failure to render "professional legal services" by the insured or on the insured's behalf during the "policy period".

2. The first "Named Insured" may purchase for an additional premium of 190% of the premium stated in Item 6 of the Declarations Page a Supplemental Extended Reporting Period of thirty-six (36) months for reporting "claims" from errors, omissions or negligent acts in the rendering or failing to render "professional legal services" during the "policy period". This Supplemental Extended Reporting Period is inclusive of the Basic Extended Reporting Period.

D. During the first several years of a claims-made relationship, claims-made rates are comparatively lower than occurrence rates, and you can expect substantial annual premium increases, independent of overall rate-level increases, until the claims-made relationship reaches maturity.

© 2005 The St. Paul Travelers Companies, Inc.   All Right Reserved

LAWYERS PROFESSIONAL LIABILITY

THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY

# NEW YORK - AMENDATORY ENDORSEMENT

I.  Item 2 of **SECTION IX — CONDITIONS**, A, Extended Reporting Periods, is deleted in its entirety and replaced with the following:

2.  You will also have the right to purchase a Supplemental Extended Reporting Period. Upon payment of the additional premium, we will issue an endorsement providing a three (3) year, five (5) year, or seven (7) year Supplemental Extended Reporting Period, inclusive of the 60 Day Basic Extended Reporting Period specified in Paragraph 1 of the policy.  This endorsement will cover "claims" first made during the Supplemental Extended Reporting Period for errors, omissions or negligent acts which occurred prior to the end of the "policy period" and are otherwise covered by the policy.  The additional premium will be 190% of the policy's last annual premium for the three (3) year Supplemental Extended Reporting Period, 210% of the policy's last annual premium for the five (5) year Supplemental Extended Reporting Period, and 220% of the policy's last annual premium for the seven (7) year Supplemental Extended Reporting Period.  The Supplemental Extended Reporting Period coverage is excess over any other valid and collectible insurance available to any insured.

**ALL OTHER TERMS AND CONDITIONS REMAIN UNCHANGED.**

LA116 Ed. 3-06
© 2006 The St. Paul Travelers Companies, Inc.   All Right Reserved                    Page 1 of 1



## IMPORTANT NOTICE REGARDING INDEPENDENT AGENT AND BROKER COMPENSATION

For information about how St. Paul Travelers compensates independent agents and brokers, please visit www.stpaultravelers.com, or you may request a written copy from Marketing at One Tower Square, 2GSA, Hartford, CT 06183; Fax (860) 954-5987.

EXHIBIT "C"

*12-20-07 ⊃ 12-20-08*



# ≋ TRAVELERS

Travelers 1st Choice℠ for Lawyers

## LAWYERS PROFESSIONAL
## LIABILITY POLICY

A Custom Insurance Policy Prepared for:

### Law Offices Of
### Sledjeski & Tierney, PLLC
### 18 First Street - Box 479
### Riverhead, NY 11901-0401

LA000 Ed. 6-04   Printed in U.S.A.

© 2004 The St. Paul Travelers Companies, Inc.   All Right Reserved

Travelers 1st Choice℠ for Lawyers

 **TRAVELERS**

LAWYERS PROFESSIONAL LIABILITY
DECLARATIONS PAGE

---

POLICY NUMBER: 507JB0207                    ISSUE DATE: 12/27/2007

<u>THIS IS A CLAIMS-MADE POLICY.  PLEASE READ IT CAREFULLY</u>.

INSURING COMPANY:    St. Paul Fire and Marine Insurance Company, St. Paul, Minnesota

1.   NAMED INSURED:         Law Offices Of
                            Sledjeski & Tierney, PLLC

2.   PRINCIPAL ADDRESS:     18 First Street - Box 479
                            Riverhead, NY  11901-0401

3.   POLICY PERIOD:         From: 12/20/07        To: 12/20/08
                                  Inception           Expiration
                            (12: 01 A. M. Standard Time at the Principal Address Stated Above)

4.   LIMITS OF LIABILITY:   $ 2,000,000  EACH CLAIM
                            $ 2,000,000  POLICY AGGREGATE
                            "Claims Expenses" are in addition to the Limits of Liability.

5.   DEDUCTIBLE:            $ 5,000 EACH CLAIM
                            $ N/A  POLICY AGGREGATE
                            Deductible Applies to Indemnity only.

6.   PREMIUM:               $ 9,298.00

7.   RETROACTIVE DATE:      12/03/2004

8.   FORM AND ENDORSEMENT NUMBERS ATTACHING TO THIS POLICY AT ISSUANCE:

     SEE ATTACHED FORMS LIST #40705

This policy consists of the Lawyers Professional Liability Declarations, Coverage Form, Endorsements
listed above (or attached after inception) and the Application and any applicable supplements or
attachments.

LA002 Ed. 12-04  Printed in U.S.A.

NAME AND ADDRESS OF PRODUCER:

Protection Advantage, Inc.
13 Cornell Road
Latham, NY 12110

*Patricia A. Wilson*

Authorized Representative

In Witness Whereof, the Insurer has caused this policy to be signed by its President and Secretary and countersigned on the Declarations Page by a duly authorized agent of the Insurer.

President                                   Secretary

LA002 Ed. 12-04  Printed in U.S.A.

POLICY FORM LIST

Here's a list of all forms included in your
policy, on the date shown below. These forms
are listed in the same order as they appear in
your policy.

| Title | Form Number | Edition Date |
|---|---|---|
| Policy Form List | 40705 | 05-84 |
| Lawyers Professional Liability Policy Cover Page | LA000 | 06-04 |
| Lawyers Professional Liability Declarations Page | LA002 | 12-04 |
| New York - Lawyers Professional Liability Coverage Form | LA005 | 04-05 |
| Nuclear Liability Exclusion | LA008 | 06-04 |
| New York Application and Declaration Page | LA048 | 03-05 |
| Addendum Claims-Made Disclosure Form | | |
| New York — Amendatory Endorsement | LA116 | 03-06 |

Name of Insured          Policy Number 507JB0207          Effective Date 12/20/07
Law Offices Of Sledjeski & Tierney, PLLC          Processing Date:  12/27/2007

Travelers 1st Choice℠ for Lawyers

LAWYERS PROFESSIONAL LIABILITY COVERAGE FORM

# NEW YORK - LAWYERS PROFESSIONAL LIABILITY COVERAGE FORM

**NOTICE - THIS IS A CLAIMS-MADE POLICY WITH "CLAIMS EXPENSES" IN ADDITION TO THE LIMITS OF LIABILITY.  PLEASE READ IT CAREFULLY.**

THIS IS A CLAIMS-MADE POLICY.  IF THE POLICY CONTAINS A RETROACTIVE DATE, THEN THE POLICY PROVIDES NO COVERAGE FOR "CLAIMS" FOR ANY ERROR, OMISSION, NEGLIGENT ACT OR "PERSONAL INJURY" IN THE RENDERING OR FAILURE TO RENDER "PROFESSIONAL LEGAL SERVICES" COMMITTED PRIOR TO THE POLICY INCEPTION DATE OR THE RETROACTIVE DATE.  THIS POLICY APPLIES ONLY TO "CLAIMS", OR CIRCUMSTANCES REPORTED IN ACCORDANCE WITH SECTION IX-CONDITIONS B, FIRST MADE AGAINST THE INSUREDS DURING THE "POLICY PERIOD", ANY SUBSEQUENT RENEWAL OF THE POLICY OR APPLICABLE EXTENDED REPORTING PERIOD AND REPORTED IN WRITING TO US PURSUANT TO THE TERMS HEREIN.  THE LIMIT OF LIABILITY AVAILABLE TO PAY "DAMAGES" OR SETTLEMENTS SHALL NOT BE REDUCED BY AMOUNTS INCURRED AS "CLAIMS EXPENSES".  ANY "CLAIMS EXPENSES" THAT ARE INCURRED SHALL NOT BE APPLIED AGAINST THE APPLICABLE RETENTION.  WE SHALL HAVE THE RIGHT AND DUTY TO DEFEND ANY "CLAIM" AGAINST THE INSUREDS UNDER THIS POLICY.

COVERAGE FOR THE POLICY CEASES UPON TERMINATION OF COVERAGE EXCEPT FOR THE BASIC EXTENDED REPORTING PERIOD, UNLESS A SUPPLEMENTAL EXTENDED REPORTING PERIOD IS PURCHASED.  POTENTIAL COVERAGE GAPS MAY ARISE UPON EXPIRATION OF THE SUPPLEMENTAL EXTENDED REPORTING PERIOD.  IN GENERAL, THE NATURE OF CLAIMS-MADE COVERAGE IS SUCH THAT, DURING THE FIRST SEVERAL YEARS OF THE "CLAIMS-MADE RELATIONSHIP", CLAIMS-MADE RATES ARE GENERALLY LOWER THAN OCCURRENCE RATES (ASSUMING THAT COVERAGE ON AN OCCURRENCE BASIS IS AVAILABLE FOR THE INSURANCE IN QUESTION), AND YOU MAY EXPECT SUBSTANTIAL ANNUAL PREMIUM INCREASE, INDEPENDENT OF OVERALL RATE LEVEL INCREASES, UNTIL THE "CLAIMS-MADE RELATIONSHIP" REACHES MATURITY.

Throughout the policy the words "you" and "your" refer to the "Named Insured" shown in the Declarations.  The words "we", "us", and "our" refer to the Company providing this insurance.

The word "insured" means any person or organization qualifying as such under **SECTION II - INSURED.**

Other words and phrases that appear in quotation marks have special meaning.  Refer to **SECTION VIII -DEFINITIONS.**

## SECTION I - INSURING AGREEMENTS

We will pay on behalf of an insured "damages" and "claims expenses" for which "claim" is first made against an insured and reported to us within the "policy period", any subsequent renewal of the policy by us or applicable Extended Reporting Period. Such "damages" must arise out of an error, omission, negligent act or "personal injury", in the rendering of or failure to render "legal services" for others by you or on your behalf.  The error, omission, negligent act or "personal injury" must occur on or after the retroactive date stated in the Declarations, if any.

We will have the right and duty to defend any "claim" or "suit" against an insured seeking "damages" to which this insurance applies, even if any of the allegations of the "claim" or "suit" are groundless, false or fraudulent.  We may also make such investigation and, with your written consent, such settlement of any "claim" or "suit" we deem appropriate.

If an insured does not agree with a settlement recommended by us, our Limit of Liability is reduced to the total of the amount for which the "claim" or "suit" could have been settled plus all "claims expenses" incurred up to the time we made

LAWYERS PROFESSIONAL LIABILITY COVERAGE FORM

our recommendation.  We shall have the right to withdraw from further defense of the "claim" or proceeding by tendering control of said defense over to you.

We will not be obligated to pay "damages" or "claims expenses" or to defend any "claim" or "suit" after the applicable Limit of Liability has been exhausted by payment made by us towards judgments and/or settlements.

## SECTION II – INSURED

Each of the following is an insured:

A. The "Named Insured" shown in the Declarations; and

B. Any person who was, is now or hereafter becomes a partner, officer, director, employee, principal, shareholder or member of the "Named Insured", whether named or not, but only while acting in the scope of their duties as such; and

C. Any lawyer retained as Of Counsel by you, but only with respect to "professional legal services" performed for you or on your behalf or on behalf of a "predecessor firm"; and

D. The estate, heirs, executors, administrators, and legal representatives of any insured in the event of such insured's death, incapacity, insolvency or bankruptcy, but only to the extent that such insured would otherwise be provided coverage under this policy; and

E. Any "predecessor in business" or person who was a partner, officer, director, employee, principal, shareholder or member of any "predecessor in business" who provided "professional legal services" on behalf of any "predecessor in business", provided a request for such coverage is made to us and accepted in writing prior to the inception of such coverage; and

F. Any organization you newly acquire or form is an insured under this policy only when we provide you our written acceptance.  This provision applies to any partner, officer, director, employee, principal, shareholder or member of such newly acquired or formed organization.

## SECTION III – LIMITS OF LIABILITY

Regardless of the number of insureds under this policy, the number of persons or organizations seeking "damages" or the number of "claims" made, our liability is limited as follows:

A. The amount stated in the Declarations as applicable to each "claim" is the most we will pay for all "damages" arising out of the same or related errors, omissions, negligent acts or "personal injury".  For the purposes of determining our Limit of Liability, all "claims" arising out of the same or related errors, omissions, negligent acts or "personal injury" will be deemed to have been made when the first of such "claims" is made whether such demands are made against one or more insureds or whether such demands are made by one or more persons and will be treated as a single "claim".

B. The amount shown in the Declarations as Policy Aggregate is the most we will pay for all "damages" for all "claims" to which this insurance applies.

## SECTION IV – DEDUCTIBLE

A. Our obligation to pay "damages" under this policy applies only to the amount of "damages" which are in excess of the Deductible amount stated in the Declarations.

B. The deductible amount applies to all "damages" incurred as the result of each "claim".  The deductible amount does not apply to "claims expenses" incurred as the result of each "claim".

C. The terms of the policy, including those with respect to our right and duty to defend "suits" and your duties in the event of a "claim", "suit" or circumstances which may give rise to a "claim", apply irrespective of the application of the deductible.

D. We may pay any part or all of the deductible amount.  Upon notification of the action we have taken, you shall reimburse us for such part of the deductible amount as we have paid.

E. The Limits of Liability will not be reduced by the amount of any "damages" within the deductible amount.

© 2005 The St. Paul Travelers Companies, Inc.  All Right Reserved

LAWYERS PROFESSIONAL LIABILITY COVERAGE FORM

## SECTION V – SUPPLEMENTARY PAYMENTS

We will pay, in addition to the applicable Limit of Liability:

A. All "claims expenses" in connection with any "claim" or "suit" we defend.

B. All costs charged against any insured in such "claims" or "suits".

C. All interest on the entire amount of any judgment which accrues after entry of the judgment and before we have paid, offered to pay or deposited, whether in court or otherwise, that part of the judgment which does not exceed our Limit of Liability.

D. Prejudgment interest against any insured on that part of the judgment we pay. If we make an offer to pay the applicable Limit of Liability, we will not pay any pre-judgment interest based on that period time after the offer.

E. Premiums on appeal bonds and premiums on bonds to release attachments but not for bond amounts in excess of the applicable Limit of Liability.

F. All reasonable expenses incurred by the insured at our request to assist us in the investigation of the "claim" or "suit", including actual loss of earnings up to $250 a day for each insured because of time off from work, subject to a limit of $5,000 for each individual insured subject to a maximum limit of $10,000 per "policy period".

G. All reasonable legal expenses incurred by the insured resulting from the defense of a proceeding by a regulatory or disciplinary official or agency to investigate charges of professional misconduct in the rendering of or failure to render "professional legal services" subject to a limit of $5,000 per "policy period".

## SECTION VI – POLICY TERRITORY

This policy applies worldwide, provided that "claim" is made and "suit" is brought within the United States of America (including its territories or possessions), Puerto Rico or Canada.

## SECTION VII – EXCLUSIONS

This insurance does not apply to "claims":

A. Arising out of any dishonest, fraudulent, criminal or malicious act, error, omission or "personal injury" committed by, at the direction of, or with the knowledge of an insured. This exclusion does not apply to an insured who did not personally commit or personally participate in committing any of the knowingly wrongful acts, errors, omissions or "personal injury", provided that:

1. Such insured had neither notice nor knowledge of such knowingly wrongful act, error, omission or "personal injury"; and

2. Such insured, upon receipt of notice or knowledge of such knowingly wrongful act, error, omission or "personal injury", notifies us as soon as possible.

B. Arising out of "bodily injury" or "property damage".

C. Made by one insured under this policy against another insured under this policy.

D. Alleging discrimination.

E. Arising out of any insured's activities and/or capacity as a fiduciary under The Employee Retirement Income Security Act of 1974 as amended, or similar responsibility under state statutory or common law, except if the insured is deemed to be a fiduciary solely by reason of "professional legal services" rendered with respect to any employee benefit plan.

F. Based upon or arising out of any insured's capacity as:

1. A public official or employee of a governmental body, subdivision or agency thereof unless the insured is deemed to be such solely by virtue of rendering "professional legal services" to such governmental body, the remuneration for which services inures to the benefit of the "Named Insured"; or

2. An officer, director, partner, employee, principal, shareholder or member of any organization other than the "Named Insured" or any "predecessor in business".

G. Arising out of any error, omission, negligent act or "personal injury"

LAWYERS PROFESSIONAL LIABILITY COVERAGE FORM

occurring prior to the inception date of this policy if any insured prior to the inception date knew or could have reasonably foreseen that such error, omission, negligent act or "personal injury" might be expected to be the basis of a "claim" or "suit".

H. Arising out of:

1. The promotion, sale or solicitation for sale of securities, real estate, or other investments by any insured; or

2. Recommendations, representations or opinions concerning specific investment advice by any insured or any person or organization referred to by any insured in connection with portfolio or trust account management, or the performance or nonperformance of securities, real estate, or other investments.

I. Arising out of "professional legal services" performed for or on behalf of any organization other than the "Named Insured" or any "predecessor in business" at any time when those services were performed the organization was:

1. Directly or indirectly controlled, operated or managed by any insured; or

2. Owned by any insured, or by a spouse of any insured, in a percentage which exceeds:

a. 5% of the issued and outstanding voting stock of the shares of a publicly traded organization; or

b. 10% of the shares of a closely or privately held organization.

J. Against any insured as a beneficiary or distributee of any trust or estate.

K. Arising out of liability assumed by any insured under any indemnity, hold harmless or similar provisions or agreements, but this exclusion does not apply to liability an insured would have in the absence of such agreements.

L. Arising out of the inability or failure to pay, collect, administer or safeguard funds held or to be held for others.

M. Arising out of the alleged notarized certification or acknowledgment by any

insured, in their capacity as a notary public, of a signature on a document which the insured did not witness being placed on the document.

N. Arising solely out of an error, omission, negligent act or "personal injury" of a lawyer with whom you share or shared common office space or common office facilities and who is or was not an insured under this policy.

SECTION VIII – DEFINITIONS

A. "Bodily Injury" means bodily injury, sickness or disease sustained by a person, including the death of any person, resulting at any time. "Bodily injury" includes mental anguish and emotional distress.

B. "Claim" means a demand received by an insured for money alleging an error, omission or negligent act in the rendering of or failure to render "professional legal services" for others by you or on your behalf.

C. "Claims Expense" means reasonable and necessary fees charged by (an) attorney(s) designated or approved in writing by us and all other fees, costs, and expenses resulting from the investigation, adjustment, defense and appeal of a "claim", "suit" or proceeding arising in connection therewith, if incurred by us or by an insured with our written consent.

D. "Claims-Made Relationship" means that period of time between the Inception Date of the first claims-made policy between you and us, without any gap of coverage, but does not include any period covered by an Extended Reporting Period.

E. "Damages" means compensatory damages which an insured becomes legally obligated to pay as a result of any judgment, award or settlement, provided any settlement is negotiated with the assistance and approval of us. "Damages" does not include punitive or exemplary damages, fines, sanctions or penalties, equitable relief or the return or reimbursement of fees for "professional legal services" whether or not rendered.

F. "Named Insured" means the person or entity as stated in the Declarations.

LAWYERS PROFESSIONAL LIABILITY COVERAGE FORM

G. "Personal Injury" means injury, other than "bodily injury", arising out of one or more of the following offenses:

1. False arrest, detention or imprisonment; or

2. Malicious prosecution; or

3. The wrongful eviction from, wrongful entry into, or the invasion of the right of private occupancy of a room, dwelling or premises that a person occupies by or on behalf of its owner, landlord or lessor; or

4. Oral or written publication of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services; or

5. Oral or written publication of material that violates a person's right of privacy.

H. "Policy Period" means the period from the inception date of this policy to the policy expiration date, as set forth in the Declarations, or the date of cancellation, whichever is earlier.

I. "Predecessor in Business" means a law firm or practice which has undergone dissolution and at least 50% of the owners, officers, partners, principals or shareholders of the prior firm have joined you.

J. "Professional Legal Services" means services performed or advice given by you or on your behalf for others in the conduct of your practice as a lawyer, real estate title insurance agent, notary public, arbitrator or mediator. It includes services performed for others ordinarily rendered by a lawyer as an administrator, conservator, executor, guardian, trustee, receiver, or in any other similar fiduciary capacity and then only for such services. It does not include services performed or advice given while acting in the capacity of an employee, officer, director, partner, shareholder, principal, investor, member, agent or in any other capacity that gives rise to a conflict of interest of any organization other than the "Named Insured" or any "predecessor in business".

K. "Property Damage" means:

1. Physical injury to tangible property, including all resulting loss of use of that property; or

2. Loss of use of tangible property that is not physically injured.

L. "Suit" means a civil proceeding in which "damages" to which this insurance applies are alleged. "Suit" includes:

1. An arbitration proceeding in which such "damages" are claimed and to which an insured must submit or does submit with our consent; or

2. Any other alternative dispute resolution proceeding in which "damages" are claimed and to which an insured submits with our consent.

SECTION IX - CONDITIONS

A. Extended Reporting Periods

CONDITION A, Extended Reporting Periods, will not apply to this policy, except for the automatic 60 Day Basic Extended Reporting Period described in Paragraph 1 below, if the "claims-made relationship" between you and the Company has been less than one year and the policy has been terminated for nonpayment of premium or fraud.

1. In the event of any termination of coverage which is defined as:

a. Cancellation; or

b. Nonrenewal; or

c. Decrease in the Limits of Liability; or

d. Reduction of coverage; or

e. Increased deductible; or

f. New exclusion; or

g. Any other change in coverage which is less favorable to the insured;

An automatic 60 Day Basic Extended Reporting Period will be furnished to the insured for reporting any "claim" first made against the insured arising out of an error, omission, or negligent act to which this coverage applies and which occurred after any retroactive date, if any, and prior to the end to the "policy period". Any "claims" reported under this 60 Day Basic Extended Reporting Period will

LAWYERS PROFESSIONAL LIABILITY COVERAGE FORM

be considered as having been made before the end of the "policy period".  The 60 Day Basic Extended Reporting Period coverage is excess over any other valid and collectible insurance available to any insured.

The 60 Day Basic Extended Reporting Period does not increase our Limits of Liability.  The Limit of Liability for the 60 Day Basic Reporting Period will be the amount of coverage remaining in the Aggregate Limit of Liability of the terminated policy.

2.  You will also have the right to purchase a Supplemental Extended Reporting Period.  Upon payment of the additional premium, we will issue an endorsement providing a three (3) year Supplemental Extended Reporting Period, inclusive of the 60 Day Basic Extended Reporting Period specified in Paragraph 1 above.  This endorsement will cover "claims" first made during the Supplemental Extended Reporting Period for errors, omissions or negligent acts which occurred prior to the end of the "policy period" and are otherwise covered by the policy. The additional premium for this Supplemental Extended Reporting Period will be 190% of the policy's last annual premium.  This Supplemental Extended Reporting Period coverage is excess over any other valid and collectible insurance available to any insured.

3.  Not later than thirty (30) days after the termination of coverage, we will mail or deliver to the first "Named Insured" in Item 1 of the Declarations, written notice of the Basic Extended Reporting Period, and the availability of, the premium for, and the importance of purchasing the Supplemental Extended Reporting Period.  Proof of mailing or delivery, shall be sufficient proof of notice.

The first "Named Insured" will have the greater of sixty (60) days from the effective date of termination of coverage, or thirty (30) days from the date of mailing or delivery of the notice of the availability to purchase the Supplemental Extended Reporting Period, to submit written acceptance of, and premium for, the

Supplemental Extended Reporting Period to us.

4.  If this policy or continuous claims-made policy's, issued on behalf of the Company, have been in effect for less than three (3) years, the amount of coverage afforded under the Supplemental Extended Reporting Period shall be the greater of the amount of coverage remaining in the policy's Annual Aggregate Limit of Liability or fifty percent (50%) of the policy's Annual Aggregate Limit of Liability.

If this policy or continuous claims-made policies, issued on behalf of the Company, have been in effect for three (3) years or more, the amount of coverage will be equal to 100% of the policy's Annual Aggregate Limit of Liability.

5.  If you become totally and permanently disabled or die during the "policy period", the period for reporting "claims" is extended until your disability ends or the executor or administrator is discharged.

No additional premium will be charged for this extension nor will any premium be refunded.

We also require one of the following, within 60 days after the end of this policy, for this coverage to apply:

a.  Written proof of your permanent and total disability, including the date it happened, certified by your attending physician.  You agree to submit to medical examination(s) by any physician(s) we designate if requested; or

b.  Written proof of the date of your death.

6.  During a "claims-made relationship" and any Extended Reporting Period, a person employed or otherwise affiliated with you and covered by your claims-made policy during such affiliation will continue to be covered under such policy and any Extended Reporting Period after the affiliation has ceased, for such person's errors, omissions or

LAWYERS PROFESSIONAL LIABILITY COVERAGE FORM

negligent acts performed on your behalf during the affiliation with you.

If this policy was issued to a corporation or partnership, we will provide an Individual Extended Reporting Period coverage upon termination of coverage to any person covered under the policy if:

a. Such entity has been placed in liquidation or bankruptcy or permanently ceases operations; and

b. The entity or its designated entity does not purchase Extended Reporting coverage; and

c. Such person requests the Individual Extended Reporting Period within 120 days of termination of coverage.

We will not be obligated to provide any notice to any person of the availability of the Extended Reporting Periods coverage other than to the first "Named Insured".

B. Reporting of Circumstances Which May Give Rise to a "Claim"

If, during the "policy period", any insured first becomes aware of a circumstance which may give rise to a "claim" (i.e., any act, error, omission or "personal injury" which might reasonably be expected to be the basis of a "claim" against any insured under this policy), the insured must give written notice in accordance with SECTION IX −CONDITIONS C. Insured's Duties in the Event of a "Claim", "Suit" or Circumstances Which May Give Rise to a "Claim". Any "claims" subsequently made against any insured arising out of that circumstance shall be considered to have been made and reported during the "policy period".

C. Insured's Duties in the Event of a "Claim", "Suit" or Circumstances Which May Give Rise to a "Claim"

1. You and another involved insured must see to it that we are notified in writing as soon as practicable and within the "policy period", any subsequent renewal of the policy by us or any applicable Extended Reporting Period of any circumstance

which may give rise to a "claim". To the extent possible, written notice should include:

a. The specific act, error, omission or "personal injury" including the date(s) thereof; and

b. The "damages" that may reasonably result; and

c. The date and circumstances by which any insured became aware of the act, error, omission or "personal injury".

2. If a "claim" is received by any insured you must:

a. Immediately record the specifics of the "claim" and the date received ; and

b. Notify us as soon as practicable.

You and any other involved insured must see to it that we receive written notice of the "claim" as soon as practicable and within the "policy period", any subsequent renewal of the policy or applicable Extended Reporting Period.

3. You and any other involved insured must:

a. Immediately send us copies of any demands, notices, summons' or legal papers received in connection with the "claim" or "suit"; and

b. Authorize us to obtain records and other information; and

c. Cooperate with us in the investigation, settlement or defense of the "claim" or "suit"; and

d. Assist us, upon our request, in the enforcement of any right against any person or organization which may be liable to any insured because of "damages" to which this insurance may also apply.

4. No insured will, except at their own cost, voluntarily make a payment, assume any obligation, or incur any expense without our written consent.

© 2005 The St. Paul Travelers Companies, Inc.   All Right Reserved

LAWYERS PROFESSIONAL LIABILITY COVERAGE FORM

5. Notice given by or on behalf of an insured, or written notice by or on behalf of the injured person or any other claimant, to any agent of ours in New York State, with particulars sufficient to identify the insured, shall be considered to be notice to us.

D. Transfer of Right of Recovery Against Others

If an insured has rights to recover all or part of any payment we have made under this policy, those rights are transferred to us. Such insured must do nothing after a "claim" is made or "suit" is brought to impair them. At our request, the insured will bring "suit" or transfer those rights to us and help us enforce them.

Failure to comply with this CONDITION D will not in itself impair coverage, provided that the insured against whom "claim" is made or "suit" is brought did not personally impair rights of recovery or have knowledge of such impairment. Furthermore, upon receipt of such knowledge, such insured must immediately notify us that those rights have been impaired.

E. Changes

This policy contains all the agreements between you and us concerning the insurance afforded. The first "Named Insured" shown in the Declarations is authorized to make changes in the terms of this policy with our consent. This policies' terms can be amended or waived only by an endorsement issued by us as part of this policy.

F. Legal Action Against Us

No person or organization has a right under this policy:

1. To join us as a party or otherwise bring us into a "claim" or "suit" asking for "damages" from an insured; or

2. To sue us on this policy unless all of its terms have been fully complied with.

A person or organization may sue us to recover on an agreed settlement or on a final judgment against an insured; but

we will not be liable for "damages" that are not payable under the terms of this policy or that are in excess of the applicable Limit of Liability. An agreed settlement means a settlement and release of liability signed by us, the insured and the claimant or the claimant's legal representative.

G. Bankruptcy

Bankruptcy or insolvency of any insured or of an insured's estate will not relieve us of our obligations under this policy.

H. Cancellation

1. The first "Named Insured" may cancel this policy by:

   a. Surrendering the policy to us or any of our authorized agents; or

   b. Mailing to us written notice stating when thereafter the cancellation shall be effective.

2. Cancellation of Policies in Effect 60 Days or Less

   This policy may be cancelled by us by mailing or delivering to the first "Named Insured" written notice stating the reason for cancellation at the mailing address shown in the policy, and the authorized agent or broker at least:

   a. 30 days before the effective date of cancellation if the policy is cancelled for any reason not included in Paragraph b below.

   b. 15 days before the effective date of cancellation if the policy is cancelled for any of the following reasons:

      (1) Nonpayment of premium (if we cancel for this reason, the notice will include the amount due); or

      (2) Conviction of a crime arising out of acts increasing the hazard insured against; or

      (3) Discovery of fraud or material misrepresentation in the obtaining of this policy or in

LAWYERS PROFESSIONAL LIABILITY COVERAGE FORM

the presentation of a "claim" thereunder; or

(4) After issuance of the policy or after the last renewal date, discovery of an act or omission, or a violation of any policy condition, that substantially and materially increases the hazard insured against, and which occurred subsequent to inception of the current "policy period"; or

(5) Material change in the nature or extent of the risk, occurring after issuance or last annual renewal anniversary date of the policy, which causes the risk of loss to be substantially and materially increased beyond that contemplated at the time the policy was issued or last renewed; or

(6) Required pursuant to a determination by the Superintendent that the continuation of our present premium volume would jeopardize our solvency or be hazardous to the interest of our policyholders, our creditors or the public; or

(7) A determination by the Superintendent that the continuation of the policy would violate, or would place us in violation of, any provision of the Insurance Code; or

(8) Revocation or suspension of the insured's license to practice his/her profession.

3. Cancellation of Policies in Effect for More Than 60 Days

If this policy has been in effect for more than 60 days, or if this policy is a renewal or continuation of a policy issued by us, this policy may be cancelled by us only for any of the reasons listed in 2, b. above provided we mail written notice of cancellation stating the reason for cancellation to the first "Named Insured" at the address shown in the policy and to the authorized agent or

broker at least 15 days before the effective date of cancellation.

4. Notice of cancellation will state the effective date of cancellation. If the policy is cancelled, that date will become the end of the "policy period".

5. If the first "Named Insured" cancels, earned premium will be computed in accordance with the customary short rate table and procedure. If we cancel, earned premium shall be computed pro rata.

However, when the premium is advanced under a premium finance agreement, the cancellation refund will be pro rata. Under such financed policies, the company will be entitled to retain a minimum earned premium of 10% of the total policy premium or $60, whichever is greater. Premium adjustment may be made either at the time cancellation is effected or as soon as practicable after cancellation becomes effective. Payment or tender of unearned premium is not a condition of cancellation.

6. If notice is mailed, proof of mailing will be sufficient proof of notice.

I. Nonrenewal or Conditional Renewal

1. Nonrenewal

If we decide not to renew this policy we will mail or deliver written notice of nonrenewal to the first "Named Insured" as provided in Paragraph I. 3. below, along with the specific reason(s) for nonrenewal.

2. Conditional Renewal

If we condition renewal of this policy upon:

a. Change of limits; or

b. Change in type of coverage; or

c. Reduction of coverage; or

d. Increased Deductible; or

e. Addition of an exclusion; or

LAWYERS PROFESSIONAL LIABILITY COVERAGE FORM

f.  Increased premiums in excess of 10%, exclusive of any premium increase due to and commensurate with insured value added or increased exposure units; or as a result of experience rating or audit;

We will send, mail or deliver written notice of conditional renewal as provided in Paragraph 3 below stating renewal premium and specific reason(s) for the conditional renewal.

3.  Notices of Nonrenewal and Conditional Renewal

a.  If we decide not to renew this policy or to conditionally renew this policy as provided in Paragraphs I, 1, and I, 2, above, we shall mail or deliver written notice to the first "Named Insured" at least 60 but not more than 120 days before:

(1) The Expiration Date; or

(2) The anniversary date if this is a continuous policy.

b.  Notice will be mailed or delivered to the first "Named Insured" at the address shown in the policy and to the authorized agent or broker.  If notice is mailed or delivered, proof of mailing or delivery, will be sufficient proof of notice.

c.  We will not send the first "Named Insured" notice of nonrenewal or conditional renewal if the "Named Insured", the authorized agent or broker or another insurer of the "Named Insured" mails or delivers notice that the policy has been replaced or is no longer desired.

4.  Late Notice of Conditional Renewal or Nonrenewal

a.  If prior to the expiration of this policy, we send an incomplete or late conditional renewal notice or a late or incomplete nonrenewal notice as provided for in Paragraph I, 3, above, coverage will remain in effect at the same terms and conditions of this policy and at the lower of the

current rates or the prior period's rates until sixty (60) days after such notice is mailed or delivered, unless you elect to cancel sooner.

b.  If we do send the first "Named Insured" notice of nonrenewal or conditional renewal until on, or after the expiration of the current coverage, coverage will remain in effect on the same terms and conditions of the expiring policy for another "policy period" and at the lower of the current rates or the prior period's rates, unless the insured notifies us during the additional "policy period" coverage has been replaced or elects to cancel, in which event cancellation shall be on a pro rata basis.

c.  The Aggregate Limit of this policy as shown in the Declarations will be increased in proportion to any policy extension provided in accordance with Paragraphs 4, a, and 4, b, above.

J.  Conformity to Statute

The terms of this policy which are in conflict with the statutes of the state wherein this policy is delivered are hereby amended to conform to such statute.

K.  Transfer of Your Rights and Duties Under This Policy

Your rights and duties under this policy may not be transferred without our written consent except in the case of death of an individual "Named Insured".

If you die, your rights and duties will be transferred to your legal representative, but only while acting within the scope of duties as your legal representative.  Until your legal representative is appointed, anyone having proper temporary custody of your property will have rights and duties, but only with respect to that property.

L.  Other Insurance

This insurance, including any applicable Extended Reporting Period coverage, is

© 2005 The St. Paul Travelers Companies, Inc.  All Right Reserved

LAWYERS PROFESSIONAL LIABILITY COVERAGE FORM

excess over any other valid and collectible insurance available to any insured.

M. Examination of Your Books and Records

You must keep accurate records of the information we will need to compute your premium. You agree to allow us to examine and audit your financial books and records that relate to this insurance. We may do this within one hundred and eighty (180) days after expiration of. this policy.

We may as soon as practicable following such audit, refund or credit your account for any return premium due you, or bill and make a good faith effort to collect any additional premium due us, as a result of such audit.

If you fail to cooperate with us in our attempt to conduct an audit, including your failure to return any questionnaires or self-audit worksheets, we shall have the right to not renew your policy upon expiration of the current policy due to our inability to establish your proper premium.

N. Transfer of Duties When a Limit of Insurance is Used Up

1. If we conclude that based on the "claims", or "suits" which have been reported to us and to which this insurance may apply, that the Annual Aggregate Limit of Liability is likely to be used up in the payment of judgments or settlements, we will notify the first "Named Insured" in Item 1 of the Declarations, in writing, to that effect.

2. When the Annual Aggregate Limit of Liability has actually been used up in the payment of judgments or settlements:

   a. We will notify the first "Named Insured", in writing, as soon as practicable, that:

      (1) Such limit has actually been used up; and

      (2) Our duty to defend "suits" seeking "damages" subject to the Annual Aggregate Limit has also ended.

   b. We will initiate, and cooperate in, the transfer of control, to any appropriate insured, of all "claims" and "suits" seeking "damages" which are subject to the Annual Aggregate Limit and which are reported to us before the limit is used up. That insured must cooperate in the transfer of control of said "claims" and "suits".

   We agree to take such steps, as we deem appropriate, to avoid a default in, or continue the defense of, such "suits" until such transfer is completed, provided the appropriate insured is cooperating in completing such transfer.

   c. The first "Named Insured" in Item 1 of the Declarations, and any other insured involved in a "suit" seeking "damages" subject to the Annual Aggregate Limit, must arrange for the defense of such "suit" within such time period as agreed to between the appropriate insured and us. Absent any such agreement, arrangement for the defense of such "suit" must be made as soon as practicable.

3. The first "Named Insured" in Item 1 of the Declarations will reimburse us for expenses we incur in taking those steps we deem appropriate in accordance with Paragraph 2, b, above.

4. The exhaustion of the Annual Aggregate Limit of Liability by the payments of judgments or settlements, and the resulting end of our duty to defend will not be affected by our failure to comply with any of the provisions of this CONDITION N.

O. Premiums and Premium Audit

1. All premiums for this policy are computed in accordance with our rules and rates.

2. If the Premium in Item 6 of the Declarations, is shown as adjustable or subject to audit, it is a deposit premium only. At the close of each audit period we will compute the

LAWYERS PROFESSIONAL LIABILITY COVERAGE FORM

earned premium for that period. An audit to determine the final premium due or to be refunded will be completed within 180 days after the Expiration Date of the policy and may not be waived. Audit premiums are due and payable on notice to the first "Named Insured" in Item 1 of the Declarations. If the sum of the advance and audit premiums paid for the policy term is greater than the earned premium, we will return the excess to the first "Named Insured".

3. The first "Named Insured" in Item 1 of the Declarations must keep records of the information we need for premium computation, and send us copies at such times as we may request.

The First "Named Insured" shown in the Declarations:

a. Is responsible for the payment of all premiums and deductibles; and

b. Will be the payee for any return premiums we pay.

P. Representations

By accepting this policy, you agree:

1. The statements in the application and any supplements which are attached to and forms a part of the policy are accurate and complete; and

2. We have issued this policy in reliance upon your representations.

Q. Headings

The descriptions in the headings and subheadings of this policy are solely for convenience and form no part of the terms, conditions exclusions and limitation of this policy.

R. Loss Information

We will provide the first Named Insured with the following loss information for the period of time that we have continuously provided coverage under this policy:

1. The date and description of the error, omission, negligent act, or

"personal injury" on closed claims, including the amount of payment, if any;

2. The date and description of the error, omission, negligent act, or "personal injury" on open claims, including the amount of payment, if any;

3. The date and description of each error, omission, negligent act, or "personal injury" you reported to us.

We will provide this information only if we receive a request for it from the first Named Insured or the first Named Insured's agent or broker. Once we receive this request, we will mail or deliver the information to the first Named Insured or the first Named Insured's agent or broker within 20 days.

We collect this information for our own business purposes. We do so as carefully and accurately as we can. In giving this information to the first Named Insured or the first Named Insured's agent or broker, we don't make any promises or warranties to anyone that this information has no errors. Any cancellation or nonrenewal will take effect even if we accidentally provide incorrect information.

S. Optional Extension for a Reduction in Coverage

If there is a reduction in coverage, we will make available to you an extension that applies the coverage previous to that reduction to covered claims resulting from errors, omissions, negligent acts, or "personal injury" committed before the effective date that coverage was reduced.

We will notify you in writing within 30 days after the effective date of the reduction in coverage of the Basic Extended Reporting Period, the need for purchasing this extension, and the current cost of this extension.

The requirements for you to obtain such an extension are the same as those for the Supplemental Extended Reporting Period.

We will continue to offer such an extension, while coverage is

LAWYERS PROFESSIONAL LIABILITY COVERAGE FORM

continuously provided by us, until you choose not to purchase the extension when it is offered or this Coverage Form is canceled or not renewed.

If this optional extension is continuously provided by us from the effective date of the reduction in coverage to the date that this Coverage Form ends because one of us chooses to cancel or not renew it, the optional extension will be part of the Basic Extended Reporting Period or Supplemental Extended Reporting Period available to you at that time.

T. Retroactive Date

The retroactive date may not be changed during the time that this claims-made Coverage Form has been continuously in effect with us or any reporting period.

This policy consists of the Lawyers Professional Liability Declarations, Coverage Form, Endorsements listed in that Declarations (or subsequently attached), and the Application including any applicable supplements.

In return for payment of the premium, we agree with the "Named Insured" to provide the insurance afforded by this policy. That insurance will be provided by the Company indicated as the INSURING COMPANY in the Declarations.

LAWYERS PROFESSIONAL LIABILITY

THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

# NUCLEAR LIABILITY EXCLUSION

A. This insurance does not apply to "damages" or "claims expenses" for "claims" or "suits" arising out of the failure to discover or disclose the presence or existence of a "nuclear facility", "nuclear material", "spent fuel" or "waste".

B. As used in this endorsement:

"Nuclear material" means "source material", "special nuclear material" or "by-product material".

"Source material", "special nuclear material", and "by-product material" have the meanings given them in the Atomic Energy Act of 1954 or in any law amendatory thereof.

"Spent fuel" means any fuel element or fuel component, solid or liquid, which has been used or exposed to radiation in a "nuclear reactor".

"Waste" means any waste material (1) containing "by-product material" other than the tailings or wastes produced by the extraction or concentration of uranium or thorium from any ore processed primarily for its "source material" content, and (2) resulting from the operation by any person or organization of any "nuclear facility" included under the first two paragraphs of the definition of "nuclear facility".

"Nuclear facility" means:

1. Any "nuclear reactor"; or

2. Any equipment or device designed or used for the (a) separating the isotopes of uranium or plutonium, (b) processing or utilizing "spent fuel," or (c) handling, processing or packaging "waste"; or

3. Any equipment or device used for the processing, fabricating or alloying of "special nuclear material" if at any time the total amount of such material in the custody of the insured at the premises where such equipment or device is located consists of  or contains more than 25 grams of plutonium or uranium 233 or any combination thereof, or more than 250 grams of 235; or

4. Any structure, basin, excavation, premises or place prepared or used for the storage or disposal of "waste", and includes the site on which any of  the foregoing is located, all operations conducted on such site and all premises used for such operations.

"Nuclear reactor" means any apparatus designed or used to sustain nuclear fission in a self-supporting chain reaction or to contain a critical mass of fissionable material.

ALL OTHER TERMS AND CONDITIONS REMAIN UNCHANGED.

LAWYERS PROFESSIONAL LIABILITY

# NEW YORK APPLICATION AND DECLARATION PAGE ADDENDUM
## CLAIMS-MADE
## DISCLOSURE FORM

### IMPORTANT NOTICE TO APPLICANT OR POLICYHOLDER

THIS DISCLOSURE FORM IS NOT THE POLICY. THIS FORM DESCRIBES SOME OF THE MAJOR FEATURES OF OUR CLAIMS-MADE LAWYERS PROFESSIONAL LIABILITY COVERAGE FORM. READ THE COVERAGE FORM CAREFULLY TO DETERMINE DUTIES, RIGHTS, AND WHAT IS AND IS NOT COVERED. THE PROVISIONS OF THE COVERAGE FORM DETERMINE THE SCOPE OF INSURANCE PROTECTION.

WORDS AND PHRASES IN QUOTATION MARKS HAVE SPECIAL MEANINGS AND ARE DEFINED IN THE COVERAGE FORM.

A. The policy provides a specific type of liability insurance protecting the policyholder under certain circumstances. Please review the coverage form carefully with your agent or broker to see that it meets your needs and to thoroughly understand its exclusions, exceptions and limitations.

B. The Lawyers Professional Liability Coverage Form is a Claims-Made form. No coverage is provided for any "claim" which was made prior to the inception date of the policy or for any circumstances occurring before the inception date of the policy which any insured knew about or could reasonably foresee would result in a "claim". If the policy includes a Retroactive Date in the Declarations or a Prior Acts Limitation endorsement, no coverage is provided for any errors, omissions, or negligent acts which occurred prior to the Retroactive Date. The policy applies only to any "claim" which is the result of an error, omission or negligent act in the rendering of or failure to render "professional legal services" for others by you or on your behalf during the "policy period". The "claim" must be first made against an insured during the "policy period" or any applicable Extended Reporting Period. All "claims" must be reported to us as soon as practicable and within the "policy period", any subsequent renewal or applicable Extended Reporting Period. All coverage provided by the policy will cease upon termination of the policy unless and to the extent an Extended Reporting Period applies.

C. If the policy is nonrenewed or terminated or if the Basic or Supplemental Extended Reporting Period has expired, you may have a gap in coverage. Your new insurance carrier may or may not provide coverage on the same basis as this policy or may change the Retroactive Date. It is important for you to review SECTION IX – CONDITIONS A, Extended Reporting Periods, in the Coverage Form for the availability of and requirements for the following options:

1. Our Coverage Form automatically provides a 60 days Basic Extended Reporting Period at no additional cost for reporting "claims" resulting from errors, omissions or negligent acts in the rendering or failure to render "professional legal services" by the insured or on the insured's behalf during the "policy period".

2. The first "Named Insured" may purchase for an additional premium of 190% of the premium stated in Item 6 of the Declarations Page a Supplemental Extended Reporting Period of thirty-six (36) months for reporting "claims" from errors, omissions or negligent acts in the rendering or failing to render "professional legal services" during the "policy period". This Supplemental Extended Reporting Period is inclusive of the Basic Extended Reporting Period.

D. During the first several years of a claims-made relationship, claims-made rates are comparatively lower than occurrence rates, and you can expect substantial annual premium increases, independent of overall rate-level increases, until the claims-made relationship reaches maturity.

WYERS PROFESSIONAL LIABILITY

THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY

# NEW YORK – AMENDATORY ENDORSEMENT

Item 2 of SECTION IX – CONDITIONS, A. Extended Reporting Periods, is deleted in its entirety and replaced with the following:

2.  You will also have the right to purchase a Supplemental Extended Reporting Period. Upon payment of the additional premium, we will issue an endorsement providing a three (3) year, five (5) year, or seven (7) year Supplemental Extended Reporting Period, inclusive of the 60 Day Basic Extended Reporting Period specified in Paragraph 1 of the policy.  This endorsement will cover "claims" first made during the Supplemental Extended Reporting Period for errors, omissions or negligent acts which occurred prior to the end of the "policy period" and are otherwise covered by the policy.  The additional premium will be 190% of the policy's last annual premium for the three (3) year Supplemental Extended Reporting Period, 210% of the policy's last annual premium for the five (5) year Supplemental Extended Reporting Period, and 220% of the policy's last annual premium for the seven (7) year Supplemental Extended Reporting Period.  The Supplemental Extended Reporting Period coverage is excess over any other valid and collectible insurance available to any insured.

ALL OTHER TERMS AND CONDITIONS REMAIN UNCHANGED.

6 Ed. 3-06
JG The St. Paul Travelers Companies, Inc.  All Right Reserved



## IMPORTANT NOTICE REGARDING INDEPENDENT AGENT AND BROKER COMPENSATION

For information about how Travelers compensates independent agents and brokers, please visit www.travelers.com, or you may request a written copy from Marketing at One Tower Square, 2GSA, Hartford, CT 06183.

EXHIBIT "D"

LAWYERS PROFESSIONAL LIABILITY  **TRAVELERS**

POLICY NUMBER: **507JB0207**          ISSUE DATE: **12/27/2007**

## NOTICE TO POLICYHOLDER REGARDING THE AVAILABILITY OF SUPPLEMENTAL EXTENDED REPORTING PERIOD COVERAGE

Termination Date:   **01/15/2008**

Extended Reporting Period Premium:          **$ 17,666.00**

Extended Reporting Period:     Effective From: **01/15/2008**          To: **01/15/2011**
Effective Date                                                  Expiration Date

The above captioned policy is terminated, as defined under Paragraph 1 of SECTION IX - CONDITIONS, A, Extended Reporting Periods, on the Termination Date shown above. Coverage has been afforded under the policy on a Claims-Made basis, which means no coverage will apply to any "claims" which are made against you and are not reported to us until after the Termination Date stated above.

A gap of coverage may result as "claims" may be made against you for the failure in rendering or not rendering "professional legal services" by you or on your behalf, long after the circumstance which led to the "claim". We therefore offer the following summary of the availability of extension of reporting "claims" offered under SECTION IX - CONDITIONS A, Extended Reporting Periods. (Please read the entire CONDITION A for complete details.)

A.   A 60 Day Basic Extended Reporting Period, is automatically furnished without any additional premium charge, beginning on the Termination Date. Any "claim" made against you which would otherwise be covered by the policy except for coverage being terminated, and which is reported to us within 60 days of the Termination Date, will be considered as having been made before the end of the "policy period".

B.   You may purchase a Supplemental Extended Reporting Period as described below:

1.   The Supplemental Extended Reporting Period will begin on the Termination Date and will be for the period shown above.

2.   If the "claims-made relationship" with our Company has continued for three years or more, the Limits of Liability for the entire Supplemental Reporting Period will be equal to 100% of the terminated policy's Annual Aggregate Limit shown on the Declarations Page.

3.   If the "claims-made relationship" with our Company has continued for less than

three years, the Limit of Liability for the entire Supplemental Reporting Period shall be the greater of:

a.   The amount of coverage remaining in the terminated policy's Annual Aggregate Limit of Liability; or

b.   Fifty percent (50%) of the terminated policy's Annual Aggregate Limit of Liability.

4.   The additional premium for the Supplemental Extended Reporting Periods will be a percentage of the policy's last annual premium, as follows:

190% for 36 months
210% for 60 months
220% for 84 months

If you elect to purchase the Supplemental Extended Reporting Period, please sign and return this Notice To Insured, together with the full premium amount stated above. You will have the greater of sixty (60) days from the effective date of termination of coverage, or thirty (30) days from the date of mailing or delivery of this Notice. The additional premium will be considered fully earned as of the Effective Date of the Supplemental Extended Reporting Period and may not be cancelled. If full payment is not received within the required time, we will not be able to provide the Supplemental Extended Reporting Period coverage.

If your coverage has been replaced with another insurer, or if you have any questions regarding the options available, please discuss and review SECTION IX - CONDITIONS A, Extended Reporting Periods, of the coverage form with your agent or broker.

_Mary W. Teraey 1-10-08_
Signature

_Partner_
Title

LA119 Ed. 11-06

*Law Offices Of*

*Sledjeski & Tierney, PLLC*

*18 First Street, Box 479*
*Riverhead, New York 11901-0401*
*(631) 727-1515*

THOMAS C. SLEDJESKI
MARY D. TIERNEY
BRIAN A. ANDREWS

January 10, 2008

*Via Federal Express Overnight*

Protection Advantage
22 Century Hill Drive, Suite 103
Latham, New York 12110-1423

Attn:   Tracey Smith

Re:     Extended Reporting Period Policy No: 057JB0207

Dear Ms. Smith:

As per our telephone conversation and subsequent e-mails, enclosed please find a duly executed form for an Extended Reporting Period coverage for three (3) years ("Three-Year Tail Policy").

Also enclosed, please find Sledjeski & Tierney, P.L.L.C. check no. 1527 to the order of Protection Advantage for $16,002.00.  As per your e-mail, you will be able to apply a refund for $1,664.00 owed to Sledjeski & Tierney, P.L.L.C. to the balance of the payment for the tail policy, for a total of $17,666.00.

Many thanks for your courtesy and assistance in this matter, and please do not hesitate to call me should you have any questions or require any additional information.  I remain,

Very truly yours,

Mary D. Tierney

MDT/jmc
Encls.

# Protection Advantage

*Lawyers Professional Liability*

13 Cornell Road, Latham, NY 12110   Tel: 1-800-998-5545   Fax: 518-782-3139

October 31, 2007                    http//www.protectionadvantage.com

Sledjeski & Tierney. PLLC
18 First Street
Riverhead, NY 11901

Dear Ms. Tierney:

Re: Lawyers Professional Liability
    Notice of Incident
    Claimant: **Candace Nelson**
    Policy: 507JB0207 Eff.: 12/20/06

Thank you for taking my call this morning and providing me with additional information relative to the above-referenced matter.  I appreciate your assistance.

This letter will acknowledge receipt of your recent incident by way of correspondence submitted from you and received here on October 31, 2007.

The carrier has been sent notice of this incident, and a representative should be contacting you shortly. Additionally, please **complete the Supplemental Claim Form** to follow, as we will need it to properly underwrite your file.

If we can be of further assistance in this matter, please do not hesitate to contact us.

Sincerely,

Demetrius McCord
Claims and Risk Management Agent
Lawyers Professional Liability Unit

*Law Offices Of*

*Sledjeski & Tierney, PLLC*

*18 First Street, Box 479*
*Riverhead, New York 11901-0401*
*(631) 727-1515*

THOMAS C. SLEDJESKI
MARY D. TIERNEY
BRIAN A. ANDREWS

JLT Services Corporation
Protection Advantage
Lawyers Professional Liability
Jardine House
13 Cornell Road
Latham, New York 12110

Re: Lawyers Professional Liability Pol. No. 507JB0207
Lawyers Professional Liability Pol. No. LPJ091822-0104

Dear Sir or Madam:

The purpose of this letter is to adnise of a circumstance that may result in a claim that has just come to my attention. At this time no claim has been asserted, but I am providing this notification out of an abundance of caution and in accordance with the terms of the policies of insurance that may apply.

We have been advised that GEICO Insurance Company has taken the position that their offer to settle the case of Candace Nelson-v- Bonnie Ruben will not be honored. We were adnised of this position on October 18, 2007. The statute of limitations to commence a suit in this matter has expired.

Please put the following carriers on notice of these circumstances which may give rise to a possible claim:  Liberty International Underwriters, Pol.# LPJ091822-0104
St. Paul Travelers, Pol.# 507JB0207

If there are any other policies which may provide coverage for this potential claim, please provide notification under those policies as well.

Thank you for your attention to this matter.

**RECEIVED**

OCT 3 1 2007

PROTECTION ADVANTAGE

Very truly yours,

*Mary D. Tierney*

Mary D. Tierney

10/31/2007  10:28   5107023302          PROTECTION ADVANTAG              PAGE  03/04

**TRAVELERS**

Travelers 1ST ChoiceSM
Lawyers Professional Liability Insurance Supplemental Claim Form

☐ St. Paul Fire and Marine Insurance Company, Saint Paul, Minnesota
☐ St. Paul Mercury Insurance Company, Saint Paul, Minnesota
☐ St. Paul Guardian Insurance Company, Saint Paul, Minnesota

Please complete this Supplement and submit it to Travelers along with your completed Lawyers Professional Liability Insurance Application, (form 58459) if instructed to do so. You agree that this Supplement will become part of your application for Lawyers Professional Liability Insurance and is subject to the same terms.

1. Name(s) of Legal Entity(ies) to be insured (as referenced on your letterhead): _SLEDJESKI & TIERNEY, PLLC_
2. Name of Individual(s) and/or Firm involved in the claim/incident: _Thomas Sledjeski   SLEDJESKI & TIERNEY PLLC_
3. Name of claimant(s): _Candace  Nelson_
4. a. Date of alleged act, error or omission: _7/26/06_
   b. Date Applicant became aware of claim/incident: _10/18/07_
5. List any additional defendants: _None_
6. Present status of claim or incident (check one and include any deductible amount in figures provided). We must have the financial information requested.  "Unknown" is an unacceptable response.

☐ Closed                                      ☑ Open
  Total loss paid: $ _____              Claimant's settlement demand: $ _____
  Total expense paid: $ _____           Defendant's offer for settlement: $ _____
  ☐ Court Judgment                         Insurer's claim reserve: $ _____
  ☐ Out-of-court settlement                Expenses paid to date: $ _____
  ☐ Dismissed                              Expense reserve: $ _____
                                           ☐ In Suit

☑ Incident/Report Only (No reserve established, no expenses to date)

7. a. Date first reported to insurer: _10/23/07_
   b. Name of insurance carrier responding to this claim or incident: _St. Paul_
   Limit of Liability: $ _2,000,000._   Deductible: $ _50,00_

8. Description of claim or incident.
   a. Alleged act, error or omission upon which Claimant bases claim: _Suit not filed_ _prior to expiration of Statute of limitations_
   b. Describe what activities gave rise to the claim or incident: _GEICO refused to_ _honor offer of policy made prior to expiration of_ _Statute of limitations_
   c. Describe the type and extent of injury or damage allegedly sustained: _death/pain & suffering_
   _____
   _____
   d. Does this incident or claim follow or result from an action to collect fees? _____ ☐ Yes ☑ No

9. What steps have been taken to prevent the occurrence of a similar claim/incident?
   _If an offer is made, all cases/claims will_ _be put into suit prior to the expiration of the_ _Statute of limitations_

© The St. Paul Travelers Companies, Inc. All rights reserved.
58469 Ed. 11-05 Printed in U.S.A.

# EXHIBIT "G"

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NEW YORK



ST. PAUL FIRE & MARINE INSURANCE
COMPANY,

          Plaintiff,

v.

SLEDJESKI & TIERNEY, PLLC,
THOMAS SLEDJESKI, MARY TIERNEY,
and BRIAN ANDREWS,

          Defendants.

Case No.

BIANCO, J.

DYLE, M.J.

## COMPLAINT FOR DECLARATORY JUDGMENT

Plaintiff, St. Paul Fire & Marine Insurance Company ("St. Paul"), by its undersigned

attorneys, for its Complaint for Declaratory Judgment against Defendants, Sledjeski & Tierney,

PLLC. ("S&T"), Thomas Sledjeski ("Sledjeski"), Mary Tierney ("Tierney"), and Brian Andrews

("Andrews"), state as follows:

### Preliminary Statement

1.      This is a declaratory judgment action brought pursuant to 28 U.S.C. §§2201 and

2202, in which St. Paul seeks a declaration of its contractual obligations to defend and indemnify

S&T, Sledjeski, Tierney and Andrews with respect to a lawsuit filed against them by the Estate

of Jeffrey Nelson (the "Nelson Estate").

2.      Specifically, for the reasons set forth in this Complaint, St. Paul seeks a

declaration that it has no duty to defend or indemnify S&T, Sledjeski, Tierney and Andrews in

connection with a lawsuit filed against them by the Nelson Estate because S&T, and one or more

of the individual defendants, knew or could have reasonably foreseen, prior to the Policy's

{00004097;) }]

inception date, that an error, omission, or negligent act might be expected to be the basis of a "claim" or "suit" brought by the Underlying Plaintiffs.

## Parties

3.     St. Paul is an insurance company incorporated in Minnesota and having its principal place of business in Minnesota. St. Paul is therefore a citizen of the State of Minnesota.

4.     S&T is a New York professional limited liability corporation incorporated under the laws of the State of New York that, at all relevant times, operated as a law firm with its principal place of business in Riverhead, New York. S&T is therefore a citizen of the State of New York.

5.     Sledjeski is an individual who, at all relevant times, was a resident of the State of New York, and is therefore a citizen of the State of New York.

6.     Tierney is an individual who, at all relevant times, was a resident of the State of New York, and is therefore a citizen of the State of New York.

7.     Andrews is an individual who, at all relevant times, was a resident of the State of New York, and is therefore a citizen of the State of New York.

## Jurisdiction and Venue

8.     Federal subject matter jurisdiction exists in this action pursuant to 28 U.S.C. §1332 because the parties are citizens of different states and the amount in controversy exceeds $75,000, exclusive of interest and costs.

9.     Venue is proper in this judicial district pursuant to 28 U.S.C. §1391 because S&T's principal place of business is in this district, a substantial part of the events giving rise to this action occurred in this district, and the St. Paul insurance policy at issue was delivered to S&T in this district.

### The St. Paul Insurance Policy

10.      St. Paul issued a Lawyers Professional Liability Protection Policy to S&T under Policy No. 507JB0207, effective December 20, 2006 until December 20, 2007 (the "Policy").

11.      The insuring agreement section of the Policy provides professional liability protection as follows:

> We will pay on behalf of an insured "damages" and "claims expenses" for which "claim" is first made against an insured and reported to us within the "policy period", any subsequent renewal of the policy by us or applicable Extended Reporting Period. Such "damages" must arise out of an error, omission, negligent act or "personal injury", in the rendering of or failure to render "legal services" for others by you or on your behalf. The error, omission, negligent act or "personal injury" must occur on or after the retroactive date stated in the Declarations, if any.

12.      The Policy provides as follows with respect to the duty to defend claims or suits:

> We will have the right and duty to defend any "claim" or "suit" against an insured seeking "damages" to which this insurance applies, even if any of the allegations of the "claim" or "suit" are groundless, false or fraudulent. We may also make such investigation and, with your written consent, such settlement of any "claim" or "suit" we deem appropriate.

13.      The Policy does not apply to "claims":

> G.      Arising out of any error, omission, negligent act or "personal injury" occurring prior to the inception date of this policy if any insured prior to the inception date knew or could have reasonably foreseen that such error, omission, negligent act or "personal injury" might be expected to be the basis of a "claim" or "suit".

14. The Policy defines a "claim" as follows:

"Claim" means a demand received by an insured for money alleging an error, omission or negligent act in the rendering of or failure to render "professional legal services" for others by you or on your behalf.

15. The Policy defines a "Suit" as follows:

"Suit" means a civil proceeding in which "damages" to which this insurance applied are alleged. "Suit" includes:

- An arbitration proceeding in which such "damages" are claimed and to which an insured must submit or does submit with our consent; or

- Any other alternative dispute resolution proceeding in which "damages" are claimed and to which an insured submits with our consent.

### The 2005 Suit

16. In August 2003, Sledjeski and Tierney were members of the Law Firm of Michael T. Clifford & Associates, PLLC (the "Clifford Firm"), and Andrews was employed by the Clifford Firm as an associate. At that time, Candice Nelson ("Candice") retained the Clifford Firm, and one or more of these attorneys, to represent her and the Nelson Estate for recovery of damages resulting from Jeffrey Scott Nelson's death in a July 26, 2003 motor vehicle accident (the "Accident").

17. On information and belief, the Clifford Firm dissolved subsequent to its retention by Candice, and S&T was formed.

18. On information and belief, S&T assumed the representation of Candice upon the dissolution of the Clifford Firm.

19. Under New York law, the time in which an action must be filed against certain parties for recovery of damages for the wrongful death of Jeffrey Nelson was two years from the

{00004097;1 }4

date of Jeffrey Nelson's death.  The limitations period for filing such an action therefore

terminated on July 26, 2005.

20.    On July 26, 2005, S&T filed a Summons and Complaint in the Supreme Court of

New York, Suffolk County, captioned *Candice Nelson as proposed Administratrix for the Estate*

*of Jeffrey Nelson, and Candice Nelson, individually, v. Bonnie A. Rubin and Maier A. Rubin* (the

"2005 Suit").

21.    On information and belief, the 2005 Suit was effectively terminated in or about

2005.

### The Malpractice Suit

22.    On March 28, 2008, the Nelson Estate commenced a legal malpractice suit,

captioned *The Estate of Jeffrey Scott Nelson, et al. v. Brian A. Andrews, et al.* (the "Malpractice

Suit"), against S&T, Sledjeski, Tierney and Andrews by the filing of a Summons with Notice

with the Suffolk County Supreme Court under Index number 08-12187.  On August 15, 2008, a

Verified Complaint was served in the Malpractice Suit.

23.    In the Malpractice Suit, Candice alleges that, when S&T filed the 2005 Suit, it

filed a defective Summons and an Unverified Complaint that was grossly defective and never

served.

24.    In the Malpractice Suit, Candice alleges that S&T, Sledjeski, Tierney and

Andrews committed legal malpractice in their representation of the Nelson Estate in failing to

timely investigate and commence the appropriate legal action for damages against Bonnie Rubin,

Maier Rubin and other potentially liable parties.

25.    S&T, Sledjeski, Tierney and Andrews have requested that St. Paul provide them

with a defense and coverage for the Malpractice Suit.

26.     St. Paul has provided S&T, Sledjeski, Tierney and Andrews, a defense in the Malpractice Suit pursuant to a full reservation of St. Paul's rights to (a) deny coverage; (b) seek a judicial determination of the parties' rights and obligations, and (c) seek reimbursement of all defense expenses paid in defense of the Malpractice Suit.

## No Duty to Defend or Indemnify

27.     St. Paul has no obligation to defend or indemnify S&T, Sledjeski, Tierney or Andrews, or pay any amount on their behalf, in connection with the Malpractice Suit because, prior to the Policy's effective date, S&T and one or more of the individual defendants knew or could have reasonably foreseen, that the error, omission, or negligent act alleged in the Malpractice Suit might be expected to be the basis of a "claim" or "suit".

28.     There exists an actual and justiciable controversy between St. Paul, S&T, Sledjeski, Tierney and Andrews, with respect to St. Paul's obligations under the Policy.

WHEREFORE, Plaintiff St. Paul Fire and Marine Insurance Company respectfully requests that this Court adjudicate and declare the rights of the parties, and that the Court:

a.     Find and declare that the Policy does not provide coverage for the Malpractice Suit;

b.     Find and declare that pursuant to the terms and conditions of the Policy, St. Paul has no obligation to defend S&T, Sledjeski, Tierney and Andrews, in connection with the Malpractice Suit;

c.     Find and declare that pursuant to the terms and conditions of the Policy, St. Paul has no obligation to indemnify S&T, Sledjeski, Tierney and Andrews, in connection with the Malpractice Suit;

d.     Find and declare that St. Paul is entitled to reimbursement of all defense expenses, including attorneys fees, that St. Paul has paid, or will pay, in defense of S&T, Sledjeski, Tierney and Andrews in the Malpractice Suit; and

e.     Grant other such relief as the Court may deem just and proper.

Dated: December 19, 2008

ST. PAUL FIRE & MARINE INSURANCE
COMPANY

By: _____

*Of Counsel:*
A. Michael Furman
Andrew S. Kowlowitz
Furman Kornfeld & Brennan LLP
545 Fifth Avenue, Suite 401
New York, New York 10017
212-867-4100
File no. 302.026

Christopher J. Bannon
Aronberg Goldgehn Davis & Garmisa
330 North Wabash Avenue, Suite 1700
Chicago, Illinois 60611
312-828-9600
30375

505487.v1

EXHIBIT "H"



March 12, 2008

Mr. Thomas Sledjeski, Esq.
Sledjeski & Tierney
18 First Street, Box 579
Riverhead, NY 11901

|  |  |
|---|---|
| **Insured:** | **Sledjeski & Tierney** |
| **Policy #:** | **0507JB0207** |
| **Claim #:** | **F0710225** |
| **Matter:** | **Nelson** |

Dear Mr. Sledjeski:

This letter will formally acknowledge our (St. Paul Fire & Marine Insurance Company's, a member of The Travelers Companies, hereinafter "Travelers") receipt of the claim against you by Candace Nelson. We first received notice of a potential claim by way of letter from your partner, Mary Tierney, to Protection Advantage on October 31, 2007. Travelers received the notice on November 8, 2007. On or about December 17, 2007, Ms. Nelson retained counsel and counsel made announced his intention to file suit and stated that he would be making a demand soon. Then, in late January, claimant's counsel demanded $1 million to settle the matter. In light of this demand for monetary damages, the potential claim became an actual claim, even though no lawsuit has yet been filed or served. Below I describe the coverage afforded under the Policy. My references to the Policy do not modify it in any way. The Policy remains controlling in regard to any determination or analysis of coverage. The coverage analysis in this letter is based upon the allegations made and information known to date and is subject to change as the claim develops and/or further information is obtained.

### I.    The Complaint

It is my understanding that you represented Ms. Nelson on a potential wrongful death claim she had on behalf of her estranged husband who was killed in a motor vehicle accident. Prior to any suit being filed or served, the insurer for the other driver involved in the accident offered to pay the policy limits of $100,000 to settle the matter. You indicated that you would check with your client and get the appropriate paperwork in order should she consent to settle. You did not follow through with this, however, prior to the statute of limitations expiring on the wrongful death claim. The insurer for the other driver then withdrew its settlement offer, and indicated that it would not pay on this claim but would instead move for dismissal on the statute of limitations defense if a suit were initiated. You informed Nelson of what had transpired, and she hired new counsel to pursue a legal malpractice claim against you.

### II.    The Policy

St. Paul Fire and Marine Insurance Company, a member of the Travelers Companies (hereinafter "Travelers") issued Lawyers Professional Liability Policy No. 507JB0207

March 12, 2008
Mr. Thomas Sledjeski, Esq.
Page 2

(the "Policy") to you, effective December 20, 2006 to December 20, 2007. The Policy is subject to a limit of liability of $2,000,000 each claim and a deductible of $5000 for each claim. The deductible applies to indemnity only.

Subject to its terms, conditions, limitations and exclusions, the Policy insuring agreement provides that:

> We will pay on behalf of an insured 'damages' and 'claims expenses' for which 'claim' is first made against an insured and reported to us within the 'policy period', any subsequent renewal of the policy by us or applicable Extended Reporting Period. Such 'damages' must arise out of an error, omission, negligent act or 'personal injury', in the rendering of or failure to render 'legal services' for others by you or on your behalf. . . We will have the right and duty to defend any 'claim' or 'suit' against an insured seeking 'damages' to which this insurance applies, even if any of the allegations of the 'claim' or 'suit' are groundless, false or fraudulent.

The Policy includes the following definitions which provide in relevant part as follows:

> "Claim" means a demand received by an insured for money alleging an error, omission or negligent act in the rendering of or failure to render "professional legal services" for others by you or on your behalf.

> "Damages" means compensatory damages which an insured becomes legally obligated to pay as a result of any judgment, award or settlement, provided any settlement is negotiated with the assistance and approval of us. "Damages" does not include punitive or exemplary damages, fines, sanctions or penalties, equitable relief or the return or reimbursement of fees for "professional legal services" whether or not rendered.

> "Professional Legal Services" means services performed or advice given by you or on your behalf for others in the conduct of your practice as a lawyer, real estate title insurance agent, notary public, arbitrator or mediator.

In the Exclusions section (Section VII) of the policy, the following language appears:

> "This insurance does not apply to "claims":

> A.    Arising out of any dishonest, fraudulent, criminal or malicious act, error, omission, or "personal injury" committed by, at the direction of, or with the knowledge of the insured." This exclusion does not apply to an insured who did not personally commit or personally participate in committing any of the knowingly wrongful acts, errors, omissions or "personal injury", provided that:

March 12, 2008
Mr. Thomas Sledjeski, Esq.
Page 3

      1.    Such insured had neither notice nor knowledge of such knowingly wrongful act, error, omission or "personal injury'" and:

      2. Such insured, upon receipt of notice or knowledge of such knowingly wrongful act, error, omission or "personal injury", notifies us as soon as possible."

Other Policy provisions may also apply to this matter. Travelers reserves the right to raise and rely upon such provisions as the matter warrants.

## III.   Preliminary Coverage Analysis

In discussing allegations in the Complaint, I do not mean to imply that the allegations have any merit. I cite the allegations only for the purpose of discussing potential coverage for the matter under the Policy. The Nelson demand constitutes a claim under the Policy. Travelers is obligated to defend claims or suits brought against the insured for "damages" covered by the Policy. To the extent that "damages" are paid, Travelers will look to you for reimbursement of the first $5000 of any payment for covered loss.

As you know, this matter has been assigned to defense attorney David Wilck. He will investigate the circumstances, formulate a strategy and respond to the lawsuit. I will keep informed of the progress of the matter through Mr. Wilck.

At this preliminary stage of this matter, Travelers must respectfully reserve all of its rights to assert the terms, conditions and exclusions contained in the Policy should matters develop that affect coverage and this preliminary analysis. Your rights are likewise reserved. Please feel free to call me if you have any questions concerning this matter.

Sincerely,

Thomas F. Ascher, Esq.
Specialty Claims Attorney
Bond & Financial Products
385 Washington Street, MC: NB 08F
St. Paul, MN 55102
(651) 310-8858
(651) 310-3657 (fax)
TAscher@travelers.com

cc:    Marie Wertman (Protection Advantage) via e-mail

# EXHIBIT "I"

*TRAVELERS*

July 1, 2008

Thomas Sledjeski, Esq.
Sledjeski & Tierney, PLLC
18 First Street, Box 579
Riverhead, New York 11901

Re:   Insured:   Sledjeski & Tierney, PLLC
      Policy No.:   0507JB0207
      Claim No.:   F0710225
      Matter:   Nelson

Dear Mr. Sledjeski:

This letter will supplement my March 12, 2008 letter to you, in which I advised you, on behalf of St. Paul Fire and Marine Insurance Company, a wholly owned subsidiary of The Travelers Companies, Inc. ("Travelers"), that we have reserved Travelers' rights with respect to insurance coverage for the above-captioned claim. I am enclosing a copy of my March 12, 2008 letter for your reference. Travelers' reservation of rights applies to the lawsuit, entitled *The Estate of Jeffrey Scott Nelson, et al. v. Brian A. Andrews, et al.*, which is pending in the Supreme Court of New York, Suffolk County, under case number 08-12187 (the "Lawsuit").

Travelers has provided you with a defense to the Lawsuit pursuant to its full reservation of rights to deny or otherwise limit coverage for the reasons stated in my March 12, 2008 letter to you, as well as any other reasons that may come to its attention in the future.

In addition to the policy provisions set forth in my March 12, 2008 letter, please also be advised that the St. Paul Fire and Marine Insurance Company Lawyers Professional Liability Policy number 507JB0207 (the "Policy"), effective December 20, 2006 to December 6, 2007, does not apply to "claims":

> Arising out of any error, omission, negligent act or "personal injury" occurring prior to the inception date of this policy if any insured prior to the inception date knew or could have reasonably foreseen that such error, omission, negligent act or "personal injury" might be expected to be the basis of a "claim" or "suit."

Travelers continues to investigate this claim. In investigating the claim and in providing a defense to you under the Policy, Travelers does not waive, but specifically reserves the right to deny or otherwise limit coverage under the Policy based on the above-quoted Policy provision, the Policy terms and provisions identified in my March 12, 2008

Thomas Sedjeski, Esq.
7/1/2008
Page 2

letter to you, and based on any new or additional reason that may come to Travelers' attention in the future.

By carbon copy of this letter to Brian Andrews and Mary Tierney, I am also advising them of Travelers' reservation of rights, as expressed in this letter and my March 12, 2008 letter to you, as Ms. Tierney and Mr. Andrews are also defendants in the Lawsuit and Travelers is providing a defense to them pursuant to its reservation of rights.

If you have any questions regarding this matter, please contact me.

Sincerely,

Thomas F. Ascher, Esq.
Specialty Claims Attorney
Bond & Financial Products
385 Washington Street, MC: NB 08F
St. Paul, MN 55102
(651) 310-8858
(651) 310-3657 (fax)
tascher@travelers.com

Enclosure
cc:    Ms. Marie Wertman (Protection Advantage) (via e-mail)
       Todd Belous, Esq. (via e-mail)
       Brian A. Andrews, Esq.
       Mary Tierney, Esq.

EXHIBIT "J"

**TRAVELERS** J

August 28, 2008

<u>VIA CERTIFIED MAIL</u>
Thomas Sledjeski, Esq.
Sledjeski & Tierney, PLLC
18 First Street, Box 579
Riverhead, New York 11901

<u>VIA CERTIFIED MAIL</u>
Brian A. Andrews, Esq.
Sledjeski & Tierney, PLLC
18 First Street, Box 579
Riverhead, New York 11901

<u>VIA CERTIFIED MAIL</u>
Mary Tierney, Esq.
Sledjeski & Tierney, PLLC
18 First Street, Box 579
Riverhead, New York 11901

Re:  Insured:  Sledjeski & Tierney, PLLC
     Policy No.:  0507JB0207
     Claim No.:  F0710225
     Claimant:  Candice Nelson

Dear Mr. Sledjeski, Mr. Andrews and Ms. Tierney:

On behalf of St. Paul Fire and Marine Insurance Company, a wholly owned subsidiary of The Travelers Companies, Inc. ("Travelers"), this letter will supplement my July 1, 2008 and March 12, 2008 letters to you with respect to the above-captioned claim. I advised you in those letters that Travelers' defense in the lawsuit titled *The Estate of Jeffrey Scott Nelson, et al. v. Brian A. Andrews, et al.*, which is pending in the Supreme Court of New York, Suffolk County, under case number 08-12187 (the "Lawsuit"), is provided pursuant to Travelers' reservation of rights to deny or otherwise limit coverage for the reasons stated in my prior letters to you, as well as any other reasons that may come to its attention in the future. I am enclosing copies of my July 1, 2008 and March 12, 2008 letters for your reference.

Travelers has received a copy of the Verified Complaint ("Complaint") in the Lawsuit, dated August 15, 2008. As this is the first notice to Travelers of the specific allegations made in the Lawsuit, we take this opportunity to address those allegations and the coverage issues that arise as a result of the allegations. Please note that in referring to the allegations of the Complaint, we do not imply in any way that the allegations have merit. We refer to them solely for the purpose of discussing insurance coverage issues related to the allegations.

In the Complaint, Candice Nelson, individually and as Administrator of the Estate of Jeffrey Scott Nelson, and as guardian and natural mother of infant minors, Scott J. Nelson and Michael R.L. Nelson (collectively "Plaintiff"), alleges that Sledjeski & Tierney, PLLC (the "Firm"), Brian A. Andrews, Thomas C. Sledjeski, Mary Tierney and Thomas C. Sledjeski & Associates, PLLC (collectively the "Defendants") were attorneys for the Plaintiff in an underlying action in which letters of administration were issued for the Estate of Jeffrey Scott Nelson. Mr. Nelson died on July 26, 2003 after he was involved in a motor vehicle accident on that date. The Plaintiff alleges that on or about August 5, 2003, she retained the Defendants to represent the Plaintiff in bringing appropriate legal actions against the persons responsible for the July 26, 2003 motor vehicle accident in which Jeffrey Scott Nelson died.

Mr. Sledjeski, Mr. Andrews and Ms. Tierney
August 28, 2008
Page 2

The Plaintiff alleges in the Complaint that the statute of limitations for legal actions arising out of the July 2003 motor vehicle accident expired during the time that the Defendants represented the Plaintiff, and that the Defendants failed to timely investigate and commence an action against potentially responsible parties. Therefore, the Plaintiff alleges that all such actions are now forever foreclosed and time-barred, solely because of the negligence and legal malpractice of the Defendants. Specifically, the Plaintiff alleges that the Defendants prepared and filed a petition seeking letters of administration for the Plaintiff with the Suffolk County Surrogates Court on or about October 5, 2007. Plaintiff also alleges that on July 26, 2005, the Defendants previously filed with the Suffolk County Supreme Court, under Index No. 05-17822, a defective summons and unverified complaint pertaining to the July 26, 2003 motor vehicle accident.

As noted in my March 12, 2008 letter, the St. Paul Fire and Marine Insurance Company Lawyers Professional Liability Policy number 507JB0207 (the "Policy"), effective December 20, 2006 to December 6, 2007, does not apply to "claims":

> Arising out of any error, omission, negligent act or "personal injury" occurring prior to the inception date of this policy if any insured prior to the inception date knew or could have reasonably foreseen that such error, omission, negligent act or "personal injury" might be expected to be the basis of a "claim" or "suit."

The Complaint includes allegations of acts occurring prior to the inception date of the Policy. Specifically, the Plaintiff alleges that the Defendants were negligent in connection with the filing of an allegedly defective summons and unverified complaint on July 26, 2005. The Plaintiff alleges that the unverified complaint filed on July 26, 2005 with the Suffolk County Supreme Court, under Index No. 05-17822, was grossly defective, never served and the action was therefore dismissed accordingly.

Travelers continues to investigate this claim, including the allegations most recently made in the Complaint. In investigating the claim and in providing a defense to the Defendants, Travelers does not waive, but specifically reserves, the right to deny or otherwise limit coverage under the Policy to the extent that any of the Defendants knew or could have reasonably foreseen that any error, omission or negligent act occurring prior to December 20, 2006 might be expected to be the basis of a claim or suit. We note that allegations of the filing of a defective and unverified complaint, and the failure to accomplish service of summons and complaint, would appear to constitute allegations of errors, omissions or negligent acts occurring prior to December 20, 2006 and might be expected to be the basis of a claim or suit.

We also note that the Plaintiff seeks recovery of punitive damages in the Complaint. As indicated in the Policy's definition of "damages," set forth in my March 12, 2008 letter, "damages" means compensatory damages, and does not include punitive or exemplary damages. Any punitive damages awarded to the Plaintiff would not be covered by the Policy, and Travelers would have no obligation to pay for such amounts.

Travelers continues to expressly reserve, and does not waive, its right to deny coverage for the Lawsuit based on these and other Policy provisions set forth in my March 12, 2008 letter, and based on any other reason that may come to its attention in the future. Travelers also reserves its right to discontinue immediately its payment of defense expenses for the Lawsuit in the event it is determined that Travelers has no duty to defend the claims in the Lawsuit. Moreover, Travelers reserves the right to obtain reimbursement from the Defendants for all defense expenses Travelers pays should it be determined that Travelers did not owe a duty to defend

Mr. Sledjeski, Mr. Andrews and Ms. Tierney
August 28, 2008
Page 3

the claims in the Lawsuit. Travelers also specifically reserves the right to seek a judicial determination of any rights or duties it may have in connection with this matter.

Please note that the Policy's limit of liability is $2,000,000 each claim and in the aggregate. In the event any judgment is entered against the Defendants for damages covered under the Policy, and such damages exceed $2,000,000, Travelers would have no obligation to pay for such a judgment in any amount over $2,000,000. In the Complaint, the Plaintiff demands judgment, jointly and individually against all the Defendants, in the amount of $5,000,000, plus pre-judgment interest and court costs. You may therefore wish to retain and consult with counsel of your choice to protect your interests with respect to such an excess judgment, at your own expense.

As part of Travelers' continuing investigation of this matter, we request that you immediately provide me with copies of all documents related to the alleged filing, on July 26, 2005, with the Suffolk County Supreme Court, of a Summons and Complaint pertaining to the July 26, 2003 motor vehicle accident, which Plaintiff alleges was filed under Index No. 05-17822, or any other action that the Defendants filed or attempted to file in connection with the July 26, 2003 motor vehicle accident. Please provide copies of all file materials related to the filing of such an action, including without limitation, the Summons and Complaint filed, correspondence or memoranda related to the filing of the action, and any and all other documents in any way referring to or relating to the action. This request is made not only to the Firm, but also to all Defendants that seek coverage for this claim from Travelers, i.e., Mr. Sledjeski, Mr. Andrew and Ms. Tierney.

If you have any questions regarding this matter, please contact me. Also, if you are aware of any additional information you believe is material to the coverage matters discussed above, or Travelers' reservation of its rights to deny coverage, please immediately provide that information to me for Travelers' consideration.

Sincerely,

Thomas F. Ascher, Esq.
Specialty Claims Attorney
Bond & Financial Products
385 Washington Street, MC: NB 08F
St. Paul, MN 55102
(651) 310-8858
(651) 310-3657 (fax)
tascher@travelers.com

Enclosure
cc:    Ms. Marie Wertman (Protection Advantage) (via e-mail)
       Todd Belous, Esq. (via e-mail)