UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

───────────────
№ 08-CV-5184 (JFB) (ETB)
───────────────

ST. PAUL FIRE & MARINE INSURANCE COMPANY,

Plaintiff,

VERSUS

SLEDJESKI & TIERNEY, PLLC,
THOMAS SLEDJESKI,
MARY TIERNEY,
AND BRIAN ANDREWS.

Defendants.

───────────────

**MEMORANDUM AND ORDER**
July 17, 2009

───────────────

JOSEPH F. BIANCO, District Judge:

St. Paul Fire & Marine Insurance Company (hereinafter, "St. Paul" or "plaintiff") brings this action against defendants Sledjeski & Tierney, PLLC ("the firm" or "S&T"), Thomas Sledjeski ("Sledjeski"), Mary Tierney ("Tierney"), and Brian Andrews ("Andrews") (collectively, "defendants"), seeking a declaratory judgment pursuant to 28 U.S.C. §§ 2201, 2002 for purposes of determining the parties' rights and liabilities with respect to a lawyers professional liability protection policy number 507JB0207 issued by plaintiff to S&T, effective December 20, 2006 until December 20, 2007 (hereinafter, "the 2007 policy" or "the policy") and currently implicated in a state court action, captioned *The Estate of Jeffrey Scott Nelson, et al. v. Brian A. Andrews, et al.*, Suffolk County Supreme Court, Index. No. 08-12187 (hereinafter, "the malpractice action"), which was initiated by a former client of S&T against defendants. Specifically, in the instant action, plaintiff claims that, because S&T and one or more of the individual defendants knew or could have reasonably foreseen that the error, omission, or negligent act alleged in the malpractice suit might be expected to be the basis of a "claim" or "suit," the policy affords no coverage to them for their defense or indemnification of their defense in the malpractice action. Plaintiff thus seeks a declaration stating that it is not obligated to defend or indemnify any defendant to the underlying state malpractice

action under the 2007 policy as to any claims asserted in those proceedings.

Defendants now move to dismiss the complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. For the reasons stated herein, defendants' motion is denied in its entirety.

## I. BACKGROUND

### A. Facts

The following facts are taken from the complaint ("Compl."), documents incorporated by reference in the complaint, and documents that were in plaintiff's possession and/or of which plaintiff had notice, or relied upon in bringing the instant action, all of which the Court may consider. These facts are not findings of fact by the Court, but rather are assumed to be true for the purpose of deciding this motion and are construed in a light most favorable to plaintiff, the non-moving party.

St. Paul is an insurance company incorporated in Minnesota and having its principal place of business there. (Compl. ¶ 3.) S&T is a New York professional limited liability corporation incorporated under the laws of New York that, at all relevant times, operated as a law firm with its principal place of business in Riverhead, New York. (Compl. ¶ 4.) Sledjeski, Tierney, and Andrews, all residents of New York, were employed as attorneys at S&T at all relevant times. (Compl. ¶¶ 5-7, 16.)

St. Paul issued a lawyers professional liability protection policy to S&T under policy number 507JB0207, effective December 20, 2006 until December 20, 2007. (Compl. ¶ 10.) The insuring agreement section of the policy states:

> We will pay on behalf of an insured "damages" and "claims expenses" for which "claim" is first made against an insured and reported to us within the "policy period", any subsequent renewal of the policy by us or applicable Extended Reporting Period. Such "damages" must arise out of an error, omission, negligent act or "personal injury", in the rendering of or failure to render "legal services" for others by you or on your behalf. The error, omission, negligent act or "personal injury" must occur on or after the retroactive date stated in the Declarations, if any.

(Compl. ¶ 11.) However, the policy does not apply to "claims":

> G. Arising out of any error, omission, negligent act or "personal injury" occurring prior to the inception date of this policy if any insured prior to the inception date knew or could have reasonably foreseen that such error, omission, negligent act or "personal injury" might be expected to be the basis of a "claim" or "suit".

(hereinafter, "Exclusion G" or the "prior knowledge exclusion"). (Compl. ¶ 13.)

Further, in the policy, a "claim" is

2

defined as follows:

> "Claim" means a demand received by an insured for money alleging an error, omission or negligent act in the rendering of or failure to render "professional legal services" for others by you or on your behalf.

(Compl. ¶ 14.) A "suit" is defined as follows:

> "Suit" means a civil proceeding in which "damages" to which this insurance applied are alleged .
> . . .

(Compl. ¶ 15.)

In August 2003, Sledjeski and Tierney were members of the law firm of Michael T. Clifford & Associates, PLLC, and Andrews was employed as an associate of that firm. (Compl. ¶ 16.) At that time, Candice Nelson retained that firm to represent her and the Nelson estate for recovery of damages resulting from the death of her husband, Jeffrey Nelson, in a July 26, 2003 motor vehicle accident. (Compl. ¶ 16.) The firm of Michael T. Clifford & Associates thereafter dissolved, and S&T assumed the representation of Candice Nelson and the Nelson estate. (Compl. ¶¶ 17-18.) The applicable statute of limitations for recovery of damages for the wrongful death of Jeffrey Nelson expired on July 26, 2005, two years after the death. (Compl. ¶ 19.) On July 26, 2005, S&T filed a summons and complaint in the Supreme Court, Suffolk County, captioned *Candice Nelson as proposed Administratrix for the Estate of Jeffrey Nelson, and Candice Nelson, individually, v. Bonnie A. Rubin and Maier A. Rubin* (hereinafter, "the wrongful death action"). (Compl. ¶ 20.)

On March 28, 2008, the Nelson estate commenced the malpractice action against defendants, alleging that S&T filed a defective summons and an unverified complaint that was defective and never served in the wrongful death action in 2005 (hereinafter, "the alleged error"). (Compl. ¶¶ 22-23.) A verified complaint was served on August 15, 2008 in the malpractice action. (Compl. ¶ 22.)

Prior to the filing of the malpractice action, in October 2007, Tierney mailed a letter to S&T's broker, which St. Paul received on November 8, 2007, regarding the alleged error that could potentially lead to the legal malpractice action. (Defs.' Exhs. E, H.) The information regarding the alleged error was also included in a Supplemental Claim Form attached to S&T's renewal application form dated October 31, 2007. (Defs.' Exh. F.) St. Paul has provided defendants a defense in the malpractice suit subject to a full reservation of its rights to (a) deny coverage, (b) seek judicial determination of the parties' rights and obligations, and (c) seek reimbursement of all defense expenses paid in connection with the malpractice suit. (Compl. ¶ 26.)

### B. Procedural History

On December 24, 2008, plaintiff filed its complaint in the instant action. On May 8, 2009, defendants filed their motion to dismiss. The opposition was submitted by plaintiff on June 11, 2009, and defendants' reply was filed on June 19, 2009. Oral argument was held on July 16, 2009. This matter is fully submitted.

## II. STANDARD OF REVIEW

In reviewing a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), the court must accept the factual allegations set forth in the complaint as true and draw all reasonable inferences in favor of the plaintiff. *See Cleveland v. Caplaw Enters.*, 448 F.3d 518, 521 (2d Cir. 2006); *Nechis v. Oxford Health Plans, Inc.*, 421 F.3d 96, 100 (2d Cir. 2005). The plaintiff must satisfy "a flexible 'plausibility standard.'" *Iqbal v. Hasty*, 490 F.3d 143, 157 (2d Cir. 2007), *rev'd on other grounds sub nom. Ashcroft v. Iqbal*, 129 S. Ct. 1937 (2009). "[O]nce a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 563 (2007). The Court, therefore, does not require "heightened fact pleading of specifics, but only enough facts to state a claim to relief that is plausible on its face." *Id.* at 570.

The Supreme Court recently clarified the appropriate pleading standard in *Ashcroft v. Iqbal,* setting forth a two-pronged approach for courts deciding a motion to dismiss. 129 S.Ct. 1937 (2009). The Court instructed district courts to first "identify[] pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." 129 S.Ct. at 1950. Though "legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Id.* Second, if a complaint contains "well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Id.* "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* at 1949 (quoting and citing *Twombly*, 550 U.S. at 556-57) (internal citations omitted).

## III. DISCUSSION

Defendants argue for dismissal of the complaint on the following grounds: (1) St. Paul can only disclaim coverage for an insured's "prior knowledge" of a potential claim where the insured fails to give notice of such potential claim before the policy's inception date and, in this case, defendants did provide such notice; (2) any ambiguity in the policy concerning the circumstances under which notice of an alleged error triggers coverage of a subsequently filed claim must be resolved as a matter of law in favor of the defendants; (3) St. Paul is precluded as a matter of law from rescinding the policy because it accepted premiums from the defendants after the defendants renewed their policy; and (4) St. Paul's disclaimer was untimely as a matter of law.[1] The Court examines each argument in turn.

### A. Notice of Potential Claim

Defendants first argue that plaintiff fails to plead that S&T "failed to notify" plaintiff of the potential claim before the inception date of the policy that was effective December 20, 2007 until December 20, 2008 (hereinafter, the "2008 policy"), and such a pleading is necessary to assert a "prior knowledge"

---

[1] Defendants also argue that St. Paul has waived all defenses to coverage other than the "prior knowledge" defense. St. Paul does not argue that any other defenses apply, and so the Court need not address this argument.

4

defense to coverage. Moreover, defendants argue that plaintiff is unable to assert such a defense because St. Paul was notified twice in October and November 2007 of the alleged error, prior to the inception date of the 2008 policy, *i.e.* December 20, 2007.[2] (*See* Defs.' Mem. of Law, at 3.)

As an initial matter, the inception date of the policy set forth in the complaint is December 20, 2006, not December 20, 2007. In fact, nowhere in the complaint is the 2008 policy mentioned, and plaintiff has made clear that it does not seek a declaration of the parties' rights with respect thereto. The policy pursuant to which plaintiff seeks a declaratory judgment in this case is the one that was effective December 20, 2006 and expiring December 20, 2007. Because plaintiff does not seek any declaration of rights pursuant to the renewed policy beginning December 20, 2007 and ending December 20, 2008, any arguments based on such a policy are irrelevant for the purposes of a motion to dismiss the complaint. Accordingly, the proper inception date for the analysis herein is December 30, 2006, and any actions undertaken by defendants to notify St. Paul in the fall of 2007 of the possible forthcoming malpractice action were taken after the inception date of the policy. Thus, to the extent that defendants argue that notification of the alleged error was made to St. Paul and such notification thereby ensures coverage under the 2007 policy, that argument fails.

In any event, the language of Exclusion G makes no reference to the issue of notification of a potential claim. Indeed, on its face, the clear language of the provision excludes coverage if the insured knows or should have reasonably foreseen, prior to the inception date of the policy, that any omission, error, or negligent act committed prior to that inception date could lead to a possible claim or suit. The alleged error here occurred in connection with the wrongful death action filed in 2005, well before the inception date of the 2007 policy. Thus, the correct inquiry with respect to Exclusion G is whether or not defendants knew or could have reasonably foreseen prior to the inception date of December 20, 2006 that the alleged error could lead to the malpractice action. That question, by the plain terms of Exclusion G, does not depend upon whether or not notice of the alleged error was provided to St. Paul prior to the inception date. "As with the construction of contracts generally, unambiguous provisions of an insurance contract must be given their plain and ordinary meaning, and the interpretation of such provisions is a question of law for the court[.]" *Vigilant Ins. Co. v. Bear Stearns Cos., Inc.*, 10 N.Y.3d 170, 177 (N.Y. 2008); *accord Teichman v. Comm. Hosp. of Western Suffolk*, 87 N.Y.2d 514 (N.Y. 1996); *see also Parks Real Estate Purchasing Group v. St. Paul Fire and Marine Ins. Co.*, 472 F.3d 33, 42 (2d Cir. 2006) ("When the provisions are unambiguous and understandable, courts are to enforce them as written."). Although ultimately, to obtain the relief it seeks in this case, plaintiff must "'establish that the exclusion is stated in clear and unmistakable language, is subject to no other reasonable interpretation, and applies in the particular case[,]'" *Belt Painting Corp. v. TIG Ins. Co.*, 100 N.Y.2d 377, 383 (N.Y. 2003) (quoting *Continental Cas. Co. v. Rapid-Am. Corp.*, 80 N.Y.2d 640, 652 (N.Y. 1993)), defendants have not shown that plaintiff cannot make this showing as a matter of law, based on the argument that failure to provide notification of

---

[2] St. Paul does not dispute the notification received in November 2007 of the alleged error.

an alleged error is a prerequisite to invocation of the prior knowledge exclusion defense. Thus, defendants' contention that St. Paul was required to plead that defendants failed to notify it of the potential claim is without merit.

Although the 2008 policy is not before the Court, to the extent that defendants argue that no claim for coverage arises under the 2007 policy as a matter of law because the malpractice suit was filed in 2008 (and notice thereof provided to St. Paul in 2008), the Court also finds this argument unpersuasive. The Court cannot conclude, as a matter of law, that S&T's notification of the alleged error did not trigger coverage of the claim under the 2007 policy period.

Relevant to this analysis is Section IX(B) of the policy, which provides that

> [i]f, during the "policy period", any insured first becomes aware of a circumstance which may give rise to a "claim" (i.e., any act, error, omission or "personal injury" which might reasonably be expected to be the basis of a "claim" against any insured under this policy), the insured must give written notice in accordance with SECTION IX – CONDITIONS C, Insured's Duties in the Event of a "Claim", "Suit" or Circumstances Which May Give Rise to a "Claim". Any claims subsequently made against any insured arising out of that circumstance shall be considered to have been made and reported during the "policy period".

(Hereinafter, "Section IX(B)" or the "potential claim provision"). (Defs.' Exh. B.) Under the plain terms of this provision, an insured is permitted to give notice of a potential claim or suit during the pending policy period, which triggers coverage under that policy period. Here, defendants' notification in October and November 2007 of the alleged error, which undisputedly formed the basis of the 2008 malpractice suit, may have triggered its coverage under the 2007 policy period, pursuant to Section IX(B) of the policy. Therefore, the Court cannot conclude, as a matter of law, that the appropriate policy governing the defense of the malpractice action is not the policy in effect at the time of S&T's notice.

Despite defendants' insistence that the policy is a "claims-made," as opposed to "occurrence-based" policy, discussed in more detail *infra*, that fact does not change the analysis; although the general rule of a claims-made policy may be that coverage is triggered upon filing of a claim or suit against an insured and/or notice to the insurer thereof, that does not mean that the potential claim provision cannot provide for an earlier policy period under certain circumstances. It also does not mean that all claims filed during that period are automatically covered by the policy, as then any exclusion policy would be meaningless, and it is clear under New York law that the policy should be interpreted to give meaning and effect to all of the provisions, if possible. *See Raymond Corp. v. Nat'l Union Fire Ins. Co.*, 5 N.Y.3d 157, 162 (N.Y. 2005) ("We construe the policy in a way that affords a fair meaning to all of the language employed by the parties in the contract and leaves no provision without force and effect.") (quoting *Consolidated Edison Co. of New York v. Allstate Ins. Co.*, 98 N.Y.2d 208, 221-22 (N.Y. 2002) (internal quotation marks and citations omitted)).

6

## B. Alleged Ambiguity in the Potential Claim Provision

In this case, the Court further disagrees with defendants that the potential claim provision, read separately or in conjunction with Exclusion G, the insuring agreement section, or the definition of "claims" in the policy, is sufficiently ambiguous so as to be construed in defendants' favor and to warrant dismissal of plaintiff's claim as a matter of law.

Defendants rely extensively on the argument that the potential claim provision in the policy is "occurrence-based" language that is contrary to the "claims-made" nature and intent of the policy and the definition of "claim" as set forth in the policy. As background, defendants explain that an occurrence-based policy covers injuries that occur during the policy period, usually with a requirement that such injuries be reported as soon as is practicable, while a claims-made policy covers liability for bodily injury or property damage only if a claim is asserted during the policy period. (*See* Defs.' Reply Mem. of Law, at 2.) Defendants' main contention is that because the malpractice claim against them was filed and reported to St. Paul in 2008, that claim is not covered by the 2007 policy, which terminated coverage on December 20, 2007.

In an apparent attempt to circumvent the plain language of Section IX(B), discussed *supra*, defendants argue that that section "contradicts the entire intent of a 'Claims-Made' policy and conflicts with the definition of a 'claim' which is given in the Definitions Section (Sec. VIII) of the policies which says a 'claim' is a 'demand received by an insured for money alleging an error, omission or negligent act . . . .'" (Defs.' Reply Mem. of Law, at 3-4.) More specifically, defendants argue that the reporting requirement contained in Section IX(B) is "occurrence based" policy language that is inconsistent with the "claims-made" policy language elsewhere contained in the policy. According to defendants, this inconsistency, in turn, has created two ambiguities that defendants seek to be construed in their favor: (1) an ambiguity as to whether or not the policy was claims-made or occurrence-based, and (2) an ambiguity as to whether the 2007 policy period applies to this case.

Under New York law, insurance policy exclusions are given a "strict and narrow construction," and any ambiguity will be resolved against the insurer if the exclusion provision is found to be ambiguous. *Belt Painting Corp.*, 100 N.Y.2d at 383. The same is true more generally of any ambiguous terms within an insurance policy. *See, e.g., Tower Ins. Co. of New York v. Diaz*, 58 A.D.3d 495, 495 (N.Y. App. Div. 2009); *Antoine v. City of New York*, 56 A.D.3d 583, 584 (N.Y. App. Div. 2008).

Before a court may resolve any ambiguity in favor of the insured, however, it must first determine whether there is in fact any ambiguity. Whether a provision in an insurance policy is ambiguous is a threshold question of law for the court to determine. *E.g., Duane Reade Inc. v. St. Paul Fire and Marine Ins.* Co., 411 F.3d 384, 390 (2d Cir. 2005); *Nick's Brick Oven Pizza, Inc. v. Excelsior Ins. Co.*, 61 A.D.3d 655, 656 (N.Y. App. Div. 2009). "An ambiguity exists where the terms of an insurance contract could suggest 'more than one meaning when viewed objectively by a reasonably intelligent person who has examined the context of the entire integrated agreement and who is cognizant of the customs, practices, usages and

terminology as generally understood in the particular trade or business.'" *Morgan Stanley Group Inc. v. New Eng. Ins. Co.*, 225 F.3d 270, 275 (2d Cir. 2000) (quoting *Lightfoot v. Union Carbide Corp.*, 110 F.3d 898, 906 (2d Cir. 1997)); *see also Nick's Brick Oven Pizza, Inc.*, 61 A.D.3d at 656 ("The test for ambiguity is whether the language in the insurance contract is susceptible to two reasonable interpretations.") (internal citations and quotation marks omitted). In particular, "[t]he language of a contract is not made ambiguous simply because the parties urge different interpretations." *Seiden Assocs., Inc. v. ANC Holdings, Inc.*, 959 F.2d 425, 428 (2d Cir. 1992). "Simply put, a contract provision is not ambiguous where it has a definite meaning, and where no reasonable basis exists for a difference of opinion about that meaning." *Allstate Ins. Co. v. Am. Home Products Corp.*, No. 01 Civ. 10715 (HBP), 2009 WL 890078, at *6 (S.D.N.Y. Mar. 31, 2009) (internal quotation marks, alterations and citations omitted).

After careful review of the provisions at issue, the Court does not find any ambiguity in the language of Section IX(B), or any contradiction or ambiguity when it is read in conjunction with Exclusion G or the claims-made language of the policy. Indeed, defendants do not argue that the language in Section IX(B) stating that "[a]ny claims subsequently made against any insured arising out of that circumstance shall be considered to have been made and reported during the 'policy period'" is itself ambiguous. It is certainly not susceptible to two reasonable, yet different, interpretations, in light of common speech. Instead, defendants argue that because such language is inconsistent with the general concept of a claims-made policy, it is ambiguous in light of the whole of the policy or when read in conjunction with other provisions, such as the definition of "claims" as contained in the policy, and effectively converts the claims-made policy into an occurrence-based policy or at best, a quasi-claims-made, quasi-occurrence-based policy.

The Court is not persuaded by defendants' interpretation, however. In fact, this Court's conclusion regarding the unambiguous nature of this language is consistent with other courts applying New York law that have construed the plain language of similar reporting requirements of potential claims in the context of a claims-made policy. *See, e.g., Hunt v. Galaxy Ins. Co.*, 223 A.D.2d 821, 822 (N.Y. App. Div. 1996). Importantly, the Second Circuit, in *Morgan Stanley Group Inc. v. New England Ins. Co.*, 225 F.3d 270 (2d. Cir. 2000), analyzed a potential claims provision in a claims-made insurance policy and determined that certain claims may have been triggered in an earlier policy period pursuant to the potential claims provision, despite renewal of that policy during the period in which the actual claim was filed.[3] *See id.* at 280-81. As another example, in *JPMorgan Chase & Co. v. Travelers Indem. Co.,* No.

---

[3] In addition, in that case, the Second Circuit further vacated and remanded the judgment of the district court that concluded that a later policy applied to the claims at issue, where, as here, notice of the potential claim may have been provided in the preceding policy period pursuant to a provision requiring notice of circumstances possibly giving rise to a future claim. In doing so, the court made clear that under New York law, "[b]y renewal or other means of extension, this claims-made insurance is a perennial contract that includes an arrangement for allocating claims to particular policy years" and thus the contracts should not be construed as separate yearly policies. *See id.* at 280-81.

8

600674/06, 2009 WL 137044, at *2-3 (N.Y. Sup. Ct. Jan. 12, 2009), the court applied a strikingly similar provision to Section IX(B) in this case, also in the context of a claims-made policy:

> In order to trigger coverage under the extended claims-made 97-01 Insurance Program, JPMC was required to give notice of claims during the policy period. Additionally, § IV. D. of the 97-01 Insurance Program permitted JPMC to preserve coverage for potential claims that may arise after the policy's expiration by providing written notice of "Wrongful Acts" that it believed may give rise to a claim. This provision states:
>
> "If during the policy period . . . the Risk and Insurance Management Department shall become aware of any [Wrongful Act] which may subsequently give rise to a claim being made against an Insured and shall during the Policy Period . . . give written notice of such [Wrongful Act], then any claim which is subsequently made against the Insured arising out of such act, error or omission [Wrongful Act] shall for the purpose of this policy be treated as a claim made during the policy period" (97-01 Insurance Program, § IV. D. [2] ).

2009 WL 137044, at *2-3. Although in that case, the definition of a "claim" was expanded to include written notice to the insurer "describing circumstances that may reasonably be expected to give rise to a Claim," *id*., the definition of "claim" in this case is not inconsistent with the reporting requirement contained in Section IX(B).

Tellingly, although defendants argue that various cases cited by plaintiff in support of its opposition are inapposite and involve policy language distinct from that in this case, defendants fail to cite to any case authority in support of their claim that a notice requirement like that in Section IX(B) for potential claims is ambiguous or inconsistent with a claims-made policy. Specifically, defendants fail to point to any cases holding that policies containing, as defendants suggest, so-called "mixed" language that combines language of a claims-made policy with an occurrence-based reporting provision are ambiguous or invalid as a matter of law, whether in whole or in part. Defendants even conceded at oral argument that no such case authority exists.

Instead, defendants' misplaced argument seems to rest on a failure to distinguish between language requiring notice of an occurrence in an occurrence-based policy and language requiring notice of a potential claim in a claims-made policy. They are not the same, nor do they serve the same purpose, although at times they are not clearly differentiated by courts. *See Chiera v. Liberty Ins. Underwriters, Inc.*, No. 7825/07, 2008 WL 4140581, at *9 (N.Y. Sup. Ct. Sept. 9, 2008). At least one New York court has expounded at length on this distinction and concluded that dual provisions in a claims-made context – one requiring notice of an actual claim and one permitting notice of an act that could lead to a potential claim – are not inconsistent because they serve different purposes. *See id.* at *9-11. In that case, the analogous provision to Section IX(B) in this

9

case was called the "Discovery Clause."[4] The court explained:

> Here, the Liberty policies are "claims-made" policies which, as set forth in the declarations on page 1, affords coverage only for claims first made within the policy or extended reporting period. The Notice of Claims provision and the Discovery Clause address two distinct issues. The Notice of Claims paragraph requires that prompt notice be given of any "claim(s) or potential claims(s) made against the insured." By complying with this requirement, the insured attorney may obtain coverage for claims asserted against the insured during the policy period.
>
> The Discovery Clause, on the other hand, has a different mission. Since the Liberty policies are claims-made policies, the insured would not have coverage for a claim which is first made after the policies expire. However, the Discovery Clause permits the insured to obtain coverage for a claim first asserted post-policy by notifying the insurer of a wrongful act.
>
> Plaintiffs argue that the Discovery Clause makes disclosure of wrongful acts committed during the policy period optional. In one sense, this is true; an insured need not make the disclosure, though the consequence would be that no coverage would be afforded if a claim is first brought after the expiration of the policy for a undisclosed wrongful act first brought to the insured's attention during the policy period. In another sense though, the disclosure is mandatory; if the insured wants coverage for claims first made after the expiration of the policy, the insured must make the disclosure.
>
> Nevertheless, it remains that the Notice of Claims provision requires notice of claims or potential claims, as to which the insured would be entitled to coverage, while the Discovery Clause permits notification of wrongful acts so that coverage will be provided should a claim be made later, after the policy expires.
>
> Liberty would have this Court read the term "potential claim" in the Notice of Claims provision as the functional equivalent of "occurrence" or, as used in the Discovery Clause, "wrongful act".

---

[4] Notice under the Discovery Clause in that case was optional and not required, as it appears to be in the 2007 policy, but such a distinction does not matter for purposes of this decision. In both cases, notification provided by the insured regarding an alleged error that could give rise to a later claim triggered coverage under that policy, even if a claim was filed in a subsequent time period. Furthermore, in that case, notice of a "potential claim" was required under the policy at issue, but the court construed such a "potential claim" as distinct from a "wrongful act" as used under Discovery Clause. *See id.* at *11. The Discovery Clause in *Chiera* is closer to the language of Section IX(B) here. The Court notes that the term "potential claim" is not used in Section IX(B), and such a phrase is used by the Court for the purposes of describing that provision in this Memorandum and Order.

10

> Indeed, Liberty elides over the distinction between notice of claim and notice of occurrence . . . .

*Chiera*, 2008 WL 4140581, at *11. Defendants' position here is essentially the same as that rejected by the court in *Chiera*. By providing notice of the alleged error in the fall of 2007, defendants were potentially able to obtain coverage for any claim arising out of that alleged error during the policy period, even if such a claim was made after the expiration of that policy period.[5] If S&T had not renewed its policy after December 20, 2007, it is possible that the 2008 malpractice claim would have nonetheless been covered by the 2007 policy. However, this issue is distinct from whether or not Exclusion G also operates to exclude coverage for prior knowledge of the alleged error. Indeed, plaintiff in this case seeks a declaratory judgment regarding the applicability of Exclusion G in the policy; since the Court finds that S&T's notification of the alleged error may have triggered coverage for the malpractice action under the 2007 policy, the question of whether or not the prior knowledge exclusion further applies to bar such coverage remains.

In sum, given the plain language of these various provisions and in an effort to give meaning and effect to all of them, the Court finds no ambiguity or inconsistency within or among them, as defendants suggest. *See, e.g., Flynn v. Timms*, 606 N.Y.S.2d 352, 354 (N.Y. App. Div. 1993) ("A court will not strain to find an ambiguity where words have a definite and precise meaning, nor will it create policy terms by implication to rewrite a contract.") (citation omitted). Accordingly, defendants' motion to dismiss, on the grounds that the language of Section IX(B) – specifically, its reporting requirement and the possible trigger of a policy period expiring before an actual claim is made – is inconsistent with certain other provisions of the 2007 policy and/or renders the claims-made nature of the policy or the potential applicability of that provision ambiguous, is denied.

## C. Rescission

Defendants further argue that St. Paul accepted premiums from S&T following the notice of the alleged error in October and November 2007 and is thus estopped from rescinding the policy. The Court rejects this argument as an insufficient basis in this case on which to seek dismissal of the complaint.

Again, the 2008 policy is not at issue in this case. Second, neither is rescission of the 2007 policy at issue. As plaintiff makes clear in the complaint, its opposition papers, and during oral argument, it is not seeking rescission of the 2007 policy. To the contrary, it is actually seeking a declaration of rights pursuant to such a policy and is thus seeking to enforce its interpretation of the prior knowledge exclusion provision, as applied to the underlying malpractice suit.

In response, defendants contend that

---

[5] In this regard, defendants' contention that their purchase of a "tail" policy following S&T's dissolution in 2008 – which is also not at issue in this case – demonstrates that the 2007 policy was not intended to cover any claims subsequently filed, even if notice was given thereof in 2007, is also unpersuasive. Any subsequent policy would presumably ensure coverage for any claims that arise in subsequent years and were *not* reported during an earlier policy period under Section IX(B). Thus, the existence of any subsequent policy, including a tail policy, does not defeat plaintiff's claim that coverage may have been triggered in this case under the 2007 policy.

11

although plaintiff asserts that it is not attempting to rescind the policy, St. Paul's claim is nonetheless "based on an alleged 'material misrepresentation of the facts' made by S&T prior to the inception date of the policy, namely, an alleged omission of notification about the potential claim by S&T's former client." (Defs.' Mem. of Law, at 3.) Although an insurer may void an insurance contract if the contract was induced by a material misrepresentation, N.Y. INS. LAW § 3105, for the reasons discussed *supra*, the Court finds the issue of S&T's notification of the alleged error is not determinative of the issue of Exclusion G's applicability and, in any event, there was in fact no alleged notification by defendants of the alleged error prior to December 20, 2006, the inception date of the 2007 policy. As for St. Paul's acceptance of premiums following the notification in fall 2007 of the alleged error, defendants admit that there is no legal authority deeming acceptance of such premiums a waiver of a prior knowledge defense. Thus, the Court concludes that dismissal on this ground is unwarranted.

D. Timeliness of the Disclaimer

Defendants also argue that St. Paul waited too long before bringing this lawsuit and disclaiming coverage and, thus, the complaint should be dismissed on timeliness grounds. As support for this proposition, defendants cite New York Insurance Law § 3420(d)(2) ("Section 3420(d)(2)"). That statutory provision provides:

> If under a liability policy issued or delivered in this state, an insurer shall disclaim liability or deny coverage for death or bodily injury arising out of a motor vehicle accident or any other type of accident occurring within this state, it shall give written notice as soon as is reasonably possible of such disclaimer of liability or denial of coverage to the insured and the injured person or any other claimant.

N.Y. INS. LAW § 3420(d)(2).

By the plain terms of this statute, however, this provision applies only to disclaimer of liability or coverage for death or bodily injury arising out of a motor vehicle accident or other accident. Whether Section 3420(d)(2) applies to a case is question of law for the Court. *See, e.g., Koegler v. Liberty Mut. Ins. Co.,* — F. Supp. 2d —, 2009 WL 1176612, at *1 (S.D.N.Y. Apr. 21, 2009). Because the underlying action in this case was a legal malpractice suit under which no death or bodily injury arose, Section 3420(d)(2) is inapplicable. *See Sirignano v. Chicago Ins. Co.*, 192 F. Supp. 2d 199, 206-07 (S.D.N.Y. 2002) ("By its terms, Section 3420(d) does not apply to claims for legal malpractice.") (citing *Vecchiarelli v. Continental Ins. Co.*, 277 A.D.2d 992 (N.Y. App. Div. 2000); *Incorporated Village of Pleasantville v. Calvert Ins. Co.*, 204 A.D.2d 689 (N.Y. App. Div. 1994)). Defendants do not point to any case authority suggesting otherwise and conceded at oral argument that they are not aware of any such authority, and this Court's own research has found no case applying Section 3420(d)(2) to a disclaimer of coverage for a legal malpractice lawsuit.

"Where, as here, the underlying claim does not arise out of an accident involving bodily injury or death, the notice of disclaimer provisions set forth in Insurance Law § 3420(d) are inapplicable and, under the common-law rule, delay in giving notice of disclaimer of coverage, even if unreasonable,

will not estop the insurer to disclaim unless the insured has suffered prejudice from the delay." *Vecchiarelli*, 277 A.D.2d at 992 (internal quotation marks, alteration, and citations omitted). Not only is the unreasonableness of St. Paul's alleged delay an issue of fact that the Court cannot determine on a motion to dismiss, *see, e.g.*, *id.* ("In the absence of an explanation for the delay, a delay of over two months is unreasonable as a matter of law . . . An insurer's explanation may excuse the delay, however, and the reasonableness of the explanation is generally an issue of fact."), defendants must demonstrate prejudice as a result of the alleged delay of St. Paul's disclaimer, which is also an issue of fact and not presumed where an insurance company undertakes a defense subject to a reservation of its right to disclaim, which is what is alleged to have occurred in this case. *See Silverman Sclar Byrne Shin & Byrne P.C. v. Chicago Ins. Co.*, No. 03 Civ. 0308 (DLI) (MDG), 2005 WL 2367709, at *5-6 (E.D.N.Y. Sept. 27, 2005) ("Prejudice is presumed where an insurer, though in fact not obligated to provide coverage, without asserting policy defenses or reserving the privilege to do so, undertakes the defense of the case, in reliance on which the insured suffers the detriment of losing the right to control its own defense . . . . [W]here the insurer has reserved its right to disclaim on the basis of a particular defense later asserted, the insured must show that (1) the delay in disclaiming was unreasonable, and (2) actual prejudice ensued as a result . . . . The next element required for estoppel to apply, that prejudice has ensued, is generally a question of fact.") (internal citation and quotation marks omitted). Accordingly, defendants' motion to dismiss is denied on this ground as well.

## IV. CONCLUSION

In sum, the only issue in this case is whether or not the prior knowledge exclusion applies to bar coverage under the policy effective December 20, 2006 until December 20, 2007 for the defense or indemnification of the defense of defendants by plaintiff in connection with the underlying state court malpractice action. This question involves factual issues that cannot be resolved on a motion to dismiss, and defendants have provided no legal basis warranting dismissal of the complaint at this juncture.

For the foregoing reasons, defendants' motion to dismiss the complaint, pursuant to Fed. R. Civ. P. 12(b)(6), is denied.

SO ORDERED.

_____
JOSEPH F. BIANCO
United States District Judge

Dated: July 17, 2009
Central Islip, New York

\* \* \*

The attorneys for plaintiff are Andrew Seth Kowlowitz of Furman, Kornfeld & Brennan LLP, 545 Fifth Avenue, Suite 401, New York, New York 10017 and Christopher J. Bannon of Aronberg Goldgehn Davis & Garmisa, 300 North Wabash Avenue, Suite 1700, Chicago, Illinois 60611. The attorney for defendants is Kurt Andrew Schaub, Robert & Robert PLLC, 150 Broadhollow Road, #314, Melville, New York 11747.